**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AVALON HOLDINGS CORP., | |
| Plaintiff, | No. 18-cv-7291 (VSB) |
| v. | (ECF Case) |
| GUY GENTILE and MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

Related to:

| | |
|---|---|
| NEW CONCEPT ENERGY, INC. | |
| Plaintiff, | No. 18-cv-8896 (VSB) |
| v. | (ECF Case) |
| GUY GENTILE and MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO:**
**DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(3),**
**AND IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1406;**
**AND DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(6)**

Miriam Tauber
MIRIAM TAUBER LAW PLLC
885 Park Avenue 2A
New York NY 10075
(323) 790-4881
MiriamTauberLaw@gmail.com

David Lopez
LAW OFFICES OF DAVID LOPEZ
PO Box 323, 171 Edge of Woods Road
Southampton NY 11968
(631) 287-5520
DavidLopezEsq@aol.com

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

OVERVIEW .................................................................................................................1

DECISIONAL STANDARDS......................................................................................2

FACTS .........................................................................................................................4

ARGUMENT................................................................................................................6

    I.    Venue in Both Cases Is Proper in the Southern District of New York ...............6

    II.   The District of Puerto Rico Is Not a More Convenient Forum,
         but Should the Court Find Venue to Be Incorrect in This District,
         Plaintiffs Will Consent to a Transfer There (Only) in Lieu of Dismissal. ........................12

    III.  The Defendants' Contention That Their Actions  Were Beyond the Reach of Section 16(b)
         Is Wholly Without Merit................................................................................13

CONCLUSION ..........................................................................................................17

**TABLE OF AUTHORITIES**

**CASES**

*Alattar v. Bell,*
   No. 13-cv-02990-MSK, 2014 WL 2442204 (D. Colo. May 30, 2014) ....................................16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .........................................................................................................4

*Blau v. Mission Corp.,*
   212 F.2d 77 (2d Cir. 1954); .........................................................................................6, 9

*Bunker Ramo-Eltra Corp. v. Fairchild Indus., Inc.,*
   No. 83 Civ. 3520 (MJL), 1984 WL 492 (S.D.N.Y. June 15, 1984) .............................9

*CRA Realty Corp. v. Gold Reserve Corp.,*
   No. 88 Civ. 4297(MP), 1988 WL 144752 (S.D.N.Y. Sept. 14, 1988) ........................7

*D.H. Blair & Co., Inc. v. Gottdiener,*
   462 F.3d 95 (2d Cir. 2006) .............................................................................................3

*Donoghue v. Bulldog Investors General Partnership,*
   696 F.3d 170 (2d Cir. 2012): .......................................................................................13

*FERC v. Barclays Bank PLC,*
   105 F. Supp. 3d 1121 (E.D. Cal. 2015) ......................................................................11

*FourCo Glass Co. v Tranmirra Products Corp.,*
   353 U.S. 222 (1957) .......................................................................................................8

*Fredrikksson v. Sikorsky Aircraft Corp., Inc.,*
   Nos. 07-cv-0214 & 3146 (ILG), 2008 WL 752469 (E.D.N.Y. Mar. 19, 2008) ...........3

*Gem Global Yield Fund, Ltd. v. Surgilight, Inc.,*
   No. 04-civ-4451-KMK, 2006 WL 2389345 (S.D.N.Y. Aug. 17, 2006) ......................16

*Gulf Insurance Co. v. Glasbrenner,*
   417 F.3d 353 (2d Cir. 2005) .....................................................................................3, 12

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC,*
   570 F.3d 471 (2d Cir. 2009) ...........................................................................................3

*Lewis v. Adler,*
   331 F. Supp. 1258 (S.D.N.Y. 1971) ............................................................................16

*Mathematica Policy Research, Inc. v. Addison-Wesley Publishing Co., Inc.,*
   No. 89 Civ. 3431 (JFK), 1989 WL 151268, at *1 (S.D.N.Y. Dec. 1, 1989) ..........3, 13

*Orden v. Cornell University,*
   243 F. Supp. 3d 287 (N.D.N.Y. 2017) .........................................................................13

*Rothman v. Gregor,*
   220 F.3d. 81 (2d Cir 2000 .............................................................................................4

*Tex. International Airlines v. National Airlines, Inc.,*
   714 F.2d 533 (5th Cir. 1983) .......................................................................................15

*U.S. v. Bank of America Account #XXX4939,*
   No. 5:14-cv-723(ATB), 2015 WL 224774 (N.D.N.Y. Jan. 15, 2015) .........................................3

*U.S. v. Geibel,*
   369 F.3d 682 (2d Cir. 2004) ...........................................................................................................9

*U.S. v. Johnson,*
   510 F.3d 521 (4th Cir. 2007.............................................................................................................9

*U.S. v. Lange,*
   834 F.3d 58 (2d Cir. 2016) ...........................................................................................................11

*U.S. v. Royer,*
   549 F.3d 886 (2d Cir. 2008) .....................................................................................................9, 10

*U.S. v. Svoboda,*
   347 F.3d 471 (2d Cir. 2003) ...........................................................................................................8

## **STATUTES**

15 U.S.C. § 78aa ...................................................................................................................6, 8

15 U.S.C. § 78*l* ...........................................................................................................................1

15 U.S.C. § 78p ...........................................................................................................................1

28 U.S.C. § 1391 .....................................................................................................................2, 7

28 U.S.C. § 1406 ..........................................................................................................................2

## **OTHER AUTHORITIES**

Peter Romeo & Alan Dye,
   *The Section 16 Deskbook,* Winter ed. 2018...........................................................................6
Peter Romeo & Alan Dye,
   *Section 16 Treatise and Reporting Guide,* 4th ed. ...........................................................6, 7, 8

## RULES

F.R.C.P. 12(b) ...........................................................................................................................2

17 C.F.R. § 240.16a-1 ................................................................................................................12

17 C.F.R. § 240.16b-6................................................................................................................12

17 C.F.R. § 240.13d-3.................................................................................................................12

## OVERVIEW

These are suits to recover short-swing profits under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b), brought by two issuers of publicly traded equity securities registered under Section 12(b) of the Act, 15 U.S.C. § 78*l*. Section 16(b) is a strict liability statute, requiring all statutory company insiders—directors, officers, or greater-than 10% "beneficial owners"—to disgorge any "short swing" profits realized from purchases and sales of company securities, within periods of less than six months. The Plaintiffs in these related cases have no relationship to one another other than that they were both targeted by the same Defendants in pump-and-dump schemes employing the same *modus operandi* in close time proximity to one another.

Each of the Plaintiffs is a small-cap issuer listed on the NYSE-American Stock Exchange (the "NYSE-AmEx") whose shares have a history of light daily trading volume and low share price volatility. Both Plaintiffs, without their prior knowledge or consent, had the public market for their shares commandeered by the Defendants for brief periods—one week, more or less, in each case—during which time the Defendants rapidly accumulated a majority of each Plaintiff's publicly traded float and, having inflated the price of those shares through rapid-fire trading, just as rapidly liquidated their positions. In the course of their schemes, in fits of seeming absent-mindedness, the Defendants overlooked that they had accumulated more-than-10% beneficial ownership of a class of equity security of each Plaintiff, and thereby became fiduciaries and statutory insiders of each of them, obliged by the statute to disgorge any short swing profits they may have realized while in their fiduciary positions to their *cestui que trusts.*

These suits are brought by each of the Plaintiffs in its own right, and for its and its shareholders' own benefits. The customary calumnies directed at shareholder counsel in derivative litigation are here grotesquely misplaced and irrelevant. A response to them is relegated to Annex

I and Annex II, so as to quarantine them from the business of addressing the cognizable aspects of the Motions to Dismiss (Avalon Dkts. 27-29; New Concept Dkts. 20-22), which consists of three main points urged by Defendants:

1.   Under the general venue statute, 28 U.S.C. § 1391 (which was pleaded as an additional basis for jurisdiction, but which does not specifically govern the actions—rather than the one which controls this litigation under the Act, 15 U.S.C. § 78aa, as the Plaintiffs specifically alleged, *e.g.*, Avalon Am. Compl. ¶ 10), Defendants claim that venue is correct only in Puerto Rico, where Mr. Gentile claims to reside (for purposes of this suit), or in the districts of domicile of the Plaintiffs—notwithstanding that the Defendants are alleged to have executed or effected thousands of trades on the NYSE-AmEx within the Southern District of New York. Defendants argue that both suits should be dismissed because venue is improperly placed.

2.   Alternatively, but again based on an erroneous reliance on 28 U.S.C. § 1391 and 28 U.S.C. § 1406, Defendants assert that if these related actions are not dismissed, both cases should be transferred to the District of Puerto Rico.

3.   Contrary to Circuit and national precedent, Defendants attempt to have their Motions to Dismiss treated as a plenary trial of these cases, based solely on hearsay assertions proffered as facts supporting their arguments of law, and in the total absence of any record developed beyond the Complaints.

The limited purpose of motions to dismiss under F.R.C.P. 12(b)(3) or 12(b)(6) is to test the adequacy of the pleadings. Plaintiffs address the Defendants' Motions with this thought in mind.

## **DECISIONAL STANDARDS**

A motion under Rule 12(b)(3) for dismissal based on incorrect venue, or for transfer under 28 U.S.C. § 1406, is an appeal to the Court's discretion. *See, e.g.*, *Fredrikksson v. Sikorsky*

*Aircraft Corp., Inc.*, Nos. 07-cv-0214 & 3146 (ILG), 2008 WL 752469, at *2 (E.D.N.Y. Mar. 19, 2008); *see also U.S. v. Bank of Am. Acct. #XXX*4939, No. 5:14-cv-723(ATB), 2015 WL 224774, at *1 (N.D.N.Y. Jan. 15, 2015). Where, as here, a request to supplement the pleadings with limited discovery into the situs of transactions has been denied, what the court is left with, in its exercise of that discretion, is the text of the complaints and allegations presumed to be provable. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (adopting the standard applicable to motions for lack of personal jurisdiction under R.12(b)(2) to venue motions under R.12(b)(3): "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue. But if the court holds an evidentiary hearing ... the plaintiff must demonstrate venue by a preponderance of the evidence").

In deciding whether transfer to an alternative venue is appropriate notwithstanding proper venue in the original district, courts are instructed to consider the plaintiff's right to select a convenient forum, which is given "great weight," and is not to be disturbed in favor of an alternate forum more convenient to the defendants. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-107 (2d Cir. 2006); *accord Glasbrenner*, 417 F.3d at 358 ("substantial events giving rise to the claim occurred in both [districts], and venue was proper in either district. That being so, because Gulf chose to file suit in the S.D.N.Y., Glasbrenner's R.12(b)(3) motion should have been rejected"). "Transfer should not be ordered if the result is merely to shift the inconveniences to plaintiff." *Mathematica Policy Research, Inc. v. Addison-Wesley Pub. Co., Inc.*, No. 89 Civ. 3431 (JFK), 1989 WL 151268, at *1 (S.D.N.Y. Dec. 1, 1989).

A motion under R.12(b)(6) requires the court to "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC,* 570 F.3d 471, 475 (2d Cir. 2009) (reciting the R.12(b)(6) standard). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint must do more, however, than offer "naked assertions devoid of further factual enhancement." *Id.* A court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

"For purposes of a motion to dismiss the court may deem a complaint to include any written instruments attached to it as an exhibit or any statements or documents incorporated in it by reference, as well as … document that the plaintiff[s] either possessed or knew about and upon which [they] relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d. 81, 88 (2d Cir 2000). The complaints reference SEC Forms 3 and 4, and Schedules 13D filed by the Defendants, and tabulations of public data regarding share trading volume and prices on the NYSE-AmEx, which relate to the activities of the Defendants. Accordingly, those documents may be considered on the Motions to Dismiss. Naked declarations of facts not included in the Complaints, or "alternative facts" proffered by Defendants or their counsel, are not to be credited over the facts alleged in the Complaints and these referenced documents.

## FACTS

The operative facts are as stated in the Complaints and, on these Motions, must be accepted as true. *Iqbal,* 556 U.S. at 678.

For purposes of these Motions, Plaintiffs accept that Guy Gentile is a domiciliary of Puerto Rico.

The following "facts" propounded by the defendants in their briefs, are simply not before the Court on these Motions, as they are not within the range of matters or documents cognizable on a Rule 12(b)(6) motion:

1.   That the Defendants' activities in trading shares of the Plaintiffs were "high frequency" trading, algorithmic trades, or trades by persons not having possession of shares (Def. Br. in

Support of Mot. to Dismiss (collectively, "Def. Br.") p.2, filed at Avalon Dkt. 28 & New Concept Dkt. 21); nor that, if true, liability is in any way affected.

2.   That unspecified share trading orders placed by the Defendants failed to settle (Def. Br. p.2); nor that, if true, liability is in any way affected.

3.   That the Defendants' activities "clearly fall outside the framework of Section 16(b)." (Id.)

4.   That the contemporaneous unawareness of either or both of the Plaintiffs of the activities of the Defendants at the times of their trading in any way affects the liability of the Defendants. (Id.)

5.   That the accusations of footnotes 1 and 2 and related text, addressed at Annex I and Annex II hereto, are properly before the Court or in any way relevant. (Id. pp. 2-3.)

6.   That upon purportedly learning that shares traded by the Defendants could not or would not settle, the Defendants acted to reduce or close out their positions. (Id. p.3.)

7.   That there is no allegation that Guy Gentile ever obtained any profit or that MintBroker would not be able to satisfy a judgment. (Id.)

8.   That NYSE-AmEx servers are located in New Jersey (Id. p.4), or the significance of that.

9.   That nothing occurred in this District, nor do any of the parties have contacts here. (Id. p.5.)

10. That trades never settled. (Id. p.6.)

11. That the Defendants "Properly filed Form[s] [*sic*] 13D." (Id.)

12. That it is "common knowledge that the vast majority of trading no longer takes place on the floor of the exchange." (Id. p.9.)

13. Even if servers were located in New York City, that would not create venue (Id. p.11.)

14. That there was "computer driven short-selling," the significance of which, if true, is not discussed. (Id. p.14.)

There are numerous other assertions, declamations and contentions by the defense, all of which are irrelevant to motions to dismiss and are properly matters for pleading and proof with competent submission of admissible evidence and opportunities afforded to the plaintiffs for discovery and development of the record.

## **ARGUMENT**

### I.  **Venue in Both Cases Is Proper in the Southern District of New York**

Venue in any action brought to enforce any provision of the Act, including Section 16(b), is governed by Section 27 of the Act, 15 U.S.C. § 78aa, and proper in any federal district "wherein any act or transaction constituting the violation occurred." The occurrence of either a purchase or a sale in this district is sufficient to establish venue. *Blau v. Mission Corp.,* 212 F.2d 77, 79 (2d Cir. 1954); *see generally* Romeo & Dye, *Section 16 Treatise and Reporting Guide,* 4th ed. ("Romeo & Dye Treatise") § 9.03 & n.164 (collecting cases); *see also* Romeo & Dye, *The Section 16 Deskbook,* Winter ed. 2018 § III(D)(5).

The Avalon Amended Complaint (at ¶ 13) pleads:

> **"13**.    At all times relevant the Class A common stock of AVALON was registered under Section 12(b) of the Act and was traded on the NYSE-Amex Exchange, a National Securities Exchange located within this district.  All or nearly all of the purchases or sales to be described herein took place upon such exchange."

The New Concept Complaint (at ¶ 4) pleads:

> **"4.**    At all times relevant the common stock of NEW CONCEPT was registered under Section 12(b) of the Act and was traded under the symbol GBR on the NYSE-Amex Exchange, a National Securities Exchange located within this district. All or most of the purchases or sales to be described took place upon such exchange."

The Complaints go on to allege thousands of transactions by the Defendants in shares of the respective Plaintiffs. Plaintiffs' chosen venue is based on allegations that these

thousands of transactions giving rise to violations of Section 16(b) were executed on the NYSE-AmEx—not merely that their shares were listed on that national securities exchange.

A purchase or sale will generally be deemed to have occurred for Section 16(b) venue purposes in the district in which the parties became bound to the transaction. A transaction using the facilities of a national securities exchange creates venue in the district where the exchange is located. *See* Romeo & Dye Treatise § 9.03[5][a] & n.166 (For "a transaction on a national securities exchange" venue exists for purposes of Section 16(b) actions in "the district in which the exchange was located") (collecting cases). *Compare CRA Realty Corp. v. Gold Reserve Corp.,* No. 88 Civ. 4297(MP), 1988 WL 144752, at *1 (S.D.N.Y. Sept. 14, 1988) (no venue in N.Y. where 16(b) complaint alleged short swing trading on the Spokane stock exchange and had no connection with "any stock exchange located in New York"). Plaintiffs ask the court to take judicial notice that the NYSE-AmEx is a national securities exchange located at the corner of Broad and Wall Streets in New York City, a 10-minute walk from the steps of the Courthouse.

The Motions to Dismiss address venue in two ways:

1.   By urging that 28 U.S.C. § 1391 is the controlling venue provision, and that applying 28 U.S.C. § 1391 militates in favor of Puerto Rico (*see* Def. Br. 10)—notwithstanding that venue is expressly and more specifically pleaded as derived from 15 U.S.C. § 78aa. (*See* Avalon Am. Compl. ¶ 10; New Concept Compl. ¶ 1.)

2.   By denying that Defendants' transactions in Plaintiffs' securities involved any contacts whatsoever with this District. (*See* Def. Br. p.5: "Venue … cannot be proper in this District under 18 U.S.C. § 1391(b)(2), which requires a substantial portion of the events or omissions to have taken place here. They did not. Nothing occurred in this district, nor do any of the parties have contacts here.")

On the applicability of 18 U.S.C. § 1391, that statute expressly operates "except as

otherwise provided by law." *FourCo Glass Co. v Tranmirra Prods. Corp.*, 353 U.S. 222, 228 (1957). As the Supreme Court has further held, a specific venue statute governing an action under federal law—in this case, the venue provision for cases under the Act is at Section 27, 15 U.S.C. §78aa—*is applied to the exclusion* of any conflict with the general federal venue statute (i.e., 28 U.S.C. § 1391, the statute purportedly applied by the Defendants). *See FourCo Glass*, 353 U.S. at 228 (holding venue statute applicable to patent claims to the exclusion of general venue statute); *see also* Romeo & Dye Treatise § 9.03 & n.163 (collecting cases).

On the denial that anything—"anything" being a big claim!—took place within this District, discovery will ultimately sort out its accuracy. The Complaints in these suits adequately plead facts, which are taken as true for purposes of the Motions and place venue properly in this District.

Defendants assert that there is no connection to New York for venue purposes because (they claim) "not a single trade in either company was routed directly to the New York Stock Exchange, but through a Connecticut-based broker dealer and a New Jersey-based stock exchange." (Def. Ltr. Resp. to Pl.'s Ltr. Mot. for Venue Discovery ("Def. Ltr.") p.2 & n.1, filed at New Concept Dkt. 18 & Avalon Dkt. 25.) Defendants also claim that certain trades they reported were never executed or did not settle (e.g., Def. Br. p.14), though they do not specify which, or how many, of the thousands of trades were never settled, for whatever reason.

Even if established, these facts would not eliminate venue in this District. Defendants' trading occurred on the NYSE-AmEx, an exchange located within this District, for purposes of the applicable venue analysis—even if Defendants had no direct contact with the exchange, and no specific intent to trade on the exchange, or knowledge that their trades would be routed to the exchange by another broker. *See, e.g.*, *U.S. v. Svoboda*, 347 F.3d 471, 483 & n.13 (2d Cir. 2003) (holding that the execution of trades on the NYSE-AmEx, even "indirectly" or

unintentionally, placed venue in the S.D.N.Y. for purposes of venue in criminal securities cases, which the court noted was more restrictive than venue in civil cases under 15 U.S.C. § 78aa, in that criminal cases required an added element of foreseeability); *accord U.S. v. Geibel*, 369 F.3d 682, 697-98 (2d Cir. 2004) (venue established in the S.D.N.Y. with respect to trades that the parties stipulated were actually executed on, i.e., "routed to," the NYSE-AmEx, by or through third-party brokers or agents); *see also Bunker Ramo-Eltra Corp. v. Fairchild Indus., Inc.*, No. 83 Civ. 3520 (MJL), 1984 WL 492, at *1 (S.D.N.Y. June 15, 1984) (transactions on the NYSE on behalf of the defendants by a N.Y. broker and cleared by a N.Y. transfer agent occurred within this District for purposes of Section 16(b) venue).

Defendants criticize this longstanding and codified rule of venue in securities cases, which (Plaintiffs noted) has been in force in this Circuit since *Blau v Mission Corp.*, 212 F.2d 77 (2d Cir. 1954), as anachronistic "Truman-era" jurisprudence (Def. Ltr. p.2) ill-suited to the modern era, in which (their Brief asserts) most trading on the NYSE-AmEx occurs on electronic servers. Defendants further argue that, "While the location of the servers on which trades are executed, alone, cannot possibly serve as a basis for venue for any case, as a factual matter those servers are in New Jersey, not in New York." (Def. Br. pp.4, 9 & Ex. C.) In fact, the law has evolved to take into account server locations—and in precisely the manner that Defendants assure the Court would be "impossible."

In the widely-discussed case *U.S. v. Johnson*, 510 F.3d 521 (4th Cir. 2007), the Fourth Circuit held that the SEC's transmission of Johnson's allegedly misleading disclosures, without Johnson's knowledge, to the SEC's servers in Alexandria, Virginia constituted conduct by Johnson in violation of the Act in the Eastern District of Virginia under the same "unmistakably broad" venue provision of the Securities Exchange Act applicable in this case. *Accord U.S. v. Royer*, 549 F.3d 886, 894 (2d Cir. 2008) (the "Receipt of electronic transmissions in a district is

sufficient to establish venue activity" for securities cases under the applicable venue provision of the Act, whether or not the transmissions represented direct trading by the defendants in the district).

In response to Johnson's protests that he reasonably understood that disclosures were filed with the SEC in Washington, D.C., but could not have anticipated the physical location of the SEC's servers in Virginia, the court emphasized that the location of a server provides an *additional* venue available for the convenience of securities litigants, but does not replace (and is not "even preferred" over) alternative venues, which also remain available as districts in which the conduct occurred. As the *Johnson* court suggested, SEC filings may be submitted in *both* D.C. *and* in Virginia for purposes of venue under the Act. Here, Defendants' trading on the NYSE-AmEx occurred in this District, where the NYSE-AmEx is (still) located—and may *also* have occurred on the NYSE-AmEx servers putatively in New Jersey (as Defendants contend), as well as in other possible locations, *including* (but not in any way limited to) Defendants' preferred District of Puerto Rico.

For similar reasons, Defendants' (unproven) assertion that an unspecified portion of their trades did not settle does not eliminate venue in this District. Even (and especially) in this post-Truman era of electronic trading, courts continue to expand the potential venues available under the applicable provision, and consistently find venue to be proper under the Act in any district in which stock exchanges or markets are manipulated by (or as a "downward effect" of) any actions taken by defendants as part of their scheme to violate the Act—whether or not the defendants directly traded or transferred securities on the exchange or in the district. *See, e.g.*, *Royer*, 549 F.3d at 894 (finding venue proper under 15 U.S.C §78aa because, even "quite aside from any trading," defendants were alleged to have acted through non-party "subscribers" to violate the Act by "put[ting] artificial downward pressure on the market" and on "market makers"

in the district); *see also U.S. v. Lange*, 834 F.3d 58, 72 (2d Cir. 2016) (venue was proper in the E.D.N.Y. where investments were allegedly solicited in the district in violation of the Act, regardless of whether any investments were actually made by district residents in response to the solicitation); *accord FERC v. Barclays Bank PLC*, 105 F. Supp. 3d 1121, 1135-36 (E.D. Cal. 2015) (finding venue appropriate in California and denying defendants' motion to transfer to home district of New York, where defendants were alleged to have engaged in "purely financial" manipulative transactions, which "affected the wholesale price of electricity, and ultimately the retail price paid by consumers in California and elsewhere in the western U.S.," construing similar venue provision of the Federal Power Act (FPA) consistently with venue provision of the Act, and citing securities cases collected from multiple jurisdictions, including this District).

Plaintiffs allege that all of Defendants' reported trades in the Plaintiffs' securities were placed on the NYSE-AmEx, or with the intent and effect of manipulating the market for trading in the Plaintiffs' securities on the NYSE-AmEx, and as part of an organized scheme by which Defendants realized short swing profits in violation of Section 16(b). Venue is proper in this District under the longstanding and current case law—regardless of whether any (or all) of Defendants' trades were placed by or through third-party brokers or exchanges (or, for that matter, on the NYSE-AmEx servers in New Jersey), and even if some (or all) of the trades failed to settle for any reason.

Defendants also argue that the supposed failure of certain trades to settle would defeat their Section 16(b) liability—e.g., by claiming that Defendants did not actually acquire "beneficial ownership" of 10% of the Plaintiffs' outstanding securities and were not Section 16 insiders; or that some portion of their reported short swing trading did not occur (on the NYSE-AmEx, or at all). To the extent Defendants purport to raise the issue of settlement to contradict the allegations of the Complaints (including the referenced SEC filings and publicly available

documents, read with all inferences drawn in the Plaintiffs' favor), Defendants cannot prove these facts by affidavit in the context of this venue motion (absent an evidentiary hearing, which the Court, in its discretion, declined to hold). *See Glasbrenner*, 417 F.3d at 355.

In any event, Defendants can be sued in this District regardless of whether their transactions settled (or "cleared") on the NYSE-AmEx, and Defendants can also be held liable under Section 16(b) regardless of whether individual trades settled at all. As a matter of law under applicable SEC Rules, Defendants may become greater-than 10% "beneficial owners" subject to Section 16, and engage in short swing trading, without taking direct possession of any actual shares of stock. *See* SEC Rules 16a-1 & 13d-3 (17 C.F.R. §§ 240.16a-1 & 240.13d-3) (defining "beneficial ownership," for purposes of the 10% threshold under 16(b), by reference to the Section 13(d) criteria of voting or investment control—including control acquired by "agreement," rather than by direct acquisition of the underlying security); *see also* SEC Rule 16b-6 (17 C.F.R. § 240.16b-6) ( "purchases" and "sales" for purposes of 16(b) include the establishment of "derivative" rights with respect to securities; physical settlement is not required). Defendants' other arguments against the application of Section 16(b) to their trading are equally without merit, as further discussed in Point III.

## II. The District of Puerto Rico Is Not a More Convenient Forum, but Should the Court Find Venue to Be Incorrect in This District, Plaintiffs Will Consent to a Transfer There (Only) in Lieu of Dismissal.

Because venue is proper in this District, these cases are not subject to dismissal based on venue. Nonetheless, Plaintiffs acknowledge that venue would also be proper in the District of Puerto Rico. Accordingly, the Defendants' request to transfer these cases is evaluated by determining which of the parties' preferred (but equally available) venues is more convenient.

In that respect, the personal convenience of the Defendants does not sufficiently outweigh the Plaintiffs' right to bring the case in any venue permitted under the Act, including this

District. Defendants are instead expected to identify specific witnesses who would be more inconvenienced by testifying in the original venue than in their proposed venue. *See, e.g.*, *Mathematica*, 1989 WL 151268, at *1-2 (refusing to override plaintiff's choice of forum absent identification of specific witnesses expected to testify, and who would find the transfer more convenient); *compare Orden v. Cornell Univ.*, 243 F. Supp. 3d 287, 293 (N.D.N.Y. 2017) (plaintiff's district of residence was not more convenient than district that was the "locus of conduct alleged in complaint" and closer to most evidence and potential witnesses).

The only potential witnesses described by the Defendants with an interest in the location of these actions are (supposedly) a Connecticut broker and a New Jersey exchange. There is no reasonable suggestion that these witnesses would find it more convenient to travel to San Juan than to New York (i.e., within their "tri-state area") to provide evidence for these cases. On the other hand, the brokers, exchanges or agents involved in facilitating Defendants' trading of Plaintiffs' securities on the NYSE-AmEx, could reasonably expect to be called to testify about that trading activity in New York—which is where the exchange is in fact, located and based, for all relevant purposes, including venue.

Plaintiffs respectfully submit that venue is both proper and more convenient in this District, and these cases should neither be dismissed nor transferred. Nonetheless, if the Court finds venue in this District to be incorrect and otherwise determines to dismiss one or both of the actions on that basis, Plaintiffs instead consent to the alternative relief requested by the Defendants of transfer of both cases to the District of Puerto Rico at San Juan.

### III. The Defendants' Contention That Their Actions Were Beyond the Reach of Section 16(b) Is Wholly Without Merit.

The law of the Second Circuit, as, indeed, of every other circuit that has considered the argument raised by the defense that "this time it's different," is perhaps most clearly expressed in *Donoghue v. Bulldog Investors General Partnership*, 696 F.3d 170, 174 (2d Cir. 2012):

"The purpose of Sec. 16(b) is stated in its opening clause: to prevent 'the unfair use of information which may have been obtained by a beneficial owner, director or officer by reason of his relationship to the issuer." 15 U.S.C. § 78p(b)…. Congress did not simply proscribe trading on inside information; rather, it enacted a 'flat rule' that takes the profits out of an entire 'class of transactions' occurring within a prescribed time frame 'in which the possibility of abuse' of inside information 'was believed to be intolerably great' *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. at 422.

In discussing the reason for Sec. 16(b)'s rule of strict liability, Judge Learned Hand observed that 'if only those persons were liable, who could be proved to have a bargaining advantage, the execution of the statute would be so encumbered as to defeat its whole purpose.' *Gratz v. Claughton,* 187 F.2d 45, 50 (2d Cir. 1951) (reiterating well-settled principle 'that a statute may provide any means which can reasonably be thought necessary to deal with the [identified] evil, even though they may cover instances where it is not present').

… Sec. 16(b)'s flat rule effectively makes 10% 'beneficial owners fiduciaries as directors and officers were anyway,' at least to the extent of making *all* short-swing transactions by such persons in the issuer's stock making *all* short-swing transactions by such persons in the issuer's stock 'breaches of trust.' *Id*. at 49 (internal quotation marks omitted); *see also Adler v. Klawans,* 267 F.2d 840, 844 (2d Cir. 1959) (commenting that Congress' 'intent in the enactment of Sec. 16(b) was to discourage what was reasonably thought to be a widespread abuse of a fiduciary relationship' by 'three classes of persons').

Thus, Bulldog cannot maintain that it owed no fiduciary duty to Invesco. That fiduciary duty was created by Sec. 16(b), and it conferred upon Invesco any enforceable legal right to expect Bulldog to refrain from engaging in any short-swing trading in its stock.

Nor can Bulldog deny any injury to the issuer from its short-swing trading by pointing to the fact that Sec. 16(b) operates without regard to whether the statutory fiduciaries were actually privy to inside information or whether they traded with the intent to profit from such information. This confuses the wrongdoing that prompted the enactment of Sec. 16(b) – trading on inside information – with the legal right that Congress created to address that wrongdoing – a 10% beneficial owner's fiduciary duty to the issuer not to engage in *any* short-swing trading.

As Judge Hand explained, even at common law, a fiduciary's duty to a beneficiary often required more than the avoidance of actual unfair dealing. A trustee with power to sell trust property is under a duty not to sell to himself either at private sale or at auction, whether the property has a market price or not, and whether the trustee makes a profit thereby.' *Gratz v. Claughton,* 187 F2d at 49 (quoting *Restatement of Trusts 170(l).* cmt b). Drawing an analogy between trust law and the fiduciary duty created by Sec.16(b), Judge Hand observe that 'nobody is obliged to become a director, an officer, or a beneficial owner; just as nobody is obliged to become the trustee of a private trust' but, as soon as he does so, he accepts *whatever* are the limitations, obligations and conditions attached to the position, and any default in fulfilling them  is as much a 'violation of law as though it were attended by the sanction of imprisonment.' *Id.*

14

Thus, pursuant to Sec. 16(b), when a stock purchaser chooses to acquire a 10% beneficial ownership stake in an issuer, he becomes a corporate insider and thereby accepts the limitation that attaches to his fiduciary status: not to engage in any short-swing trading in the issuer's stock. *Id.* At that point, injury depends not on whether the Sec. 16(b) fiduciary traded on inside information, but on whether he traded at all.

To be sure, this statutory arrangement provides issuers (and their shareholders) with an incentive to police short-swing trading by beneficial owners, directors and officers, to the benefit of the market as a whole. Nevertheless, because the issuer's right to profits under Sec. 16(b) derives from breach of a fiduciary duty created by the statute in favor of the issuer, the issuer is no mere bounty hunter but, rather, a person with a cognizable claim to compensation for the invasion of a legal right."

Plaintiffs' lead counsel, who appeared for the plaintiff in *Bulldog*, has little to add to the Second Circuit's definitive statement of the reach of the short swing trading statute to persons in the position of the Defendants.

Other Circuits similarly and strictly apply Section 16(b) consistently with the legislative purpose of the statute, as reviewed in *Bulldog*, to all voluntary purchases and sales by statutory insiders, including greater-than 10% "beneficial owners," whether or not they in possession of non-public information or (as Defendants argue) in positions adverse or hostile to the Company. *See, e.g.*, *Tex. Intern. Airlines v. Natl. Airlines, Inc.*, 714 F.2d 533, 539-40 (5th Cir. 1983) (joining other courts uniformly rejecting the argument that possession of "inside" information is a necessary component to 16(b) liability, and finding no exception applied to ordinary stock purchases and sales by "hostile" insider).

In the final footnote of their Brief, Defendants also assert that Plaintiffs' allegations that Defendants were engaged in a "pump and dump scheme" somehow defeats Plaintiffs' claims under Section 16(b)—and suggest that all claims regarding "pump and dump" trading can only be brought by Defendants' trading counterparties. (Def. Br. p. 14 & n.6; presumably, Defendants refer to the standing requirements for fraud claims under Section 10(b) of the Act). But in the securities context, as in other contexts, the same conduct can constitute multiple violations of law. More

specifically, courts have upheld strict liability Section 16(b) claims based on pump and dump schemes, and other forms of market manipulation, which include short swing trading alleged as part of the scheme (as in this case)—even where the different, but overlapping, substantive or procedural elements of fraud or misappropriation-based insider trading claims under Section 10(b) are not met. *See Alattar v. Bell*, No. 13-cv-02990-MSK, 2014 WL 2442204, at *3 (D. Colo. May 30, 2014) (permitting company to intervene to assert 16(b) claim based on pump and dump scheme, in addition to common law claims based on same conduct asserted by individual plaintiff); *see also Gem Global Yield Fund, Ltd. v. Surgilight, Inc.*, No. 04-civ-4451-KMK, 2006 WL 2389345, at *12-13 (S.D.N.Y. Aug. 17, 2006) (permitting amended answer to include 16(b) counterclaims, which are subject to a two-year statute of limitations beginning from the realization of profits, but finding 10(b) claims based on same market manipulation time-barred under shorter one-year "discovery" statute of limitations applicable to fraud-based claims); *Lewis v. Adler,* 331 F. Supp. 1258, 1264-67 (S.D.N.Y. 1971) (dismissing fraud claim under 10(b), but upholding 16(b) strict liability claim based on same conduct).

## <u>CONCLUSION</u>

The operative Avalon and New Concept Complaints adequately plead valid venue in this District and valid claims for relief. The Defendants' Motions to Dismiss and Alternative Motions to Transfer should be denied.


Dated: January 29, 2019
       Southampton, NY

     Respectfully submitted,

*s/ David Lopez*                *s/ Miriam Tauber*
_____   _____
David Lopez, Esq. (DL-6779)        Miriam Tauber (MT-1979)
LAW OFFICES OF DAVID LOPEZ    MIRIAM TAUBER LAW PLLC
171 Edge of Woods Road, PO Box 323  885 Park Avenue 2A
Southampton NY 11968         New York NY 10075
(631) 287-5520               (323) 790-4881
DavidLopezEsq@aol.com        MiriamTauberLaw@gmail.com


     *Attorneys for Plaintiff*