# ANNEX I

## ANNEX I

This Annex I is offered as a matter of personal privilege by plaintiffs' counsel in response to the self-disproving, irresponsible and untrue claims of the defense contained at fns. 1 and 2 and related text to the Defendants' Memorandum of Law In Support of Motion To Dismiss. It is presented lest silence be taken as acquiescence to the nonsense there appearing. There is no valid reason for treating this detour and frolic, offensive or defensive, as argument for or against the pending motion. It is simply an irrelevance.

Deborah Donoghue, accused in fn. 1 of having "conspired" to sue in the courts, is a client whom I have been privileged to represent for many years, as I previously did her father, Richard Morales, in litigation under Section 16(b) of the Act as in other matters.  A lawyer-client relationship is not often characterized as a "conspiracy", although the Marx Brothers may have made the suggestion in their later movies. Ms. Donoghue was the plaintiff in *Donoghue v. Bulldog Investors Gen. P'shp,* 696 F.3d 170 (2nd Cir; 2012), excerpted at length at Point III of the plaintiff's Brief In Opposition.  Her interest and success in the development of the law may cause pain to the defense but they did not appear to do so to our appellate judges.  Ms. Donoghue is neither a party nor a witness in this case and involving her in defense slanders is hard to penetrate.  Aaron Rubenstein, who is also neither a party nor a witness in these suits, is primarily the client of my colleague, Miriam Tauber, who has asked me from time to time to associate myself as co-counsel in a consultative capacity.  I have never met nor spoken to Mr. Rubenstein. Neither Ms. Donoghue nor Mr. Rubenstein has ever had her or his standing or adequacy or fitness to prosecute insider traders in lawsuits questioned beyond being called upon to demonstrate share ownership.  Neither has, prior to this motion, ever been accused of conspiracy or of any other litigation or criminal impropriety.

Conspiracies should be made of sterner stuff than this.

At fn. 2 to the defense brief and associated text the defense informs the court that

"…recent cases include decisions in this Circuit against Plaintiff's counsel here who have been strongly criticized for their unethical solicitation of clients. See e.g., *Rubenstein v. Live Nation Entertainment,* Fed Sec. L. Rep. P. 99744 (S.S.N.Y., June 20, 2017) (addressing question of whether Plaintiffs' counsel here should be punished with sanctions); *see, also Donoghue v. Centillium Commc'ns Inc.*, 05 Civ. 4082 WHP) 2006 WL 775122, at *5 (S.D.N.Y. Mar. 28, 2006) (court dismissing another case brought by Plaintiff's counsel *improperly* [emphasis added] seeking to expand Section 16(b) liability).

The defense has made the self-goal blunder of citing to specific authority purported to support its claims presuming, apparently, that no one would bother to actually consult those cases. The most cursory reading of the *Live Nation* citation will demonstrate that Judge Sweet's decision dealt with matters of substantive law without the slightest hint of censure or accusation of wrongdoing against the plaintiff or his counsel; and that the *Centillium* decision was Judge Pauley's attempt to reach the right answer in a then unexplored issue of law – whether the settlement of a pre-paid variable forward instrument should be treated as a sale of underlying shares at the time of inception or at the time of settlement – a question which was only recently settled in this Circuit through a line of cases in which I further participated that ended in the Second Circuit's decision in *Chechele v. Sperling,* 758 F.3d 463 (2d Cir., 2014).

A motion for sanctions *was* brought in *Live Nation*, but it did not give rise to the decision cited. A copy of Judge Sweet's actual sanctions decision is appended as Annex II. Sanctions were denied with a model explication of the place, purpose and bounds of good-faith, non-frivolous advocacy in the development of the law. See, F.R.C.P. Rule 11(b)(2).

I was admitted to the bar of the State of New York, First Department, in 1966, 53 years ago, more or less, and to the bar of this court in 1970, 49 years ago, more or less. I have also been admitted as a regular member to the bars of all Federal Courts in the State of New York, the District of Vermont and the District of Colorado, with *pro hac vice* admissions to two or three dozen district courts from time to time. I am also a member of the bars of eight of the United States Courts of Appeal and of the Supreme Court of the United States. I have practiced before every court of which I am or have been a regular or *pro hac vice*

member. I have never been sanctioned, admonished, censured or received bar discipline of any sort for any reason at any time nor have I ever been "strongly criticized", or even weakly criticized, in any decision anywhere "for [my non-existent] unethical solicitation of clients". I have never even received a parking ticket in proximity to a courthouse.

My colleague, Miriam Tauber, being younger than I and having had less opportunity to get into trouble, is similarly blameless. She was admitted to the bar of the State of New York in 2007, some 12 years ago more or less, and to the bar of this court in 2008, some 11 years ago, more or less. She also has an unblemished ethical record.

I trust we may now proceed to the litigation of these suits on a professional plane on which representations of counsel to the court conform to the standards mandated by F.R.C.P. Rule 11(b).

I affirm the truth of all factual matter in the foregoing upon my oath as an attorney intending the penalties of perjury to apply and cognizant of my obligations under F.R.C.P. Rule 11.

Dated: January 29, 2019

_____
David Lopez