UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVALON HOLDINGS CORP., <br><br> Plaintiff, <br><br> v. <br><br> GUY GENTILE and <br> MINTBROKER INTERNATIONAL, LTD. <br><br> Defendants. | No. 18-Civ-7291-VSB <br><br> (ECF) |
| Related to: | |
| NEW CONCEPT ENERGY, INC. <br><br> Plaintiff, <br><br> v. <br><br> GUY GENTILE and <br> MINTBROKER INTERNATIONAL, LTD. <br><br> Defendants. | No. 18-Civ. 8896-VSB |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(3) AND IN THE ALTERNATIVE TO TRANSFER UNDER 28 U.S.C. §1406 AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

FORD O'BRIEN LLP

Adam C. Ford
Robert S. Landy
575 Fifth Avenue
17th Floor
New York, New York 10017
aford@fordobrien.com
rlandy@fordobrien.com
(212) 858-0040
*Attorneys for Defendants*

February 12, 2019

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ........................................................................................................................................ 1

    I.   In 2018, trading "on" the New York Stock Exchange does not imply that any act occurred in New York because the Exchange's trading platform moved to New Jersey in 2010 ................................................................................................................................ 2

    II.   The caselaw on which Plaintiffs rely confirms that for purposes of venue based on the location of an alleged Section 16(b) violation, only the actual location of the trade is relevant ............................................................................................................................... 3

    III.   None of the cases plaintiffs cite concerning trading in the 1990s and earlier, can support the proposition that trading "on" a New-York-headquartered exchange constitutes an act in New York if the trading occurred elsewhere .......................................................... 5

    IV.   Plaintiffs' new market-effects-based theory of venue fails because the alleged "offense" at issue in the complaints and relevant for the purposes of venue is short-swing profits, not market manipulation ................................................................................................... 6

    V.   Because the trades at issue here lead to a novel application of Section 16(b), after venue is established, the appropriate Court must consider whether the complaints allege potential possession and use of inside information – they do not ................................... 7

CONCLUSION ................................................................................................................................ 10

## **TABLE OF AUTHORITIES**

*Basile v. Walt Disney Co.*,
  717 F. Supp. 2d. 381 (S.D.N.Y. 2010) ................................................................................... 2

*Blau v. Mission Corp*,
  212 F. 2d 77 (2d Cir. 1954) ................................................................................................... 5

*Bunker Ramo-Eltra Corp. v. Fairchild Indus., Inc.*,
  Fed Sec L Rep P 91557, 1984 WL 492 (S.D.N.Y. June 15, 1984) ....................................... 5

*Cartier v. Micha, Inc.*,
  No. 06 Civ. 4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007).................................. 2

*Chechele v. Sperling*,
  Fed. Sec. L. Rep. P. 96786 (S.D.N.Y. Mar. 29, 2012] ......................................................... 7

*C.R.A. Realty Corp. v. Gold Reserve Corp.*,
  Fed. Sec. L. Rep. P 94058, 1988 WL 144752 (S.D.N.Y. Sept. 14, 1988) .............. 3, 4, 5

*Donoghue v. Centillium Commc'ns Inc.*,
  No. 05 Civ. 4082(WHP), 2006 WL 775122, at *5 (S.D.N.Y. Mar. 28, 2006)............................. 7

*Rothstein v. Carriere*,
  41 F. Supp. 2d. 381 (E.D.N.Y. 1999)................................................................................... 2

*Rubenstein v. Live Nation Entertainment,*
  Fed. Sec. L. Rep. P. 99744 (S.D.N.Y. June 20, 2017) ......................................................... 7

*U.S. v. Geibel*,
  369 F3d 682 (2d Cir. 2004) ................................................................................................... 5

*U.S. v. Johnson*,
  510 F.3d 521 (4th Cir, 2007) ................................................................................................. 4

*U.S. v. Svoboda*,
  347 F. 3d 471 (2d Cir. 2003) ................................................................................................. 5

Statutes

15 U.S.C. §78aa..................................................................................................................6, 7
28 U.S.C. §1406 ........................................................................................................................1

Pursuant to Fed R. Civ. P. 12(b)(3) and 28 U.S.C. §1406, by their undersigned attorneys, Defendant MintBroker International, Ltd. (Bahamas) ("MBI") and Guy Gentile ("Gentile") (collectively "Defendants") respectfully submit this reply memorandum of law in support of their motions to dismiss these related actions for failure to state a claim and for improper venue, or in the alternative, to transfer this action to the United States District Court for the District of Puerto Rico.

## ARGUMENT

In these consolidated cases, Plaintiffs from Ohio and Texas failed to attend to the requirements of venue for their claims against two defendants from the Bahamas and Puerto Rico. In Defendants' moving papers, they established that the complaints fail to allege the presence of either defendant in this district sufficient for the purposes of venue (which Plaintiffs now concede) or the occurrence of any acts in this district (at all).  While Plaintiffs did allege "on information and belief," (although without any good faith belief) that some of the trades at issue in their Section 16(b) claim occurred "on" the Amex-New York Stock Exchange (the "NYSE" or the "Exchange"), they failed to present any rebuttal to Defendants evidence establishing that the trades placed in this matter were executed outside of New York.  (Nor do Plaintiffs address Defendants' disclosure, made in their opposition to Plaintiffs' motion for limited discovery, that all Defendants' trades were placed with brokers in either New Jersey or Connecticut.)  But even if some trades were eventually routed to the NYSE without Defendant's knowledge or expectation – something Plaintiffs cannot show – Plaintiffs fail to account for the fact that trading "on" the NYSE has, for nearly a decade, occurred via electronic transactions on equipment and in facilities located outside of New York, in Mahwah, New Jersey.

In opposition, Plaintiffs do not contest that trades placed "on" the NYSE occur in New Jersey, nor do they point to any other acts in this district that would constitute a violation of Section 16(b) and thus suffice to place venue in this district.  Rather, they merely point the Court

1

to a litany of cases that stand for the same general proposition: that courts look to the physical place where acts or events occur in order to determine venue.  Defendants do not dispute the validity of this rational principle.  But because none of the acts or events at issue in the complaints physically took place in this district, venue is improper, and this case should be dismissed, or in the interests of justice, transferred to the District of Puerto Rico where venue would have been proper.

"It is hornbook law that venue and personal jurisdiction are threshold procedural issues to be decided before the substantive grounds in a motion to dismiss." *Basile v. Walt Disney Co*., 717 F. Supp. 2d. 381, 385 (S.D.N.Y. 2010).  "Where venue is challenged, it is plaintiff's burden to show that it is proper in the forum district. *Rothstein v. Carriere*, 41 F. Supp. 2d. 381, 386 (E.D.N.Y. 1999).  "The Court, then, must address whether plaintiff has demonstrated proper venue with respect to each count in the Complaint. In making that determination, 'the Court may consider documents outside of the complaint.' *Basile,* 717 F. Supp. 2d. at 385 quoting *Cartier v. Micha, Inc*., No. 06 Civ. 4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007).

I. **In 2018, trading "on" the New York Stock Exchange does not imply that any act occurred in New York because the Exchange's trading platform moved to New Jersey in 2010**

As set forth in the Defendants' opening papers, there are multiple districts where venue is clearly proper for either case. The Southern District of New York is not one of these.   There is one district where venue is clearly proper for both, Puerto Rico.  In preparing the complaint in the Avalon action, the amended complaint in the Avalon action, and the complaint in the New Concept Energy action, the jointly-represented plaintiffs merely selected their counsel's preferred court, one closest to their offices, on the single unsupported allegation that some trades in the securities at issue, took place "on" the NYSE, an entity headquartered in New York, but with trading operations and servers located in Mahwah, New Jersey.  But the NYSE is not a party to this action, nor is the Exchange the subject of dispute or the alleged offence.   The

Exchange is only relevant because the Plaintiffs allege "on information and belief" trades were eventually routed to it.  In other words, Plaintiffs rely on the location of one building owned by the Exchange (and its historical headquarters) as a proxy for the location of trades at issue.  The law of venue prohibits this leap in logic.  But in 2018, all that a trade occurring "on" the NYSE means is that a "buy" order met a "sell" order on a server located in New Jersey. Plaintiffs concede this.  Because parties to a motion regarding venue are permitted to present evidence beyond the pleadings, Plaintiffs *had* the opportunity to submit evidence that might suggest a trade actually occurred in New York.  They did not.[1]

While in the 20th-century caselaw on which Plaintiffs rely, trading "on" the NYSE meant, perforce, trading *in* New York as matter of unavoidable fact, that is no longer the case. The reasoning of those cases is still sound, but the facts have changed. The New York Jets and the New York Giants may still be New York teams, but if a dispute arises from something that occurs at one of their home games, the relevant venue is New Jersey. Plaintiffs fail to acknowledge this unremarkable proposition.

II.     **The caselaw on which Plaintiffs rely confirms that for purposes of venue based on the location of an alleged Section 16(b) violation, only the actual location of the trade is relevant**

Plaintiffs, in their opposition, reference an instructive case – *C.R.A. Realty Corp. v. Gold Reserve Corp.*, Fed. Sec. L. Rep. P 94058, 1988 WL 144752 (S.D.N.Y. Sept. 14, 1988) – which was another instance where Plaintiffs' lead counsel here brought a claim in this Court where there was no connection to New York. There, like here, the defendant was located outside of the state, and had no presence, offices, facilities or assets in the state.  In *C.R.A. Realty Corp.*, the Court explained that "[v]enue must … depend on whether any act or transaction constituting the

---

[1] While Plaintiffs unsuccessfully sought discovery that might prove their allegation that some trades occurred "on" the NYSE, even armed with such evidence if it existed, Plaintiffs would not be able to place those trades "in" New York.  The critical rebuttal, which Plaintiffs fail to address, is Defendants' evidence that any trade on the Exchange would have been physically executed somewhere outside this district.

violation occurred" in New York. *Id*.  There, the company at issue was listed on the Spokane Stock Exchange and its stock was quoted on the National Association of Securities Dealers Automatic Quotation System (which was based in New York).  The Court found that the transaction constituting the alleged Section 16(b) offence took place in Spokane Washington, "using the facilities of the Spokane Stock Exchange."  The Court dismissed for lack of venue, without prejudice to refiling in an appropriate district, notwithstanding the fact the plaintiffs were located in New York.  (In that case, Plaintiffs' lead counsel here, had sued C.R.A. Realty Corp. for a contingency fee because after he cold-called the company and alerted it to a possible short-swing violation, the company refused to engage him and settled the matter itself.  Lead counsel here then filed a lawsuit claiming rights to third of the recovery. *See also*, *Rubenstein v. Lannett Company*, 1:16-cv-02935 (S.D.N.Y. 2016) (same counsel, same allegations for legal fees against a prospective/never-engaged client, same dismissal of Plaintiff's claims).

      What is critical about *C.R.A. Realty Corp.,* like all the other cases Plaintiffs rely on, is that it places the transaction in the place where the trades were physically executed.  As a 1988 case, it was decided in the analog days of human traders using paper tickets on a trading floor, and does not address the impact of the automation of the trading process where trading operations may be separated from the corporate headquarters.  But the case makes clear that the key fact is the location of the relevant trade is the physical location where the buy order meets the sell order.  Here, if the trades did occur "on" the NYSE as plaintiffs allege (although contrary to the evidence submitted), in 2018, "buy" would have met "sell" in New Jersey.

      In apparent response to Defendants' disclosure[2] that all of their trades were routed to other brokers bases in New Jersey and Connecticut, and not to the NYSE, Plaintiffs rely heavily on the Fourth Circuit's decision in *U.S. v. Johnson*, 510 F.3d 521 (4th Cir, 2007).  In *Johnson*, the court affirmed the Eastern District of Virginia as a proper venue for a securities fraud case,

---

[2] (See Docket No. 25)

4

because the defendant submitted materially-misleading submissions to the S.E.C. by electronically sending them to servers located in Alexandria, Virginia.  The court found that it was not relevant whether the plaintiff was aware that servers were located there.  Plaintiffs here use *Johnson* to support an argument that Defendants need not known or have intended for any of the trades to be routed to the NYSE.  According to Plaintiffs, merely alleging that trades eventually were executed "on" the Exchange – even by non-party brokers – is enough to establish venue – it is not.   To be clear, the court in *Johnson*, just like the court in *C.R.A. Realty Corp.,* focused on the physical location of the "act" or "acts" alleged to constitute the violation.  In *Johnson*, the location of the servers in Virginia where the defendant intentionally sent certain filings established venue in Virginia, just as the location of the facilities used in *C.R.A. Realty Corp.* established venue in Washington.  Here the servers that Plaintiffs allege are determinative are located in New Jersey, and they don't establish venue in New York.  Nor does anything else.  The relevant alleged conduct occurred in the Bahamas, which is why Puerto Rico is the only appropriate venue.

**III.**     **None of the cases Plaintiffs cite concerning trading in the 1990s and earlier, can support the proposition that trading "on" a New-York-headquartered exchange constitutes an act in New York if the trading occurred elsewhere**

Rather than provide the Court with decisions that show the location of a transaction for the purposes of an alleged Section 16(b) violation is the place where the relevant exchange is headquartered – as opposed to the location of the actual trade (when those locations are not one in the same) – Defendants point the Court to several decisions, regarding decades-old conduct, that merely support the position that a transaction occurs in the physical location where the "buy" meets the "sell."   *U.S. v. Svoboda,* concerned trading that occurred "November 1994 and December 1997."  347 F. 3d 471, 475 (2d Cir. 2003).  *See also*, *U.S. v. Geibel* relating to conduct in late 1997 prior to the NYSE servers being located in New Jersey.  369 F3d 682, 686 (2d Cir. 2004).  *Bunker Ramo-Eltra Corp. v. Fairchild Indus., Inc*., is hardly supportive of Plaintiffs

5

contention, because it involves conduct from 1981, and in the case, "defendants admit[ed] that the subject shares were purchased on the New York Stock Exchange through a New York broker and thereafter processed by a New York transfer agent." Fed. Sec. L. Rep. P 91557, 1984 WL 492 (S.D.N.Y. June 15, 1984). Finally, *Blau v. Mission Corp.* is a 1954 decision that is clearly too old to be instructive. 212 F. 2d 77 (2d Cir. 1954).

As noted above, to counter the deficiency inherent in any precedent that precedes the days of electronic trading, proprietary broker exchanges, dark pools, and server farms in located west of the Hudson, Plaintiffs point solely to *Johnson*. But *Johnson* simply held that the location of the servers can establish venue at the location of the server if the Plaintiff intentionally filed a document on that server even if he did not know where the server was located.

### IV. Plaintiffs' new market-effects-based theory of venue fails because the alleged "offense" at issue in the complaints and relevant for the purposes of venue is short-swing profits, not market manipulation

In each filed complaint, and in their motion for discovery, Plaintiffs have availed themselves of the libel-immune judicial setting to describe Defendants in the most pejorative of terms, even though their unfounded accusations, beyond being false, have no relevance or connection to the short-swing profit claims they are prosecuting here. Plaintiffs repeatedly refer to Defendant Gentile as a "connoisseur of scams", and repeatedly refer to the trades at issue in their complaints as "pump-and-dump" schemes, even though they make no claim sounding in market manipulation or securities fraud. However, recognizing that they did not (and cannot) allege that any trades actually occurred in New York, Plaintiffs now sharply pivot, and argue:

> [I]n this post-Truman age of electronic trading, courts continue to expand the potential venues available under the applicable provision, and consistently find venue to be proper under the Act in any district in which stock exchanges or markets are manipulated (or as a "downward effect" of) any actions taken by defendants as part of their scheme to violate the Act – whether or not the defendants directly traded or transferred securities on the exchange or in the district.[3]

---

[3] The cases Plaintiffs cite for this proposition say nothing about exchanges, only markets.

6

(Op. at 10.)  Plaintiffs argue that their previously gratuitous allegations of a "pump-and-dump" "scheme", now establish venue in this district because, even if no trades occurred in this district, the impact (or the "downward effect") of the alleged manipulation would suffice for the purposes of venue under 15 U.S.C. §78aa, *even if Plaintiffs made no claim based on such recklessly-alleged manipulation*.  This argument fails for two reasons:  First, Plaintiffs did not allege an impact or "downward effect" on this district, nor do they assert one in their opposition.  Indeed, there was no downward effect as both Plaintiff companies stock prices rose higher after SureTrader placed trades in them and their share prices remained well above the pre-trading price up to the present.  For avoidance of doubt, New Concept Energy was trading at $1.37 on June 26, 2018 and is now trading at $1.73 having never dipped below its June 26 price.  Avalon was trading at $2.21 on July 20, 2018 and is now trading at $2.79 having never dipped below its July 20 price.  So, any allegation of market manipulation or a "pump and dump" which led to a decrease in share price in either company is false as a matter of easily demonstrable facts. To the contrary, both companies have already benefitted significantly – by increasing their market capitalization by millions of dollars following the trading that took place in the summer of 2018.

And Second, Plaintiffs' argument ignores the fact that 15 U.S.C. §78aa places venue in the location of an act constituting "the" offense alleged, not the location of any act that could constitute *any* allegeable offense whether it is listed in the causes of action or not.   Plaintiffs only claim is for short-swing profits.   The only relevant alleged offense for the purposes of 15 U.S.C. §78aa is Plaintiffs' Section 16(b) claim.  Allegations related to unasserted claims, such as the reckless and false allegation of a "pump-and-dump scheme", cannot establish venue, as they do not constitute the offense referenced by 15 U.S.C. §78aa.

V. **Because the trades at issue here lead to a novel application of Section 16(b), after venue is established, the appropriate Court must consider whether the complaints allege potential possession and use of inside information – they do not**

"When a transaction does not fall within the literal terms of Section 16(b), the statute

7

must be interpreted in a way that is consistent with its legislative purpose." *Chechele v. Sperling*, Fed. Sec. L. Rep. P. 96786 (S.D.N.Y. Mar. 29, 2012], *aff'd* 758 F3d 463 (2d. Cir. 2014). As such, "Section 16(b) liability depend[s] on 'whether the transaction may serve as a vehicle for the evil which Congress sought to prevent—the realization of short-swing profits based upon access to inside information.'" *Id.* quoting *Donoghue v. Centillium Commc'ns Inc.*, No. 05 Civ. 4082(WHP), 2006 WL 775122, at *5 (S.D.N.Y. Mar. 28, 2006). In special situations, "where an insider has had no opportunity to speculate on the basis of [] inside information, Section 16(b) has not been violated." *Rubenstein v. Live Nation Entertainment*, Fed. Sec. L. Rep. P. 99744 (S.D.N.Y. June 20, 2017).

As the Supreme Court held in *Reliance Elec. Co. v. Emerson Elec. Cop.*, 404 U.S. 481 (1972) Section 16(b) was not designed to recover profits made from positions traded by briefly-tenured shareholders with no conceivable opportunity to obtain inside information, and where, as here, the company itself has asserted there was no relevant information in existence. Rather, it was designed to prevent speculation on the basis of insider information, without requiring a plaintiff to prove the possession and misuse of such inside information. Indeed, Supreme Court precedent precludes the type of Rule 16(b) case that the Plaintiffs have alleged here. As the Court in *Reliance Electric* explained:

> The dissenting opinion [] reasons that 'the 10% rule is based upon a conclusive statutory presumption that ownership of this quantity of stock suffices to provide access to inside information,' and that it thus 'follows that all sales by a more-than-10% owner within the six-month period carry the presumption of a taint, even if a prior transaction within the period has reduced the beneficial ownership to 10% or below.' While there may be logic in this position, *it was clearly rejected as a basis for liability when Congress included the proviso that a 10% owner must be such both at the time of the purchase and of the sale.* Although the legislative history affords no explanation of the purpose of the proviso, it may be that Congress regarded one with a long-term investment of more than 10% as more likely to have access to inside information than one who moves in and out of the 10% category. But whatever the rationale of the proviso, it cannot be disregarded simply on the ground that it may

8

> be inconsistent with our assessment of the 'wholesome purpose' of the Act.

*Reliance Elec. Co.,* at 423–24 (emphasis added).

Where, as here an investor holds its position as an alleged "insider" for a period of merely "hours," such that it would be literally impossible for the investor to have obtained insider information in that time, and where Plaintiffs' acknowledge that Defendants in fact possessed no inside information, there can be no Section 16(b) liability.

Some or all of the trades at issue involved computer-driven short selling and never, in fact, settled (such that MBI never took custody of some or all the shares it bought and therefore never became a statutory insider even assuming Section 16(b) applies to such trading activities) nor could the trades have ever settled because the sellers were not actually selling any shares in either of these companies, they were simply betting that these companies' stocks would decline and "selling naked short" positions. Plaintiffs provide no support for their assertions that, for instance, rule Section 16(b) damages are available to a company even for profits obtained from a trade with a short seller, where no shares offered for sale are actually possessed, and therefore cannot ever be transferred, and as a result cannot ever settle.

Plaintiffs' counsel acknowledges in his brief, at page 15, that he has no response to Defendants' argument, asserting that beyond the language contained in *Bulldog Investors* he "has little to add." Such candor is refreshing and should result in the voluntary dismissal of the complaints as *Bulldog Investors* provides no guidance to this case involving these transactions which are beyond the normal bounds of a Section 16(b) claim. And as such, this complaint can only be sustained if liability would prevent the realization of short-swing profits based upon access to inside information, as is the goal of the statute. Because these complaints do not allege Defendants could access inside information during the relevant "hours" in issue, much less misused it, and because Avalon's public statements preclude that possibility by disclaiming any

knowledge of, or relationship with, the defendants, the complaints should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss both actions as a matter of law, or in the alternative dismiss for improper venue.

Dated: February 12, 2019

                                      Respectfully submitted,

                                      FORD O'BRIEN LLP

                                      _____
                                      Adam C. Ford
                                      Robert S. Landy
                                      575 Fifth Avenue
                                      17th Floor
                                      New York, NY 10017
                                      (212) 8580-040
                                      aford@fordobrien.com
                                      rlandy@fordobrien.com

                                      *Attorneys for Defendants*