# EXHIBIT O

Code of Federal Regulations
 Title 17. Commodity and Securities Exchanges
  Chapter II. Securities and Exchange Commission
   Part 242. Regulations M, SHO, ATS, AC, NMS, and Sbsr and Customer Margin Requirements for Security Futures (Refs & Annos)
    Regulation SHO—Regulation of Short Sales (Refs & Annos)

17 C.F.R. § 242.200

§ 242.200 Definition of "short sale" and marking requirements.

Effective: May 10, 2010
Currentness

(a) The term short sale shall mean any sale of a security which the seller does not own or any sale which is consummated by the delivery of a security borrowed by, or for the account of, the seller.

(b) A person shall be deemed to own a security if:

   (1) The person or his agent has title to it; or

   (2) The person has purchased, or has entered into an unconditional contract, binding on both parties thereto, to purchase it, but has not yet received it; or

   (3) The person owns a security convertible into or exchangeable for it and has tendered such security for conversion or exchange; or

   (4) The person has an option to purchase or acquire it and has exercised such option; or

   (5) The person has rights or warrants to subscribe to it and has exercised such rights or warrants; or

   (6) The person holds a security futures contract to purchase it and has received notice that the position will be physically settled and is irrevocably bound to receive the underlying security.

(c) A person shall be deemed to own securities only to the extent that he has a net long position in such securities.

(d) A broker or dealer shall be deemed to own a security, even if it is not net long, if:

   (1) The broker or dealer acquired that security while acting in the capacity of a block positioner; and

(2) If and to the extent that the broker or dealer's short position in the security is the subject of offsetting positions created in the course of bona fide arbitrage, risk arbitrage, or bona fide hedge activities.

(e) A broker-dealer shall be deemed to own a security even if it is not net long, if:

(1) The broker-dealer is unwinding index arbitrage position involving a long basket of stock and one or more short index futures traded on a board of trade or one or more standardized options contracts as defined in 17 CFR 240.9b–1(a)(4); and

(2) If and to the extent that the broker-dealer's short position in the security is the subject of offsetting positions created and maintained in the course of bona-fide arbitrage, risk arbitrage, or bona fide hedge activities; and

(3) The sale does not occur during a period commencing at the time that the NYSE Composite Index has declined by two percent or more from its closing value on the previous day and terminating upon the end of the trading day. The two percent shall be calculated at the beginning of each calendar quarter and shall be two percent, rounded down to the nearest 10 points, of the average closing value of the NYSE Composite Index for the last month of the previous quarter.

(f) In order to determine its net position, a broker or dealer shall aggregate all of its positions in a security unless it qualifies for independent trading unit aggregation, in which case each independent trading unit shall aggregate all of its positions in a security to determine its net position. Independent trading unit aggregation is available only if:

(1) The broker or dealer has a written plan of organization that identifies each aggregation unit, specifies its trading objective(s), and supports its independent identity;

(2) Each aggregation unit within the firm determines, at the time of each sale, its net position for every security that it trades;

(3) All traders in an aggregation unit pursue only the particular trading objective(s) or strategy(s) of that aggregation unit and do not coordinate that strategy with any other aggregation unit; and

(4) Individual traders are assigned to only one aggregation unit at any time.

(g) A broker or dealer must mark all sell orders of any equity security as "long," "short," or "short exempt."

(1) An order to sell shall be marked "long" only if the seller is deemed to own the security being sold pursuant to paragraphs (a) through (f) of this section and either:

(i) The security to be delivered is in the physical possession or control of the broker or dealer; or

(ii) It is reasonably expected that the security will be in the physical possession or control of the broker or dealer no later than the settlement of the transaction.

(2) A sale order shall be marked "short exempt" only if the provisions of § 242.201(c) or (d) are met.

(h) Upon written application or upon its own motion, the Commission may grant an exemption from the provisions of this section, either unconditionally or on specified terms and conditions, to any transaction or class of transactions, or to any security or class of securities, or to any person or class of persons.

**Credits**
[72 FR 36359, July 3, 2007; 72 FR 45557, Aug. 14, 2007; 75 FR 11323, March 10, 2010; 75 FR 68702, Nov. 9, 2010]

AUTHORITY: 15 U.S.C. 77g, 77q(a), 77s(a), 78b, 78c, 78g(c)(2), 78i(a), 78j, 78k–1(c), 78*l*, 78m, 78n, 78*o*(b), 78*o*(c), 78*o*(g), 78q(a), 78q(b), 78q(h), 78w(a), 78dd–1, 78mm, 80a–23, 80a–29, and 80a–37.

Notes of Decisions (1)

Current through June 12, 2020; 85 FR 35811.

**End of Document**                                                             © 2020 Thomson Reuters. No claim to original U.S. Government Works.

> Code of Federal Regulations
>   Title 17. Commodity and Securities Exchanges
>     Chapter II. Securities and Exchange Commission
>       Part 242. Regulations M, SHO, ATS, AC, NMS, and Sbsr and Customer Margin Requirements for Security Futures (Refs & Annos)
>         Regulation SHO—Regulation of Short Sales (Refs & Annos)

17 C.F.R. § 242.201

§ 242.201 Circuit breaker.

Effective: January 18, 2019
Currentness

(a) Definitions. For the purposes of this section:

 (1) The term covered security shall mean any NMS stock as defined in § 242.600(b)(48).

 (2) The term effective transaction reporting plan for a covered security shall have the same meaning as in § 242.600(b)(23).

 (3) The term listing market shall have the same meaning as the term "listing market" as defined in the effective transaction reporting plan for the covered security.

 (4) The term national best bid shall have the same meaning as in § 242.600(b)(43).

 (5) The term odd lot shall have the same meaning as in § 242.600(b)(51).

 (6) The term plan processor shall have the same meaning as in § 242.600(b)(59).

 (7) The term regular trading hours shall have the same meaning as in § 242.600(b)(68).

 (8) The term riskless principal shall mean a transaction in which a broker or dealer, after having received an order to buy a security, purchases the security as principal at the same price to satisfy the order to buy, exclusive of any explicitly disclosed markup or markdown, commission equivalent, or other fee, or, after having received an order to sell, sells the security as principal at the same price to satisfy the order to sell, exclusive of any explicitly disclosed markup or markdown, commission equivalent, or other fee.

 (9) The term trading center shall have the same meaning as in § 242.600(b)(82).

(b)(1) A trading center shall establish, maintain, and enforce written policies and procedures reasonably designed to:

(i) Prevent the execution or display of a short sale order of a covered security at a price that is less than or equal to the current national best bid if the price of that covered security decreases by 10% or more from the covered security's closing price as determined by the listing market for the covered security as of the end of regular trading hours on the prior day; and

(ii) Impose the requirements of paragraph (b)(1)(i) of this section for the remainder of the day and the following day when a national best bid for the covered security is calculated and disseminated on a current and continuing basis by a plan processor pursuant to an effective national market system plan.

(iii) Provided, however, that the policies and procedures must be reasonably designed to permit:

(A) The execution of a displayed short sale order of a covered security by a trading center if, at the time of initial display of the short sale order, the order was at a price above the current national best bid; and

(B) The execution or display of a short sale order of a covered security marked "short exempt" without regard to whether the order is at a price that is less than or equal to the current national best bid.

(2) A trading center shall regularly surveil to ascertain the effectiveness of the policies and procedures required by paragraph (b)(1) of this section and shall take prompt action to remedy deficiencies in such policies and procedures.

(3) The determination regarding whether the price of a covered security has decreased by 10% or more from the covered security's closing price as determined by the listing market for the covered security as of the end of regular trading hours on the prior day shall be made by the listing market for the covered security and, if such decrease has occurred, the listing market shall immediately notify the single plan processor responsible for consolidation of information for the covered security pursuant to § 242.603(b). The single plan processor must then disseminate this information.

(c) Following any determination and notification pursuant to paragraph (b)(3) of this section with respect to a covered security, a broker or dealer submitting a short sale order of the covered security in question to a trading center may mark the order "short exempt" if the broker or dealer identifies the order as being at a price above the current national best bid at the time of submission; provided, however:

(1) The broker or dealer that identifies a short sale order of a covered security as "short exempt" in accordance with this paragraph (c) must establish, maintain, and enforce written policies and procedures reasonably designed to prevent incorrect identification of orders for purposes of this paragraph; and

(2) The broker or dealer shall regularly surveil to ascertain the effectiveness of the policies and procedures required by paragraph (c)(1) of this section and shall take prompt action to remedy deficiencies in such policies and procedures.

(d) Following any determination and notification pursuant to paragraph (b)(3) of this section with respect to a covered security, a broker or dealer may mark a short sale order of a covered security "short exempt" if the broker or dealer has a reasonable basis to believe that:

(1) The short sale order of a covered security is by a person that is deemed to own the covered security pursuant to § 242.200, provided that the person intends to deliver the security as soon as all restrictions on delivery have been removed.

(2) The short sale order of a covered security is by a market maker to offset customer odd-lot orders or to liquidate an odd-lot position that changes such broker's or dealer's position by no more than a unit of trading.

(3) The short sale order of a covered security is for a good faith account of a person who then owns another security by virtue of which he is, or presently will be, entitled to acquire an equivalent number of securities of the same class as the securities sold; provided such sale, or the purchase which such sale offsets, is effected for the bona fide purpose of profiting from a current difference between the price of the security sold and the security owned and that such right of acquisition was originally attached to or represented by another security or was issued to all the holders of any such securities of the issuer.

(4) The short sale order of a covered security is for a good faith account and submitted to profit from a current price difference between a security on a foreign securities market and a security on a securities market subject to the jurisdiction of the United States, provided that the short seller has an offer to buy on a foreign market that allows the seller to immediately cover the short sale at the time it was made. For the purposes of this paragraph (d)(4), a depository receipt of a security shall be deemed to be the same security as the security represented by such receipt.

(5)(i) The short sale order of a covered security is by an underwriter or member of a syndicate or group participating in the distribution of a security in connection with an over-allotment of securities; or

(ii) The short sale order of a covered security is for purposes of a lay-off sale by an underwriter or member of a syndicate or group in connection with a distribution of securities through a rights or standby underwriting commitment.

(6) The short sale order of a covered security is by a broker or dealer effecting the execution of a customer purchase or the execution of a customer "long" sale on a riskless principal basis. In addition, for purposes of this paragraph (d)(6), a broker or dealer must have written policies and procedures in place to assure that, at a minimum:

(i) The customer order was received prior to the offsetting transaction;

(ii) The offsetting transaction is allocated to a riskless principal or customer account within 60 seconds of execution; and

(iii) The broker or dealer has supervisory systems in place to produce records that enable the broker or dealer to accurately and readily reconstruct, in a time-sequenced manner, all orders on which a broker or dealer relies pursuant to this exception.

(7) The short sale order is for the sale of a covered security at the volume weighted average price (VWAP) that meets the following criteria:

(i) The VWAP for the covered security is calculated by:

(A) Calculating the values for every regular way trade reported in the consolidated system for the security during the regular trading session, by multiplying each such price by the total number of shares traded at that price;

(B) Compiling an aggregate sum of all values; and

(C) Dividing the aggregate sum by the total number of reported shares for that day in the security.

(ii) The transactions are reported using a special VWAP trade modifier.

(iii) The VWAP matched security:

(A) Qualifies as an "actively-traded security" pursuant to § 242.101 and § 242.102; or

(B) The proposed short sale transaction is being conducted as part of a basket transaction of twenty or more securities in which the subject security does not comprise more than 5% of the value of the basket traded.

(iv) The transaction is not effected for the purpose of creating actual, or apparent, active trading in or otherwise affecting the price of any security.

(v) A broker or dealer shall be permitted to act as principal on the contra-side to fill customer short sale orders only if the broker's or dealer's position in the covered security, as committed by the broker or dealer during the pre-opening period of a trading day and aggregated across all of its customers who propose to sell short the same security on a VWAP basis, does not exceed 10% of the covered security's relevant average daily trading volume.

(e) No self-regulatory organization shall have any rule that is not in conformity with, or conflicts with, this section.

(f) Upon written application or upon its own motion, the Commission may grant an exemption from the provisions of this section, either unconditionally or on specified terms and conditions, to any person or class of persons, to any transaction or class of transactions, or to any security or class of securities to the extent that such exemption is necessary or appropriate, in the public interest, and is consistent with the protection of investors.

**Credits**
[72 FR 36359, July 3, 2007; 75 FR 11323, March 10, 2010; 75 FR 68702, Nov. 9, 2010; 83 FR 58427, Nov. 19, 2018]

AUTHORITY: 15 U.S.C. 77g, 77q(a), 77s(a), 78b, 78c, 78g(c)(2), 78i(a), 78j, 78k–1(c), 78l, 78m, 78n, 78o(b), 78o(c), 78o(g), 78q(a), 78q(b), 78q(h), 78w(a), 78dd–1, 78mm, 80a–23, 80a–29, and 80a–37.

Notes of Decisions (1)

Current through June 12, 2020; 85 FR 35811.

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

> Code of Federal Regulations
>  Title 17. Commodity and Securities Exchanges
>   Chapter II. Securities and Exchange Commission
>    Part 242. Regulations M, SHO, ATS, AC, NMS, and Sbsr and Customer Margin Requirements for Security Futures (Refs & Annos)
>     Regulation SHO—Regulation of Short Sales (Refs & Annos)

17 C.F.R. § 242.203

§ 242.203 Borrowing and delivery requirements.

Effective: October 17, 2008
Currentness

(a) Long sales.

  (1) If a broker or dealer knows or has reasonable grounds to believe that the sale of an equity security was or will be effected pursuant to an order marked "long," such broker or dealer shall not lend or arrange for the loan of any security for delivery to the purchaser's broker after the sale, or fail to deliver a security on the date delivery is due.

  (2) The provisions of paragraph (a)(1) of this section shall not apply:

  (i) To the loan of any security by a broker or dealer through the medium of a loan to another broker or dealer;

  (ii) If the broker or dealer knows, or has been reasonably informed by the seller, that the seller owns the security, and that the seller would deliver the security to the broker or dealer prior to the scheduled settlement of the transaction, but the seller failed to do so; or

  (iii) If, prior to any loan or arrangement to loan any security for delivery, or failure to deliver, a national securities exchange, in the case of a sale effected thereon, or a national securities association, in the case of a sale not effected on an exchange, finds:

    (A) That such sale resulted from a mistake made in good faith;

    (B) That due diligence was used to ascertain that the circumstances specified in § 242.200(g) existed; and

    (C) Either that the condition of the market at the time the mistake was discovered was such that undue hardship would result from covering the transaction by a "purchase for cash" or that the mistake was made by the seller's broker and the sale was at a permissible price under any applicable short sale price test.

(b) Short sales.

(1) A broker or dealer may not accept a short sale order in an equity security from another person, or effect a short sale in an equity security for its own account, unless the broker or dealer has:

(i) Borrowed the security, or entered into a bona-fide arrangement to borrow the security; or

(ii) Reasonable grounds to believe that the security can be borrowed so that it can be delivered on the date delivery is due; and

(iii) Documented compliance with this paragraph (b)(1).

(2) The provisions of paragraph (b)(1) of this section shall not apply to:

(i) A broker or dealer that has accepted a short sale order from another registered broker or dealer that is required to comply with paragraph (b)(1) of this section, unless the broker or dealer relying on this exception contractually undertook responsibility for compliance with paragraph (b)(1) of this section;

(ii) Any sale of a security that a person is deemed to own pursuant to § 242.200, provided that the broker or dealer has been reasonably informed that the person intends to deliver such security as soon as all restrictions on delivery have been removed. If the person has not delivered such security within 35 days after the trade date, the broker-dealer that effected the sale must borrow securities or close out the short position by purchasing securities of like kind and quantity;

(iii) Short sales effected by a market maker in connection with bona-fide market making activities in the security for which this exception is claimed; and

(iv) Transactions in security futures.

(3) If a participant of a registered clearing agency has a fail to deliver position at a registered clearing agency in a threshold security for thirteen consecutive settlement days, the participant shall immediately thereafter close out the fail to deliver position by purchasing securities of like kind and quantity:

(i)*Provided, however,* that a participant of a registered clearing agency that has a fail to deliver position at a registered clearing agency in a threshold security on the effective date of this amendment and which, prior to the effective date of this amendment, had been previously grandfathered from the close-out requirement in this paragraph (b)(3) (i.e., because the participant of a registered clearing agency had a fail to deliver position at a registered clearing agency on the settlement day preceding the day that the security became a threshold security), shall close out that fail to deliver position within thirty-five consecutive settlement days of the effective date of this amendment by purchasing securities of like kind and quantity;

(ii)*Provided, however,* that if a participant of a registered clearing agency has a fail to deliver position at a registered clearing agency in a threshold security that was sold pursuant to § 230.144 of this chapter for thirty-five consecutive settlement days,

the participant shall immediately thereafter close out the fail to deliver position in the security by purchasing securities of like kind and quantity;

(iii) Provided, however, that a participant of a registered clearing agency that has a fail to deliver position at a registered clearing agency in a threshold security on the effective date of this amendment and which, prior to the effective date of this amendment, had been previously excepted from the close-out requirement in paragraph (b)(3) of this section (i.e., because the participant of a registered clearing agency had a fail to deliver position in the threshold security that is attributed to short sales effected by a registered options market maker to establish or maintain a hedge on options positions that were created before the security became a threshold security), shall immediately close out that fail to deliver position, including any adjustments to the fail to deliver position, within 35 consecutive settlement days of the effective date of this amendment by purchasing securities of like kind and quantity;

(iv) If a participant of a registered clearing agency has a fail to deliver position at a registered clearing agency in a threshold security for thirteen consecutive settlement days, the participant and any broker or dealer for which it clears transactions, including any market maker that would otherwise be entitled to rely on the exception provided in paragraph (b)(2)(iii) of this section, may not accept a short sale order in the threshold security from another person, or effect a short sale in the threshold security for its own account, without borrowing the security or entering into a bona-fide arrangement to borrow the security, until the participant closes out the fail to deliver position by purchasing securities of like kind and quantity;

(v) If a participant of a registered clearing agency entitled to rely on the 35 consecutive settlement day close-out requirement contained in paragraph (b)(3)(i), (b)(3)(ii), or (b)(3)(iii) of this section has a fail to deliver position at a registered clearing agency in the threshold security for 35 consecutive settlement days, the participant and any broker or dealer for which it clears transactions, including any market maker, that would otherwise be entitled to rely on the exception provided in paragraph (b)(2)(ii) of this section, may not accept a short sale order in the threshold security from another person, or effect a short sale in the threshold security for its own account, without borrowing the security or entering into a bona fide arrangement to borrow the security, until the participant closes out the fail to deliver position by purchasing securities of like kind and quantity;

(vi) If a participant of a registered clearing agency reasonably allocates a portion of a fail to deliver position to another registered broker or dealer for which it clears trades or for which it is responsible for settlement, based on such broker or dealer's short position, then the provisions of this paragraph (b)(3) relating to such fail to deliver position shall apply to the portion of such registered broker or dealer that was allocated the fail to deliver position, and not to the participant; and

(vii) A participant of a registered clearing agency shall not be deemed to have fulfilled the requirements of this paragraph (b)(3) where the participant enters into an arrangement with another person to purchase securities as required by this paragraph (b)(3), and the participant knows or has reason to know that the other person will not deliver securities in settlement of the purchase.

(c) Definitions.

(1) For purposes of this section, the term market maker has the same meaning as in section 3(a)(38) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. 78c(a)(38)).

(2) For purposes of this section, the term participant has the same meaning as in section 3(a)(24) of the Exchange Act (15 U.S.C. 78c(a)(24)).

(3) For purposes of this section, the term registered clearing agency means a clearing agency, as defined in section 3(a)(23)(A) of the Exchange Act (15 U.S.C. 78c(a)(23)(A)), that is registered with the Commission pursuant to section 17A of the Exchange Act (15 U.S.C. 78q–1).

(4) For purposes of this section, the term security future has the same meaning as in section 3(a)(55) of the Exchange Act (15 U.S.C. 78c(a)(55)).

(5) For purposes of this section, the term settlement day means any business day on which deliveries of securities and payments of money may be made through the facilities of a registered clearing agency.

(6) For purposes of this section, the term threshold security means any equity security of an issuer that is registered pursuant to section 12 of the Exchange Act (15 U.S.C. 78*l*) or for which the issuer is required to file reports pursuant to section 15(d) of the Exchange Act (15 U.S.C. 78*o*(d)):

(i) For which there is an aggregate fail to deliver position for five consecutive settlement days at a registered clearing agency of 10,000 shares or more, and that is equal to at least 0.5% of the issue's total shares outstanding;

(ii) Is included on a list disseminated to its members by a self-regulatory organization; and

(iii)*Provided, however*, that a security shall cease to be a threshold security if the aggregate fail to deliver position at a registered clearing agency does not exceed the level specified in paragraph (c)(6)(i) of this section for five consecutive settlement days.

(d) Exemptive authority. Upon written application or upon its own motion, the Commission may grant an exemption from the provisions of this section, either unconditionally or on specified terms and conditions, to any transaction or class of transactions, or to any security or class of securities, or to any person or class of persons.

**Credits**
[72 FR 45557, Aug. 14, 2007; 73 FR 61706, Oct. 17, 2008]

AUTHORITY: 15 U.S.C. 77g, 77q(a), 77s(a), 78b, 78c, 78g(c)(2), 78i(a), 78j, 78k–1(c), 78*l*, 78m, 78n, 78*o*(b), 78*o*(c), 78*o*(g), 78q(a), 78q(b), 78q(h), 78w(a), 78dd–1, 78mm, 80a–23, 80a–29, and 80a–37.

Notes of Decisions (4)

Current through June 12, 2020; 85 FR 35811.

> Code of Federal Regulations
>   Title 17. Commodity and Securities Exchanges
>     Chapter II. Securities and Exchange Commission
>       Part 242. Regulations M, SHO, ATS, AC, NMS, and Sbsr and Customer Margin Requirements for Security Futures (Refs & Annos)
>         Regulation SHO—Regulation of Short Sales (Refs & Annos)

17 C.F.R. § 242.204

§ 242.204 Close-out requirement.

Effective: January 18, 2019
Currentness

(a) A participant of a registered clearing agency must deliver securities to a registered clearing agency for clearance and settlement on a long or short sale in any equity security by settlement date, or if a participant of a registered clearing agency has a fail to deliver position at a registered clearing agency in any equity security for a long or short sale transaction in that equity security, the participant shall, by no later than the beginning of regular trading hours on the settlement day following the settlement date, immediately close out its fail to deliver position by borrowing or purchasing securities of like kind and quantity; *Provided, however*:

> (1) If a participant of a registered clearing agency has a fail to deliver position at a registered clearing agency in any equity security and the participant can demonstrate on its books and records that such fail to deliver position resulted from a long sale, the participant shall by no later than the beginning of regular trading hours on the third consecutive settlement day following the settlement date, immediately close out the fail to deliver position by purchasing or borrowing securities of like kind and quantity;

> (2) If a participant of a registered clearing agency has a fail to deliver position at a registered clearing agency in any equity security resulting from a sale of a security that a person is deemed to own pursuant to § 242.200 and that such person intends to deliver as soon as all restrictions on delivery have been removed, the participant shall, by no later than the beginning of regular trading hours on the thirty-fifth consecutive calendar day following the trade date for the transaction, immediately close out the fail to deliver position by purchasing securities of like kind and quantity; or

> (3) If a participant of a registered clearing agency has a fail to deliver position at a registered clearing agency in any equity security that is attributable to bona fide market making activities by a registered market maker, options market maker, or other market maker obligated to quote in the over-the-counter market, the participant shall by no later than the beginning of regular trading hours on the third consecutive settlement day following the settlement date, immediately close out the fail to deliver position by purchasing or borrowing securities of like kind and quantity.

(b) If a participant of a registered clearing agency has a fail to deliver position in any equity security at a registered clearing agency and does not close out such fail to deliver position in accordance with the requirements of paragraph (a) of this section, the participant and any broker or dealer from which it receives trades for clearance and settlement, including any market maker that would otherwise be entitled to rely on the exception provided in § 242.203(b)(2)(iii), may not accept a short sale order in the equity security from another person, or effect a short sale in the equity security for its own account, to the extent that

the broker or dealer submits its short sales to that participant for clearance and settlement, without first borrowing the security, or entering into a bona fide arrangement to borrow the security, until the participant closes out the fail to deliver position by purchasing securities of like kind and quantity and that purchase has cleared and settled at a registered clearing agency; *Provided, however*: A broker or dealer shall not be subject to the requirements of this paragraph if the broker or dealer timely certifies to the participant of a registered clearing agency that it has not incurred a fail to deliver position on settlement date for a long or short sale in an equity security for which the participant has a fail to deliver position at a registered clearing agency or that the broker or dealer is in compliance with paragraph (e) of this section.

(c) The participant must notify any broker or dealer from which it receives trades for clearance and settlement, including any market maker that would otherwise be entitled to rely on the exception provided in § 242.203(b)(2)(iii):

> (1) That the participant has a fail to deliver position in an equity security at a registered clearing agency that has not been closed out in accordance with the requirements of paragraph (a) of this section; and

> (2) When the purchase that the participant has made to close out the fail to deliver position has cleared and settled at a registered clearing agency.

(d) If a participant of a registered clearing agency reasonably allocates a portion of a fail to deliver position to another registered broker or dealer for which it clears trades or from which it receives trades for settlement, based on such broker's or dealer's short position, the provisions of paragraphs (a) and (b) of this section relating to such fail to deliver position shall apply to such registered broker or dealer that was allocated the fail to deliver position, and not to the participant. A broker or dealer that has been allocated a portion of a fail to deliver position that does not comply with the provisions of paragraph (a) of this section must immediately notify the participant that it has become subject to the requirements of paragraph (b) of this section.

(e) Even if a participant of a registered clearing agency has not closed out a fail to deliver position at a registered clearing agency in accordance with paragraph (a) of this section, or has not allocated a fail to deliver position to a broker or dealer in accordance with paragraph (d) of this section, a broker or dealer shall not be subject to the requirements of paragraph (a) or (b) of this section if the broker or dealer purchases or borrows the securities, and if:

> (1) The purchase or borrow is bona fide;

> (2) The purchase or borrow is executed after trade date but by no later than the end of regular trading hours on settlement date for the transaction;

> (3) The purchase or borrow is of a quantity of securities sufficient to cover the entire amount of that broker's or dealer's fail to deliver position at a registered clearing agency in that security; and

> (4) The broker or dealer can demonstrate that it has a net flat or net long position on its books and records on the day of the purchase or borrow.

(f) A participant of a registered clearing agency shall not be deemed to have fulfilled the requirements of this section where the participant enters into an arrangement with another person to purchase or borrow securities as required by this section, and the participant knows or has reason to know that the other person will not deliver securities in settlement of the purchase or borrow.

(g) Definitions.

(1) For purposes of this section, the term settlement date shall mean the business day on which delivery of a security and payment of money is to be made through the facilities of a registered clearing agency in connection with the sale of a security.

(2) For purposes of this section, the term regular trading hours has the same meaning as in § 600(b)(68) of Regulation NMS (17 CFR 242.600(b)(68)).

**Credits**
[74 FR 38292, July 31, 2009; 83 FR 58427, Nov. 19, 2018]

AUTHORITY: 15 U.S.C. 77g, 77q(a), 77s(a), 78b, 78c, 78g(c)(2), 78i(a), 78j, 78k–1(c), 78*l*, 78m, 78n, 78*o*(b), 78*o*(c), 78*o*(g), 78q(a), 78q(b), 78q(h), 78w(a), 78dd–1, 78mm, 80a–23, 80a–29, and 80a–37.

Current through June 12, 2020; 85 FR 35811.

---

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.