```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #18cv7291
 AVALON HOLDINGS CORPORATION,       : 1:18-cv-07291-VSB-RWL

                     Plaintiff,     :

   - against -                      :

 GENTILE, et al.,                   : April 23, 2020
                                        New York, New York
                     Defendants.    :

-----------------------------------: TELEPHONE CONFERENCE


                        PROCEEDINGS BEFORE
              THE HONORABLE ROBERT W. LEHRBURGER,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          MIRIAM TAUBER LAW PLLC
                        BY:  MIRIAM TAUBER, ESQ.
                        885 Park Avenue, 2A
                        New York, New York  10075

                        LAW OFFICE OF DAVID LOPEZ
                        BY:  DAVID LOPEZ, ESQ.
                        171 Edge of Woods Road
                        PO Box 323
                        Southampton, New York  11968

For Defendants:         FORD O'BRIEN LLP
                        BY:  ADAM FORD, ESQ.
                        575 Fifth Avenue, 17th Floor
                        New York, New York  10017



Transcription Service: Carole Ludwig, Transcription Services
                        155 East Fourth Street, #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

1

```
 1                                                       3
 2              HONORABLE ROBERT W. LEHRBURGER (THE COURT):
 3    Hello, this is Judge Lehrburger, good morning.  Who do I
 4    have on the line, please, starting with plaintiff?
 5              MR. DAVID LOPEZ:  David Lopez for the plaintiff.
 6              MR. ADAM FORD:  And good morning, Judge, it's Adam
 7    Ford on behalf of the defendants.
 8              THE COURT:  All right, and I believe we have
 9    another caller on, my law clerk, who's there?
10              THE CLERK:  Yes, Judge, this is Amanda.
11              THE COURT:  Okay, and it said we had five, does
12    that mean Kevin's aboard also or someone else?
13              THE CLERK:  Hi, Judge, yes, it's Kevin.
14              THE COURT:  All right, thank you, that's my law
15    clerk to be.
16              MS. MIRIAM TAUBER:   Hello.
17              THE COURT:  Hello, who just joined?
18              MS. TAUBER:  This is Miriam Tauber.
19              THE COURT:  Hello, Ms. Tauber, this is Judge
20    Lehrburger, everyone seems to be aboard.  So I have asked
21    for this conference in light of the correspondence I
22    received from the parties concerning plaintiffs'
23    contentions that defendants have not done what they need
24    to do with respect to certain discovery requests and
25    also seeking certain rulings regarding preclusion. I
```

```
 1                                                         4
 2   read through what I have, but I would like to go
 3   through the (indiscernible) one by one, and I think
 4   the best way to do that is by, I'm going to use the
 5   list of relief sought in Mr. Lopez' letter, document
 6   55. Before we go there let me just ask, have any of
 7   these issues been resolved yet?
 8             MR. LOPEZ:  David Lopez, no, they have not.
 9             THE COURT:  Okay. All right, so the first
10   issue concerns the first set of interrogatories and if
11   I understand it correctly, and correct me if I'm
12   wrong, the concern with answers in those
13   interrogatories is with respect to affirmative
14   defenses, do I have that right, Mr. Lopez?
15             MR. LOPEZ:  Principally, affirmative defenses,
16   but there are 13, well there were 12 original
17   interrogatories, every one of which was refused, and
18   then an additional, an additional 4 interrogatories,
19   I'm sorry, 5 interrogatories, 13 through 17, every one
20   of which was refused on the spurious invocation of
21   Local Rule 33.
22             THE COURT:  Sure.  So let me ask the
23   defendants about that. I actually have not seen the
24   specific requests but you've done a fair amount of
25   discovery and so why have those not been answered?
```

```
 1                                                   5
 2          MR. FORD:  Sure, Your Honor, this is Adam
 3  Ford.  I mean with respect, I'm a little confused,
 4  with respect to the, and I don't have them in front of
 5  me, but we certainly answered all of the
 6  interrogatories, you know, the numbers that are
 7  permitted under the local rules, and we've provided
 8  all of the answers to those interrogatories. With
 9  respect to --
10          THE COURT:  Well I'm talking about the ones
11  that aren't the ones to which you objected based on
12  Local Rules, I'm sorry, the ones that you have
13  objected to based on the Local Rules. How many have
14  you not answered based on that objection?
15          MR. FORD:  Oh, Your Honor, I apologize, I
16  don't have that number in front of me, but think there
17  was --
18          MR. LOPEZ:  (indiscernible)
19          MR. FORD:  Mr. Lopez might know, sure, of
20  course.
21          MR. LOPEZ:  Yeah, there are 17 interrogatories
22  posed and 17 interrogatories answered that no answer
23  would be forthcoming because of Local Rule 33.3
24          THE COURT:  And you're saying, Mr. Lopez, that
25  for all 17 of those there was, indeed, no answer,
```

```
 1                                                        6
 2  notwithstanding that objection?

 3          MR. LOPEZ:  That's correct.

 4          THE COURT:  All right, so let me go back to

 5  the defendant then, why have those not been answered?

 6          MR. FORD:  I, Your Honor, my understanding is

 7  that all of our interrogatories that we were required

 8  to answer have, in fact, been given substantive

 9  answers to and we were, we had objected only on the

10  basis of the number under the Local Rule for their

11  exceeding their limit on those, you know, for those

12  questions, and those were the ones that were not

13  answered.

14          THE COURT:  Oh, I see, so you're saying you

15  answered 25 interrogatories already?

16          MR. FORD:  Yes. Yes, that's my understanding,

17  yes.

18          MR. LOPEZ:  Your Honor, David Lopez, this is

19  absolute nonsense, not a single one of the 17

20  interrogatories was answered except with a Rule 33

21  objection.

22          THE COURT:  Okay, and, Mr. Lopez, have you

23  issued interrogatories that are any more than those

24  17?

25          MR. LOPEZ:  No, Your Honor.
```

1                                                                    7

2              THE COURT:  Do those 17 have subparts?

3              MR. LOPEZ:  No.

4              THE COURT:  Okay, so let me go back to the

5    defendant, why do we have this discrepancy on what

6    interrogatories were actually served?

7              MR. FORD:  Your Honor, I apologize, I just

8    don't have, I don't have it at my fingertips. And so

9    I, yeah, I think there's just a misunderstanding. I've

10   seen the interrogatories when they went out and my

11   understanding was that we answered the original, and I

12   don't have the numbers but I think it was the 25 that

13   were permitted, and then it was only the ones that

14   were above that number that we objected to.

15             THE COURT:  All right, here's the deal.  One,

16   I don't strongly believe in strict enforcement of Rule

17   33, and that's because there are many interrogatories

18   that can be answered, that are far better answered by

19   a response than other means of discovery or possibly

20   in addition to other means of discovery.  But with

21   respect to certain contentions, it is true those are

22   better used at the end.

23             Not having seen the actual interrogatories,

24   it's hard for me to say where they lie, but my general

25   view is interrogatories should be answered to the

8

extent you have knowledge to be able to answer it at
that time and that there is always a right to
supplement later on if by the end of discovery
something changes.

Secondly, as to number, it is limited to 25
and some use of subparts, well it depends what
somebody interprets the subparts. If there are
subparts that truly ask for different types of
information, that is not allowed. If it's a subpart --
hold on, if it's a subpart that says identify by name,
identify date, things like that, to me those are not
subparts. But clearly what you guys need to do is to
get back on a meet and confer and get on the same page
about what has or has not been answered and go by what
I have just explained are my views on how they should
be handled.  If any disputes remain after that further
meet and confer given this guidance, you can bring the
dispute to my attention.

As for any instruction about preclusion, that
is premature and not something to be resolved at this
time anyway.

MR. LOPEZ:  Your Honor, may I speak, David
Lopez?

THE COURT:  Yes, Mr. Lopez.

9

1

2          MR. LOPEZ:  You have addressed and issue that

3   is not before the Court.  Mr. Ford is mistaken, let me

4   read a typical example of his answers.

5          THE COURT:  Okay, well give me a question and

6   give me an answer.

7          MR. LOPEZ:  "Identify any of the above

8   interrogatories that you believe would be more

9   economically of effectively answered through questions

10  at an oral deposition."  Response:  "Without waiving

11  any of its objections, defendants state that none of the

12  above interrogatories, to the extent they are allowed under

13  Federal Rule 33, Local Civil Rule 33.3, would be more

14  effectively answered" --

15         THE COURT:  Okay.

16         MR. LOPEZ:  Every one of --

17         THE COURT:  Hold on, so they said that.  Now, did

18  they provide answers to any of the actual interrogatories --

19         MR. LOPEZ:  No.

20         THE COURT:  Okay.  So give me an example of an

21  interrogatory that asks for actual information and what the

22  response was, please?

23         MR. LOPEZ:  All right, hold on a moment.  "With

24  respect to the putative first affirmative defense, itemize

25  with particularity each and every alleged trade at

10

1

2  issue which was related to shares that did not exist."

3  Response:  "Defendants object to interrogatory 14 on

4  the basis that it does not comply with (indiscernible)

5  by Local Rule 33.3 which limits the use of

6  interrogatories in the district to the names of

7  witnesses, computations of damages, and location of

8  relevant documents.  These interrogatories were served

9  in the fifth month of discovery.

10          THE COURT:  Right, and to just comment, that

11  goes back to an affirmative defense issue which,

12  again, is what I remember being a primary focus. I

13  understand the defendants to take the position that

14  they have explained the basis for their affirmative

15  defense, but this does sound factual. I, frankly, have

16  no idea how related that question is to the

17  affirmative defense, but let me ask defense counsel

18  how that should be dealt with.

19          MR. FORD:  Yes, Your Honor, and thank you, I

20  just, I pulled up the interrogatory responses as we

21  were talking so I could, so I can address this.  Here

22  was the issue with all of the interrogatories that

23  were propounded, right, and I'm looking at, for

24  example, this is number 13.  And, again, it's asking

25  about the affirmative defenses and the itemization.

And they say with respect to sort of every trade, they

want the date of the transaction, the nature of the

quality of shares, the price paid, the identity of the

counterparty. This one has A through L, so however many

subparts that is, right?  And all that they're asking for

in this interrogatory, and most of all the other ones that

I looked at are very similar, they're asking for us to put

in prose form what the trade records show, right?

THE COURT:  Okay, so here's the answer to this.

So there's an easy answer which is you refer them to the

documents and where the information is in the documents

generally.

MR. FORD:  Okay.

THE COURT:  That's all you need to do. For ones

like that, if your contention is that this is information

that is all set forth elsewhere, just identify where that

information is.

MR. FORD:  Okay, I can do that.  That's

absolutely the easy answer on this.

THE COURT:  All right, so look, guys, these are

basic principles in the discovery and answering

interrogatories and I think you need to, both need to do a

better job at communicating about exactly what the issue

is and how it can be resolved. And the Federal Rules

1

2  expressly provide that you can answer an interrogatory by

3  reference to two documents, as long as you point out where

4  that information is.

5       All right, we're moving on from the

6  interrogatories.  I've given you my instructions, I've

7  given you the principles, again, meet and confer. I do

8  think plaintiff, I'm sorry, defendant should amend

9  their responses. If you think it would be better to

10  meet and confer before you do that, then I suggest you

11  do that with Mr. Lopez, otherwise you should -- how

12  long do you think it will take you to amend those?

13       MR. FORD:  We could probably, today's

14  Thursday, I mean we can, I'll try and arrange a meet

15  and confer for, you know, Monday or Tuesday of next

16  week and then maybe if we have until next Friday we

17  can probably get them, get everything amended and

18  cleaned up.

19       THE COURT:  All right, so I'm going to direct

20  that the amended interrogatories be provided by Friday

21  of next week and Mr. Lopez will take a look, if there

22  are issues talk them out, if they're still in dispute

23  bring them to my attention.

24       MR. FORD:  Okay.

25       THE COURT:  All right, that takes care of the

13

first and second set of interrogatories.  Deposition

testimony. So I see the specific items mentioned here

and I think we should just check through them.

Antonio Collie's (phonetic) address and contact

information, I did see in defendants' response you said

that you would endeavor to provide that but why is it not so

easy jus to provide it?

MR. FORD:  Oh, Your Honor, I have not, since

they filed this letter we were just waiting for, to

discuss it here.  I mean we can find Antonio Collie's

information but I guess the question is why that has

any relevance to any of the issues in dispute?

THE COURT:  Well I think it's interested in

getting the discovery that he claims he is due. Now

we're going to talk about that, this is just

identification of a person's contact information, and

in this case, given what his role is, it should be

provided.

MR. FORD:  That's fine, Your Honor, we can

provide that, yes.

THE COURT:  Whether he can, you know, whether

he will be entitled to seek discovery from that person

remains to be seen.

All right, number two, now we're at the heart

14

1

2  of that issue. So he, I believe you were asking for,

3  Mr. Lopez, production of the entire thumb drive that

4  has all of MintBroker's information. My understanding

5  from defendant is that defendant believes it has

6  produced everything that's responsive and that that

7  thumb drive would not have anything other than

8  duplicative documents or perhaps a few others that,

9  you know, are not proportional and material to further

10  review.

11       Mr. Lopez, why do you think you're entitled to

12  the entire thumb drive?

13       MR. LOPEZ:  I have no interest in the parts of

14  the thumb drive that do not relate to this case. I do

15  believe that they will be relevant to a claim that Mr.

16  Gentile made at his deposition that he did not

17  understand such questions as were you paid for your

18  sales. I'm sorry, the British term for this is dumb

19  insolence, that he does not understand what being paid

20  means. That thumb drive will carry the ledgers of

21  MintBroker and will demonstrate whether or not

22  MintBroker was paid.

23       MR. FORD:  Your Honor, I can, yeah, I can

24  respond to that. I don't, again, I don't understand

25  that there is absolutely no dispute about what the

15

records show in terms of the, you know, the positive

account balance resulting from these transactions.  So

there's no, we don't need to go, they already have

those documents in their hands and they're not even

disputed. In terms of what Mr. Gentile testified to, I

think there is maybe, and I don't remember what he's

referring to, but there must have just been some

slight, you know, confusion about phraseology. But

we're not saying, I mean, Your Honor, if I could, this

whole case, you know, from our perspective, hinges

upon whether when there's the, when individuals are

sort of placing trades in what is effectively, you

know, almost sort of a shadow market, for lack of a

better word, but engaging in trading that aren't

connected to the actual shares, right, because the

shares we know don't actually move. But so that's sort

of where the heart of this fight is.

        But in terms of the money, the documents that

are currently in plaintiff's possession show that with

respect to these transactions there was a positive

account balance that winds up, you know, in, you know, in

the account.  Now, if Mr. Lopez is saying did you get paid

on this, I think Mr. Gentile may have said I don't know,

that phraseology isn't how we think of these, I don't get

16

 1

 2  like paid on these shares. If you engage in these trades,

 3  these transactions, you know, if we, but if you look at

 4  the account statement, right, the account statement is

 5  going to show the transactions at issue, and there's no

 6  dispute about them, and they are going to show the amount

 7  of money that's in the account at various points

 8  throughout this transaction. That's all accurate, that's

 9  all in their possession and that's all not disputed.

10         So the idea that we --

11         THE COURT:  Let me, let put this, let me

12  rephrase what I am hearing. According to you, the issue is

13  one of characterization, not of the actual data. And

14  you're saying they have the actual data?

15         MR. FORD:  One-hundred percent, that is

16  accurate.

17         THE COURT:  So, Mr. Lopez, what do you say in

18  response to that?

19         MR. LOPEZ:  This is not what Mr. Gentile was

20  testifying to.  He, we asked him repeated, you say you did

21  not receive shares, did you receive payment for selling

22  shares, and we never got a straight answer.

23         THE COURT:  All right, well what data do you

24  think there will be that's different from what you already

25  have?

1

2          MR. LOPEZ:  The cash ledgers of MintBroker. I'm

3    sorry, the accounting term, the journals and ledgers of

4    MintBroker as they relate to these trades.

5          THE COURT:  And, Mr., I'm sorry, for the

6    defense, why, well would you, why is that not different

7    from what you've already provided, or is it?

8          MR. FORD:  Yeah, no, well, one, you can see in

9    the documents that everyone has, that plaintiffs have

10   that have been produced, you can see the change in the

11   account balance based on these transactions. They have

12   those numbers, they know what the value is, there' no

13   dispute about that, that's not hidden, and so they now

14   seem to want to suggest, well, we want to look at the

15   account, you know, the cash ledger, but it's not a, that's

16   not even the information because if all the money --

17          THE COURT:  Are you conceding that the, that

18   MintBroker recorded the receipt of funds in connection

19   with those shares on their balance sheet or their

20   ledger?

21          MR. FORD:  Yeah, I mean I think what I'm

22   saying is we're not disputing, we're not disputing

23   that the, that these transactions resulted in, in sort

24   of an increase in account balance, right, in the form of

25   cash, right, in the account, and that they have that

```
 1                                              18
 2  number and we all agreed to that.
 3            THE COURT:  Your defense is that there was an
 4  exchange of cash but not ever ownership of shares?
 5            MR. FORD:  Yeah, that's exactly right, our
 6  argument is that he was never an ultimate beneficial owner
 7  or statutory insider because these were transactions in
 8  cash that were completely divorced from any movement of
 9  shares.  So I will stipulate --
10            THE COURT:  No, you will stipulate, go ahead.
11            MR. FORD:  Yeah, no, I'll, I mean I'll have to
12  look at the balance or the share prices but I think we can
13  stipulate to what those numbers are.
14            THE COURT:  Mr. Lopez, this sounds to me like a
15  matter of --
16            MR. LOPEZ:  That will be acceptable --
17            THE COURT:  Okay, that will be acceptable, good.
18            MR. LOPEZ:  Yea.
19            THE COURT:  All right, so you will, why don't
20  you draft a stipulation and then provide a draft to Mr.
21  Lopez and see if it is sufficient for the issue.
22            MR. FORD:  Okay.
23            THE COURT:  When do you think you can provide
24  that?
25            MR. FORD:  Your Honor, if we could get, I
```

                                                            19

1

2  don't want to jam myself up on agreeing to next Friday

3  again, but maybe the following week?

4         THE COURT:  Why don't we say Wednesday of the

5  following week?

6         MR. FORD:  Sure.

7         THE COURT:  Okay, let's say that.   All right,

8  the next two items on the deposition confirm the

9  affirmative defenses, bad faith and waiver. According

10 to defendants, a general explanation was provided. Mr.

11 Lopez, what is it that you are looking for other than

12 that explanation?

13        MR. LOPEZ:  A factual basis for each of those

14 defenses.

15        THE COURT:  And I'd like to hear from the

16 defense about why those facts can't be provided, Mr.

17 Ford?

18        MR. FORD:  Yeah, sure, the answer is because

19 we haven't completed discovery.  In terms of the

20 unclean hands defense, I mean, look, as I said, Your

21 Honor, our primary argument in this case and defense

22 is the one I just articulated, right, so that's sort

23 of our first line and that will be in our motion for

24 summary judgement, what we argue.

25        With respect to the waiver and unclean hands,

that has to do with the behavior of the actual

insiders of these two companies in terms of whether

they were selling shares during the short swing,

during the short swing period.  And the waiver, you

know, argument was also tied to we know that the CEO

of Avalon, you know, during this period, went out and

publicly stated that, you know, that they didn't know

who Mr. Gentile was, he wasn't an insider, he didn't

have information, you know, access to inside

information, et cetera.  So but we have not yet had an

opportunity to depose the CEOs of these two companies

and so the answer for why we haven't provided more

facts than we have (indiscernible) we just haven't

completed discovery yet.

And because, and I'll just make another point,

we do have the trade ledgers which, well, I'm sorry,

we don't have the actual trade ledgers from the two

companies. Apparently we couldn't get them from the

transfer agent, instead they just sent us, you know,

written confirmations that no shares have changed

hands with minimal exceptions, that are completely

unrelated to Mr. Gentile or MintBroker.  And so we

think, you know, the issue is we still need to ask

those questions and see if we can just dig in to what

1

2   these other de minimis, you know, these other

3   transactions are that are unrelated to Mr. Gentile or

4   MintBroker. So that's why we haven't given them more,

5   but we've certainly, we've sort of been saying, you

6   know, the same thing for several months, they know as

7   much as we do at this point. And as we complete

8   discovery, you know, we're happy to give them a more

9   fulsome explanation, but that's where we stand on

10  this.

11         THE COURT:  So there's always a tricky balance

12  with respect to affirmative defenses.  Defendants at

13  the beginning of a lawsuit are concerned about not

14  waiving any defense, they reflexively put down a

15  number of them and are hoping that they might turn up

16  information or just making sure to preserve it, yet

17  don't really have a factual basis to assert it.  At

18  the same time there may be ones that are asserted that

19  do have a factual basis and there are some facts on

20  which to believe that those affirmative defenses

21  exist.

22         And so, again, my view on this is if you have

23  any facts that you know of to support those

24  affirmative defenses, those should be given in

25  response to the interrogatory, again, subject to the

22

qualification that discovery is ongoing and it may
well be amended. But the, Mr. Lopez, as the plaintiff,
needs an understanding of what your theory is and what
facts are there so that he can conduct his discovery.
So my point is just you provide what you can now and
then you supplement later. Is that doable?

MR. FORD:  That seems, yes, absolutely, Your
Honor, thank you.

THE COURT:  All right, so you'll provide those
along with the amended responses that are coming next
Friday.

MR. FORD:  Yes, I'll include that updated
information on that --

THE COURT:  Oh, I'm sorry, yes, okay.

All right, then we have the issue of Mr.
Gentile's Form 5471, and so I see what Mr. Lopez has
explained.  Mr. Ford, what is the reason there that
it's not being provided or is it?

MR. FORD:  The Form 5471 is his tax form, it's
one of the tax forms, correct?

THE COURT:  Yes.

MR. FORD:  Yeah, our response to this is that,
is the same, you know, as to the prior discussion that
we just had with respect to they are, they have the

23

information related to these trades, right, related to the trades at issue. We know what the change in the account balance is.  So going after, you know, the thumb drive, or the balance sheet, or his tax forms, I think they are really just going to try and get more information than is remotely relevant.  And again, we're agreeing, we're not fighting them on what those numbers state regarding the trades, and they have that. And so, therefore, to say, hey, now we need his tax form as well, I'm just, I really do actually believe that plaintiffs are just trying to sort of fish for more information about my client and it's just, it doesn't advance this litigation at all, is if he turns over the Form 5471 they will have no more relevant information for this case, right, and yet they'll have additional information that's just not relevant and that might, you know, we strongly object to turning over. Particularly, you know, there is simply no reasonable basis for us to have to turn this over.

THE COURT:  Mr. Lopez, given the stipulation that we discussed just earlier, why doesn't that obviate the need for this form?

MR. LOPEZ:  It may well.

1

2          THE COURT:  Okay.

3          MR. LOPEZ:  It may well.

4          THE COURT:  All right, so why don't you think

5     about that and see what you work out with a

6     stipulation, and if that goes away, great, if it

7     doesn't and it's still disputed you'll come back.

8          All right, cost sharing. So I understand both

9     parties have issued third party requests to some or

10    all of the same third parties and it sounds as if the

11    defendant is narrower than what the plaintiff has been

12    seeking. And so the defendant says they should not be

13    charged with following up on the issues and documents

14    that go beyond what our subpoena was about, and to the

15    extent we, the defendant, have received information in

16    response to our narrower subpoenas, we have provided

17    to that to the plaintiff, although right now we're

18    holding it hostage because we haven't been getting

19    information from him.

20         So let me make sure I, is that an accurate

21    presentation, Mr. Ford, or is there more you want to

22    say on that?

23         MR. FORD:  No, I think that's right, Your

24    Honor. I mean we've spent about $2,000 paying third

25    parties to get documents. It never even occurred to us

25

to withhold anything, we immediately just started
transferring, you know, all the documents that we
received having paid, you know, out of our pocket.
And, frankly, we're working under the assumption that
this is going to flow both ways and then we learned
that it wasn't and that we got sort of a handful of
additional documents that we didn't send over, we have
no objection to sending over, but we just think that,
you know, there ought to be some fairness at play. And
I don't know, you know, how much plaintiffs have spent
on third party discovery but, you know, but whatever
it is, I think they are getting relevant documents,
and we're expecting to get them.  And I think it's,
you know, fair is fair that they turn them over
without demanding partial payment because we, you
know, we simply didn't do that.

THE COURT:  So, Mr. Lopez, I want to ask you,
no, I want to ask you questions in this particular
order.  First of all, do you have documents you have
received from third parties that you have not yet
produced to the defendants?

MR. LOPEZ:  I believe so, my colleague,
Miriam, has been doing discovery.

MS. TAUBER:  Hi, (indiscernible) I'll chime in

26

1
2   if that's okay.  We do, we have, we've also spent, I'm
3   not exactly sure of the amount, but I've offered to
4   share invoices with them so we can sort of even --
5          THE COURT:  Well that's not my question, my
6   question is whether you have documents?
7          MS. TAUBER:  So we have a lot of documents
8   and, honestly, I'm not even sure, they've very
9   voluminous, there are a lot of spreadsheets that I'm
10  not sure how relevant they are. I mean I'm sure
11  there's like some --
12         THE COURT:  Okay, you can stop.  You can stop.
13  Look, no one is allowed to hold onto and not produce
14  documents received from third parties. They are to be
15  produced to the other party upon receipt, period.  If
16  there are issues about cost, that can be raised
17  afterwards if there haven't been an agreement
18  beforehand, but I do not want to see any documents
19  withheld.
20         All right, second issue, cost.  And Mr. Lopez,
21  why should the defendants be charged and forced to pay
22  for following up on your subpoenas?
23         MR. LOPEZ:  Our offer to the defense was pool
24  whatever disbursements we each have made and split it
25  down the middle.

1

2          THE COURT:  But why do that if you're seeking

3  broader and more information than they are?

4          MR. LOPEZ:  Again, my colleague is, has been

5  in charge of discovery and I would beg to defer to her

6  because she knows what she's talking about and I

7  don't.

8          THE COURT:  All right, Ms. Tauber.

9          MS. TAUBER:  So I, so we did request a broader

10 category of documents, we got the broader category of

11 documents, and we are certainly not planning to use

12 any of them.  And as I was trying to say, they're so

13 voluminous that I'm not even sure I can electronically

14 send them.  But I got them to do a files transfer link

15 and I, I had told Mr. Ford at the beginning of the

16 case that we had paid for them, and I said, oh, you

17 know, we could share the invoices and I never received

18 a response to that.

19          So, you know, we know that every document that

20 we think is relevant they also have.  We have

21 submitted those into evidence in depositions, we're

22 not going to use anything that we haven't yet

23 expressly showed them.  And so (indiscernible) we go

24 on this way and we'll make sure that every document we

25 send and produce in some way you've seen, or we could

28

give you everything and figure out some way to do

that, but we do want to share, you know, we'll send

you our receipts, you send us yours and we'll line

them up.  And so that's (indiscernible) one or the

other.

THE COURT:  All right, right now I'm not going

to order cost sharing. To the extent the plaintiff has

issued subpoenas to third parties and has received

documents and it followed up to get them, plaintiff

has to produce those to the defendant ASAP.

Defendant, to the extent they issue subpoenas and get

material in response, they have to produce it to

plaintiff, period.  There may come a point later in

the litigation where the issue of cost may arise,

either because of particular rulings that are made or

the outcome of dispositive motion or trial. So there

is certainly no prejudice to raising cost issues at

that time, but right now there will be no sharing of

costs.

All right, discover deadline certainly will be

extended. I know the defendant has asked for a stay. I

don't typically do that. I don't like to have cases

just hanging out there and then people say well when

it becomes feasible we'll start up again. We are in a

1                                                    29

2  situation that is difficult for everyone and

3  litigation still has to be able to go forward, even if

4  not quite as quick or as, in the exact ways that

5  people may have wanted when we are not restricted to

6  social distancing and quarantine and all that.

7          So as you likely know, we, certainly in the

8  Southern District and I think probably in all

9  districts, are encouraging the use of remote

10 depositions.  They, certainly for many parties and

11 third parties should work just fine. I understand

12 issues about being able to have people in different

13 locations and show them the same document, et cetera,

14 but technology does permit that to be done. So I

15 suggest you all look into that and try to figure that

16 out, but I'm certainly going to grant an extension.

17 And what is the current deadline, Mr. Lopez?

18          MR. LOPEZ:  Four days ago.

19          THE COURT:  Okay, so in your letter you had

20 said 60 days, do you still think that is sufficient

21 time?

22          MR. LOPEZ:  Absolutely.

23          THE COURT:  All right, and what do the

24 defendants think on that?

25          MR. FORD:  Your Honor, yeah, 60 days, we could

1

2  certainly, we can certainly set that as long as Your

3  Honor won't hold me to not come back and suggest that

4  we might need some more time. But I do think, I mean

5  from our perspective, Your Honor, we were hoping to be

6  able to take the deposition of, you know, the two CEOs

7  in person and that was sort of part of what was behind

8  our suggestion of a stay because things are just so,

9  you know, unknown right now.

10        We can, you know, if Your Honor sets the 60

11  days, obviously I think that, as you just said,

12  suggests that we need to take the depositions by, you

13  know, by Zoom or something like that, which we can, if

14  that's the order than we'll do that and in which case,

15  you know, will endeavor to get that done within the

16  next 60 days, and if we can't I'll come back to Your

17  Honor hat in hand.

18        THE COURT:  All right, so what I'm going to do

19  is this. I'm going to extend 60 days from today and I,

20  as I said, I want you to explore and see what can be

21  done with remote depositions. I understand that there

22  are and will always be certain witnesses that the

23  parties certainly would prefer to be able to depose

24  live, so perhaps it would make sense to defer deposing

25  the CEOs towards the end of that 60 days to see if

31

1
2  anything lightens up that would allow that to happen
3  in person, although we shouldn't bank on that, but for
4  now you should assume it will all take place in 60
5  days. If there are any difficulties and if there's
6  good reason, good cause for further extension, I'll
7  certainly be receptive to hearing about that.
8          All right, anything else? Anything else from
9  the plaintiff?
10         MR. LOPEZ:  No, Your Honor, thank you.
11         THE COURT:  Anything else from the defense?
12         MR. FORD:  No, Your Honor, thank you very much
13  for this morning here, we appreciate it.
14         THE COURT:  All right, well most importantly I
15  hope everyone is healthy, I hope your loved ones and
16  your colleagues are healthy and as I say to everyone,
17  this, too, shall pass, and it will.  So be well and we
18  are adjourned for now, thank you.
19                 (Whereupon the matter is adjourned.)
20
21
22
23
24
25

1                                                                      32

2

3

4                          C E R T I F I C A T E

5

6          I, Carole Ludwig, certify that the foregoing

7    transcript of proceedings in the United States District Court,

8    Southern District of New York, Avalon Holdings Corporation

9    versus Gentile, et al., Docket #18cv7291, was prepared using

10   PC-based transcription software and is a true and accurate

11   record of the proceedings.

12

13

14   Signature_____ *Carole Ludwig*_____

15                      Carole Ludwig

16   Date:  October 25, 2021

17

18

19

20

21

22

23

24

25