UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVALON HOLDINGS CORP.,<br><br>        Plaintiff,<br><br>v.<br><br>GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD.,<br><br>        Defendants. | No. 18-cv-7291 (VSB) (RJL)<br><br>ECF Case |

Related to:

| | |
|---|---|
| NEW CONCEPT ENERGY, INC.<br><br>        Plaintiff,<br><br>v.<br><br>GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD.,<br><br>        Defendants. | No. 18-cv-8896 (VSB) (RJL)<br><br>ECF Case |

**SUR-REPLY IN SUPPORT OF DEFENDANT'S OPPOSITION
TO PLAINTIFFS' BRIEFS IN SUPPORT OF PLAINTIFFS'
CALCULATION OF DAMAGES AND MOTIONS FOR ENTRY OF JUDGMENT**

Dated: July 6, 2022

FORD O'BRIEN LANDY LLP

Adam C. Ford
Matthew A. Ford
275 Madison Avenue, Fl. 24
New York, NY 10016
aford@fordobrien.com
mford@fordobrien.com
(212) 858-0040

*Attorneys for Defendants Guy Gentile and
MintBroker International, Ltd.*

Pursuant to leave granted, Gentile respectfully submits the following memorandum of law in further opposition to Plaintiffs' reply brief in support of Plaintiffs' calculation of damages and motions for entry of judgment.

## ARGUMENT

On June 6, 2022, the Court conducted a hearing on Gentile's letter motion to admit newly obtained evidence, including MintBroker trade records, affidavits, and expert reports calculating disgorgeable profits. During the hearing, Plaintiffs argued that "we would like the opportunity to address these documents and explain to the Court why they do not affect the profit calculations and anything else in this case." (Dkt. 114 pg. 17). Plaintiffs' reply briefs, however, do no such thing. To the contrary, Plaintiffs devote 17 of 22 pages[1] of both briefs to why they believe the newly obtained evidence should not be admitted. The remaining few pages purport to analyze *just* 800 trades of AWX shares while failing to consider the *a priori* question of who beneficially owned those shares (or the other tens of thousands of shares of AWX and GBR traded by MintBroker). Noticeably, Plaintiffs' reply briefs fail to directly challenge (i) the authenticity of Gentile's newly proffered evidence, (ii) the affidavits submitted in support of his opposition and motion to enlarge the record, or (iii) the expert reports submitted in support of his disgorgement calculations. Nor do the reply briefs distinguish between trading in AWX and GBR.

As to Plaintiffs' main argument on reply, the Court should disregard their attempt to dissuade the Court from considering the newly obtained trade records. These records differentiate trades of beneficially owned and non-beneficially owned shares and are essential to making an accurate disgorgement calculation. (Opp. pgs. 6–8; Opp. Exs. C, E–G, J). Plaintiffs

---

[1] Plaintiffs' briefs were filed untimely on June 23, 2022 [Dkts. 102, 112] and exceed the permissible page limit for reply briefs by 12 pages.

1

seek to persuade the Court from considering these documents, arguing "Gentile testified that the interactive [sic] records do not include client trades." (Reply pg. 14). But this argument completely misrepresents Gentile's testimony. In fact, Gentile *repeatedly testified the exact opposite*. (Reply Ex. 1, Tr. pgs. 47, 55, 57 ["Q: Okay. Is it your understanding that all the trades in these documents are MintBroker's proprietary trades? A. I don't know that for a fact…They could have included client transactions, as well."; "Q. So you're saying that these 13D lists might include some client trades? A. Yes. It's possible."; "Q. So isn't it the case that any order that was sent to Interactive would have been a MintBroker proprietary trade? A. Not necessarily because, like I said, if there was two clients trading, and there was not an offsetting trade between clients, then an order could be sent to the street."]).

Gentile has always made clear that the InteractiveBrokers trade records may include trades of shares beneficially owned by clients, but, until relatively recently, had no access to those records to confirm or deny the amount. (Opp. Ex. ¶¶ 7, 14; Ex. B. ¶¶ 5–6). On the other hand, Plaintiffs have been aware since Gentile's deposition on February 24, 2020 of the existence of MintBroker records differentiating client trades. (Reply Ex. 1, Tr. pgs. 47, 55, 57). Plaintiffs chose not to seek them from MintBroker, opting to conduct Gentile's deposition without these records and to seek disgorgement without first determining which shares traded in AWX and GBR were beneficially owned by MintBroker.

Plaintiffs instead now argue that "all available evidence, including Defendants' new document[s], corroborates, Gentile's testimony that client trades are not included in the Interactive Records." (Reply pgs. 17–22). In support, Plaintiffs purport to compare InteractiveBrokers records with newly obtained MintBroker records, which include trades placed on behalf of clients. (Reply pg. 18–20). In doing so, Plaintiffs direct the Court to 800 AWX

shares traded on 9:43:08 a.m. on June 24, 2018.  (*Id.* pg. 19).  While completely disregarding the tens of thousands of other shares traded in AWX and GBR and conceding these 800 shares reflect "a client placed [] order," Plaintiffs theorize that "[t]he document comparison above further establish [sic] that the Interactive Brokers [sic] records include only the shares purchased by Gentile in the market for MintBroker's proprietary account." (*Id.* pg. 20).  To support the point, Plaintiffs point to deposition testimony Gentile gave about a hypothetical trading scenario related to "riskless principal" trades.  (*Id.* pg. 19; Dkt. 116, June 27 Ltr. pg. 2).

But Plaintiffs' "analysis" is wrong for two reasons.  First, Plaintiffs continue to confound account numbers, mistakenly suggesting that "it appears that the relevant account is actually the 32812 account, in which trading corresponds to MintBroker's Interactive ("IB") trading.  The 32810, on the other hand, appears to reflect the taking, fulfilling, and hedging of client orders." (Reply pg. 21).  As the Affidavit of Stephen Darville, MintBroker's former IT manager, makes clear, however, "Records in MintBroker account number 32812 functioned [] more or less as a tracking method or blotter to show where any order-placed through the MintBroker system-was directed."  (Opp. Ex. D, Darville Aff. pg. 3 n.2).  More specifically, Darville explains that "MintBroker's records for AWX contained a total of 42,437 entries: 35,196 records belonged to three MintBroker accounts numbered 32810, 32812 and 32816, and leaving 7,240 records belonging to 700 MintBroker clients." (*Id.*).  Similarly, MintBroker's records for GBR contained a total of 54,901 records: 38,707 records belonged to two MintBroker accounts numbered 32810 and 32812, leaving 16,914 records belonging to 921 MintBroker clients."  (*Id.*).

To be clear, Plaintiffs' analysis rests on the flawed assumption that the 32812 account reflects shares beneficially owned by MintBroker when, in fact, it functions solely as a tracking method or blotter of where orders placed through MintBroker's system were directed. (*Id.*). What

3

*is* relevant to the damages inquest are the 7,240 trades of AWX on behalf 700 clients and the 16,194 trades of GBR on behalf of 921 clients who *beneficially owned* all these shares. As both expert reports conclude, these trades must be excluded from the disgorgement calculation because clients (<u>not</u> MintBroker) beneficially owned them. (Opp. Exs. E–G). Plaintiffs reference to the 32812 account is a red-herring, and in any event does not support its analysis.

Second, and more fundamentally, in calculating disgorgement Plaintiffs fail to grapple with, or even consider, the *a priori* question whether MintBroker or the client beneficially owned these 800 shares (or any of the shares traded). (Dkt. 114, Tr. pgs. 23–24, 28). Instead, Plaintiffs continue to mistakenly assume all InteractiveBroker trades were of shares beneficially owned by MintBroker. (*See* Reply pg. 18 [arguing that "any 'street side' client trades would not be reflected in the Interactive Brokers statements."]). As the newly obtained evidence, the Darville Affidavit, and the Beresford and Christian reports confirm, this assumption is demonstrably false.

Since Section 16(b) reaches only beneficially owned shares, only trades of beneficially owned shares may be considered when calculating disgorgement. *See* 15 U.S.C. § 78p(b). Given this restricted reach, the analysis in Plaintiffs' reply briefs actually disproves their theories while advancing the position of Gentile and both expert reports. Specifically, the 800 shares identified by Plaintiffs were beneficially owned by a MintBroker client with 300 shares traded through ETC and 500 shares traded through InteractiveBrokers. Thus, while Plaintiffs have included these 500 shares in their disgorgement calculation, these 500 (or 800) shares, in fact, were never beneficially owned by MintBroker, the client alone possessed the capacity to vote the shares and/or dispose of them at all times. As the trade records make clear, the 800 trades occurred on behalf of account MBS010067, a client account, and were beneficially owned by

that client. Plaintiffs' error is not restricted to 500 (or 800 shares), they have compounded the error by including 7,240 trades of AWX and 16,194 trades of GBR shares beneficially owned by clients in their egregiously inflated disgorgement calculations. (Reply pg. 17 ["the Interactive Brokers statements only reflect Minbroker's [sic] 'principal' trading . . . ."]).

Both Beresford's and Christian's expert reports calculate the short-swing profits using the lowest in, highest out method while also excluding trades of shares beneficially owned by clients. The expert reports of these two independent CPAs, upon properly excluding trades not beneficially owned by MintBroker, have determined (1) that MintBroker's short-swing profits in AWX collectively totaled **$1,212,220** and (2) that New Concept is not entitled to disgorgeable profits at all because at no point did MintBroker's beneficial interest of GBR shares represent 10% or more ownership. Plaintiffs have failed to rebut these reports or otherwise provide any legal support for their position that non-beneficially owned client shares traded through MintBroker's proprietary account at InteractiveBrokers may be included in a Section 16(b) disgorgement calculation of short-swing profits.

## CONCLUSION

For the reasons set forth herein and more fully in Gentile's opposition brief, Plaintiffs have failed to prove damages with reasonable certainty and New Concept has failed to prove entitlement to disgorgeable profits. Any disgorgeable profits to Avalon should not exceed $1.2 million.

Dated: New York, New York
      July 6, 2022

FORD O'BRIEN LANDY LLP

By: _____
    Adam C. Ford
    Robert S. Landy

                    Matthew Aaron Ford
                    275 Madison Avenue, Fl. 24
                    New York, NY 10016
                    3700 Rach Road South 620 South
                    Austin, TX 78738
                    aford@fordobrien.com
                    rlandy@fordobrien.com
                    mford@fordobrien.com
                    (212) 858-0040

*Attorneys for Defendants Guy Gentile and Mintbroker International, Ltd.*

## **CERTIFICATE OF SERVICE**

It is hereby certified that on this 6th day of July, 2022, a copy of the foregoing was served through the Court's electronic filing system to all parties who have entered an appearance in this adversary proceeding

July 6, 2022                                                                              By:_____
                                                                                                          Adam C. Ford