UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVALON HOLDINGS CORP., | |
| Plaintiff, | No. 18-cv-7291 (VSB) (RJL) |
| v. | ECF Case |
| GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

Related to:

| | |
|---|---|
| NEW CONCEPT ENERGY, INC. | |
| Plaintiff, | No. 18-cv-8896 (VSB) (RJL) |
| v. | ECF Case |
| GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

**PLAINTIFFS'**
**SUBMISSION OF REVISED PRE-JUDGMENT INTEREST CALCULATIONS,**
as Directed in the Court's Opinion and Order of February 5, 2024;
**and WAIVER OF THE COURT'S AWARD OF ATTORNEY'S FEES**
as Additional to, or Different From, Fees Privately Contracted Between Plaintiffs and Counsel

---

**MIRIAM TAUBER, ESQ.**
885 Park Avenue # 2A
New York NY 10075
Tel: 917.683.6823
MiriamTauberLaw@gmail.com

**DAVID LOPEZ, ESQ.**
171 Edge of Woods Rd. | P.O. Box 323
Southampton NY 11968
Tel: 631.287.5520
DavidLopezEsq@aol.com

*Attorneys for Plaintiffs*

As directed by the Court's Opinion & Order dated February 5, 2024 (Avalon Dkt. 274; New Concept Dkt. 258), the Plaintiffs in these related actions, Avalon Holdings Corporation ("Avalon"); and New Concept Energy, Inc. ("New Concept"), through their attorneys, Miriam Tauber and David Lopez, respectfully submit pre-judgment interest calculations for both cases. The computations are projected through March 15, 2024, the deadline for Plaintiffs to reply to Gentile's opposition to this submission (due on March 8, 2024) (*see* Order, Avalon Dkt. 277; New Concept Dkt. 261). Daily accrual rates are provided thereafter through the second quarter of 2024.

Plaintiffs' counsel also respectfully waive the award of attorneys' fees previously requested, and rest on their retainer agreements with the Plaintiffs, privately negotiated prior to the commencement of these suits. This is a tactical decision made to avoid further delay in the entry of Final Judgment through the raising of what would undoubtedly be contentious and time-consuming ancillary disputes.

## POINT I.

**PRE-JUDGMENT INTEREST
Through March 15, 2024, IS COMPUTED AS:
$1,974,272 (*AVALON*); and $1,962,441 (*NEW CONCEPT*)
(With Interest Accruing Daily Thereafter)**

There is no statutorily decreed rate of pre-judgment interest in federal cases (in contrast to the post-judgment interest rate, which is provided by 28 U.S.C. §1961). Broad discretion is allowed the District Court to choose a suitable pre-judgment interest rate. *See Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.,* 67 F.3d 1063, 1071-72 (2d Cir. 1995) ("The decision whether to grant prejudgment interest, and the rate used if such interest is granted, are matters confided to the district court's broad discretion"); *see also SEC. v. First Jersey Sec., Inc.,* 101 F.3d

1450, 1476 (2d Cir. 1996) (upholding district court's award of prejudgment interest at the IRS underpayment rate instead of post-judgment interest T-bill rate advocated by the defendants).

Courts in this District have exercised their discretion to impose a variety of interest rates when awarding pre-judgment interest, including the 9% *per annum* New York statutory pre- and post-judgment interest rate, provided by N.Y. C.P.L.R. §5004, and other lesser rates. *See, e.g.*, *Donoghue v. MIRACOR Diagnostics, Inc.*, No. 00-CV-6696-JGK, 2002 WL 233188, at **3-4 (S.D.N.Y. Feb. 11, 2002) ("A district court sitting in New York may use the [New York statutory] rate of interest"); *see also In re Livent, Inc.*, 360 F. Supp. 2d 568, 572–73 (S.D.N.Y. 2005) (awarding interest at 9% N.Y. statutory rate advocated by plaintiff over defendants' objections, in view of the defendants' "egregious wrongdoing" in violating securities regulations, and "dilatory tactics" in litigation causing plaintiffs to "wait more than six years to reach judgment"); *but see In re Palermo*, 739 F. 3d 99, 107-108 (2d Cir. 2014) (district court could exercise discretion to elect, but was not bound to use, the N.Y. statutory rate); *compare Gordon v. Site 16/17 Dev., LLC*, No. 11-CV-427-RMB (AJP), 2011 WL 3251520, at *3 (S.D.N.Y. July 28, 2011) (noting various pre-judgment interest rates applied by district courts in different circumstances, and selecting "the IRS underpayment rate, [which] represents the cost defendants would have had to bear had they borrowed the money from the government and therefore serves to disgorge the defendants of a benefit from wrongfully withholding Gordon's money") *with Rai v. WB Imico Lexington Fee, LLC*, No. 09-CV-9586-PGG, 2014 WL 12899673, at *5 (S.D.N.Y. May 12, 2014) (same, but electing to use the statutory post-judgment "T-bill" rate provided by 28 U.S.C. §1961 as the pre-judgment interest rate, where the defendants "have not had use" of the plaintiff's contested deposit, which had "been held in escrow since it was first provided to Defendants, and Defendants have conceded that they are not entitled to the interest the account has earned").

In cases ordering disgorgement of trading profits realized in violation of the Securities Exchange Act, the Second Circuit has repeatedly upheld awards of pre-judgment interest at the IRS underpayment rate. *See SEC v. Ahmed,* 72 F. 4th 379, 403–404 (2d Cir. 2023) (*cert. pet. filed,* Jan. 9, 2024) (upholding award of pre-judgment interest, concluding that "Ahmed held the ill-gotten gains before the asset freeze, so the IRS underpayment rate was appropriate"); *see also First Jersey*, 101 F. 3d at 1476 (the IRS underpayment rate is "generally" the rate imposed "when the SEC itself orders disgorgement," as "That rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud. Accordingly, courts have approved the use of the IRS underpayment rate in connection with disgorgement" when awarding pre-judgment interest). Plaintiffs respectfully submit that the Court should apply the IRS underpayment rate in awarding pre-judgment in this case. Plaintiffs calculate pre-judgment interest at the IRS underpayment rate in this Submission. (*See* Calculations at Exhibits A, B.)

Similarly, in cases arising from violations of §16(b) or other securities laws, pre-judgment interest is awarded from the date on which the violation occurred, i.e., when Gentile wrongfully obtained the use of ill-gotten trading proceeds, which were immediately subject to disgorgement to Plaintiffs under §16(b). *See, e.g., MIRACOR Diagnostics,* 2002 WL 233188, at **3-4 (computing pre-judgment interest from the date of each short swing trading violation); *see also Roth v. Jennings,* No. 03-CV-7760-DAB, 2009 WL 1440670 (S.D.N.Y. May 21, 2009) (computing pre-judgment interest from date on which short swing profits were realized, further quoted below); *see also First Jersey*, 101 F. 3d at 1476 (upholding district court's award of pre-judgment interest for "the entire 12–year period since the violations occurred"); *Ahmed*, 72 4th at 403 (noting pre-judgment interest is appropriate for the period during which "the defendant has a

4

legally recognized benefit from use of the money retained"). This Submission computes pre-judgment interest beginning on the date on which the Defendant realized short swing trading profits from trading each of the Plaintiff's stock (in each case, the date of the last "matched" transaction used to compute the Defendant's §16(b) liability in the calculations submitted by the Plaintiff, adopted in the Report & Recommendation, and approved by the Court in the Opinion & Order directing the filing of this Submission).

All of Defendant's short swing trading in Avalon was completed by July 31, 2018; Plaintiff accordingly calculates pre-judgment interest for Avalon beginning on August 1, 2018. All of Defendant's short swing trading in New Concept was completed by July 3, 2018; Plaintiff accordingly calculates pre-judgment interest for New Concept beginning on July 4, 2018. (*See* Calculations at Exhibits A, B.) (*See Roth v. Jennings,* 2009 WL 1440670, further quoted below).

Courts also have broad discretion to determine whether pre-judgment interest should be compounded and how to compound interest. But the Second Circuit has suggested that some form of compounding is usually appropriate; otherwise, the defendant is effectively provided with the benefit of an "interest-free loan." *Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134, 145 (2d Cir. 1993) (finding the district court's failure to apply a compound rate of pre-judgment interest constituted an abuse of discretion in connection with an award of back-pay and remanding for the district court to "make the determination in the first instance"). Courts have exercised their discretion to compound pre-judgment interest in a variety of ways, including daily, quarterly, and annually; or to determine that compounded pre-judgment interest is not warranted. *See Gordon*, 2011 WL 3251520, at \*\*3-4 & n.8 (collecting cases and finding "simple interest" at the IRS underpayment rate sufficiently compensated the plaintiff for the loss of funds, in case where default judgment was awarded on a claim for rescission of a real estate contract).

5

Plaintiffs' pre-judgment interest computations follow the methodology adopted and thoughtfully explained by Magistrate Judge Theodore H. Katz in an opinion issued in the §16(b) case *Roth v. Jennings,* which was approved and ratified in its entirety by Judge Batts. As Judge Katz writes:

> "Where the Securities and Exchange Commission (SEC) prevails in enforcement actions under the Exchange Act, courts allow prejudgment interest at the rate taxpayers are charged for late or missing payment to the IRS. *First Jersey Sec.,* 101 F.3d at 1476; SEC Rules, 17 C.F.R. §201.600 (2008) (providing for prejudgment interest at federal tax deficiency rates). By replicating 'what it would have cost to borrow the money from the government' the IRS underpayment rate 'approximates one of the benefits the defendant derived' from Exchange Act violations. *See First Jersey Sec.*, 101 F.3d at 1476.
>
> "… §16(b) embodies a policy of forceful deterrence against insider trading. *See Reliance Elec. Co [v. Emerson Elec. Co.],* 404 U.S. [418,] 422 [1972]. MMI, although unquestionably entitled to Defendant's short-swing profits as of the time he realized them (and thus to interest until they are disgorged), did not experience any direct loss as a result his transactions. There is thus a greater need to impose a punishment proportional to defendant's improper gain than to reconstruct the rate of return the company could have earned on his profits—an exercise for which the Court would be ill-equipped. Therefore, to 'approximate one of the benefits' Defendant derived from enjoying short-swing profits, he should pay prejudgment interest at the rate it would have cost him to borrow the money from the government, as he would be required to do if found liable in an SEC enforcement action. *See First Jersey Sec.,* 101 F.3d at 1476.
>
> **"The Court has calculated interest using the 'tax underpayment rates' published by the IRS on a quarterly basis, taking September 10, 2003, the first day following Defendant's last relevant transaction**, as a starting point. *See* 26 C.F.R. §201.6621- (2008) (authorizing the IRS to set adjusted interest rates for tax underpayment; Rev Rul. 2008-47, 2008-39 I.R.B. 760 (2008) (providing the current and historical rates since 1975). **Compounding interest quarterly** pursuant to the SEC approach set forth in 17 C.F.R. §201.600(b), Defendant owes $1,590,140.81 in prejudgment interest as of October 15, 2008, the date of this Report and Recommendation. In addition, based on the current interest rate of 6 percent, *see* Rev. Rul. 2008-47, Defendant me be charged $957.56 in accruing interest for each additional day until judgment is entered. Exhibit B attached to this Report and Recommendation displays the calculations used to determine these amounts."

*Roth v. Jennings,* 2009 WL 1440670, at *8 (emphasis added).

Plaintiffs compute pre-judgment interest using the methodology of *Roth v. Jennings,* at the IRS underpayment rate relevant to the pre-judgment periods in these cases, with interest compounded quarterly, at Exhibits A and B. The table prepared by Plaintiffs is identical to the table used by the *Roth v. Jennings* court (*see* Exhibit B cited in the *Roth v. Jennings* opinion, available along with the text of the opinion, at 2009 WL 1440670).

**The total pre-judgment interest owed by Gentile calculate through March 15, 2024, to each Plaintiff is: $1,974,272 to Avalon; and $1,962,441 to New Concept. The total Judgment owed in each case as of March 15, 2024, inclusive of pre-judgment interest is: $8,210,180 (Avalon); and $8,064,443 (New Concept). (***See*** Exhibits A and B).**

This Submission is scheduled to be fully briefed on March 15, 2024. Plaintiffs submit that additional pre-judgment interest should be awarded at the daily rate of **$1,799/day for Avalon**; and **$1,768/day for New Concept**, which is calculated in the same methodology described above, but without compounding, *for each day past March 15, 2024*, until the date of entry of Final Judgment in these cases anytime within the second quarter of 2024 (i.e., until June 30, 2024, the period through which the IRS Underpayment rate has been announced). (Exhibits A and B).

### POINT II.

### PLAINTIFFS RESPECTFULLY WAIVE THE COURT'S ATTORNEYS' FEE AWARD

Plaintiffs' counsel have made the tactical decision to move these case to as prompt an entry of judgment as possible and to avoid the further delay that an application for attorneys' fees would entail. From our experience in this case, we believe such an application would be contentious, time consuming and a distraction that will inordinately delay the entry of Final

Judgments. This litigation has been drawn out for far too long already, and Plaintiffs have waited long enough for Final Judgments to be entered.

Plaintiffs' counsel thanks the Court for recognizing the appropriateness of an award of legal fees but we elect to rely on our contractual retainer arrangements with our clients for reasonable and adequate compensation. We believe our waiver of additional or different fees by the Court to be in our clients' best interests.

### **CONCLUSION**

- Pre-judgment interest should be awarded in the amounts of:

**To Avalon:**

**$1,974,27, for a total Final Judgment amount of $8,210,180,** as of March 15, 2024, **(**plus **$1,799/day** for each day past March 15, 2024, until Final Judgment is entered).

**To New Concept**:

**$1,962,441, for a total Final Judgment of $8,064,443,** as of March 15, 2024**,** (plus **$1,768/day** for each day past March 15, 2024, until Final Judgment is entered).

- The award of attorney's fees in favor of the Plaintiffs against Gentile is waived.

Dated:  Southampton, New York
          February 23, 2024

*/s/ Miriam Tauber*                                              */s/ David Lopez*

_____          _____
Miriam Tauber, Esq. (MT-1979)                              David Lopez, Esq. (DL-6779)
*Attorney for Plaintiffs*                                              *Attorney for Plaintiffs*