UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVALON HOLDINGS CORP., | No. 18-cv-7291 (VSB) (RJL) |
| Plaintiff, | ECF Case |
| v. | |
| GUY GENTILE and MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

Related to:

| | |
|---|---|
| NEW CONCEPT ENERGY, INC. | No. 18-cv-8896 (VSB) (RJL) |
| Plaintiff, | ECF Case |
| v. | |
| GUY GENTILE and MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
THEIR APPLICATION FOR PRE-JUDGMENT INTEREST**

David Lopez (DL-6779)
LAW OFFICES OF DAVID LOPEZ
171 Edge of Woods Road | P.O. Box 323
Southampton NY 11969-0323
(631) 287-5520 | DavidLopezEsq@aol.com

Miriam Tauber (MT-1979)
MIRIAM TAUBER LAW PLLC
885 Park Ave. # 2A
New York NY 10075
(323) 790-4881| MiriamTauberLaw@gmail.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

| | |
|---|---|
| **TABLE OF AUTHORITIES** | ii |
| **OVERVIEW** | 1 |
| **POINT I.**<br><br>**AN AWARD OF PRE-JUDGMENT INTEREST**<br>**HAS BEEN MADE AND IS THE LAW OF THE CASE** | 2 |
| **A. The Short-Swing Profits Were Realized in Pump-and-Dump Manipulations.** | 2 |
| **B. False Reporting Was Employed to Conceal Mr. Gentile's Intent and Schemes.** | 3 |
| **C. The Award of Prejudgment Interest Is in No Way Dependent on a Showing of Access to Inside Information or of Its Use, Nor on a Showing of Financial Injury Beyond Deprivation of The Use of Judgment Monies Due.** | 5 |
| **D. The Defense Was Conducted as a Bad Faith Exercise of Delay and Mendacity.** | 6 |
| **POINT II.**<br><br>**THE PRE-JUDGMENT INTEREST RATES PROPOSED BY THE PLAINTIFFS**<br>**AND THE METHOD FOR ARRIVING AT THEM ARE SUPPORTED BY**<br>**PRECEDENT AND ARE REASONABLE APPEALS TO THE COURT'S DISCRETION.** | 8 |
| **POINT III.**<br><br>**COMPOUNDING OF PRE-JUDGMENT INTEREST**<br>**IS FAIR, REASONABLE AND WELL PRECEDENTED** | 9 |
| **POINT IV.**<br><br>**PLAINTIFFS HAVE WAIVED THE COURT'S AWARD OF ATTORNEYS' FEES,**<br>**NO PAYMENT HAS BEEN OR WILL BE MADE IN RESPECT OF THEM,**<br>**AND THEIR AWARD SHOULD HAVE NO BEARING ON THE RATE OF**<br>**PRE-JUDGMENT INTEREST AND ITS MANNER OF COMPOUNDING** | 10 |

**TABLE OF AUTHORITIES**

**Cases**

*Blau v. Lehman,*
   368 U.S. 403 (1962);..................................................................................................... 1

*Donoghue v. Casual Male Retail Group, Inc.,*
   375 F. Supp. 2d 226 (S.D.N.Y. 2005); ........................................................................... 1

*Gordon v. Site 16/17 Development, LLC,*
   No. 11 Civ. 0427 (RMB), 2011 WL 3251520 (S.D.N.Y. July 28, 2011) .................................. 10

*Jones v. UNUM Life Insurance Co. of America,*
   223 F. 3d 130 (2d. Cir. 2000);........................................................................................ 8

*Morales v. Fruend,*
   163 F.3d 763 (2d Cir. 1999). ........................................................................................ 2

*Roth v. Jennings*,
   No. 03-CV-7760-DAB, 2009 WL 1440670 (S.D.N.Y. May 21, 2009),................................ 8, 10

*Saulpaugh v. Monroe County Hospital,*
   4 F.3d 134 (2d Cir. 1993) ............................................................................................ 10

*SEC v. First Jersey Securities, Inc.,*
   101 F.3d 1450 (2d Cir. 1996)........................................................................................ 8

*Whittaker v. Whittaker Corp*.,
   639 F. 2d 516 (9th Cir. 1981)........................................................................................ 2

**Treatises**

Peter J. Romeo & Alan L. Dye,
   *Section 16 Treatise* (5th ed.) ........................................................................................ 1

## **OVERVIEW**

What remains to be resolved is the amount of pre-judgment interest to be assessed against Mr. Gentile and the manner of its computation, not whether pre-judgment interest is due. It is the law of the case that pre-judgment interest is to be incorporated in the final judgments to be entered and is warranted by an ample record and hundreds of docket entries bespeaking dilatory tactics employed in bad faith by Mr. Gentile over nearly six years and counting of litigation.

The Supreme Court has instructed that pre-judgment interest should be "given in response to consideration of fairness" and denied when "its exaction would be inequitable." *Blau v. Lehman,* 368 U.S. 403, 414 (1962); *see also Donoghue v. Casual Male Retail Grp., Inc.,* 375 F. Supp. 2d 226, 226 (S.D.N.Y. 2005); *see generally* Peter J. Romeo & Alan L. Dye, *Section 16 Treatise,* 5th ed. §9.01 p.864. This rule necessarily invokes the discretion of the trial Court in determining the equities of a defendant's conduct. We will address this consideration at Point I, *infra.*

The interest rate Plaintiffs propose be employed is challenged by Mr. Gentile because he would prefer a lower one. This is a matter for application of the Court's discretion. We will address this issue at Point II, *infra.*

Whether interest is to be simple or compounded is also a matter for application of the court's discretion. We will address this issue at Point III, *infra*.

And whether the award of attorneys' fees—which Plaintiffs' counsel have waived to expedite the end of trial court proceedings—should mitigate the amount of prejudgment interest we address at Point IV, *infra.*

1

**POINT I.**

**AN AWARD OF PREJUDGMENT INTEREST
HAS BEEN MADE AND IS THE LAW OF THE CASE**

Although Mr. Gentile at page 2 of his Opposition, and elsewhere, argues against the award of prejudgment interest he is contesting the findings and holdings of the Court. Plaintiffs decline to relitigate what is now the law of the case. Challenging the Court's rulings is a matter for appeal. The amount of interest to be assessed is the sole issue properly to be decided on this Application.

The Supreme Court has laid down as a governing principle that prejudgment interest in a short-swing trading case is to be denied when "its exaction would be inequitable." *Blau v. Lehman,* 368 U.S. at 414. The inherent presumption of this formulation is that it is the burden of the insider to demonstrate inequity. In *Whittaker v. Whittaker Corp.*, 639 F. 2d 516, 533 (9th Cir.) *cert. denied*, 454 U.S. 1031 (1981), the Ninth Circuit explicitly stated that "prejudgment interest is generally considered a part of a §16(b) recovery," a view substantially repeated by the Second Circuit in *Morales v. Fruend,* 163 F.3d 763, 767 (2d Cir. 1999). We suggest that the default position is to award and that we are compelled to examine the equities in deciding whether prejudgment interest is to be at a rate that deters or that encourages behavior of the sort here spread upon the record.

A. **The Short-Swing Profits Were Realized in Pump-and-Dump Manipulations.**

Mr. Gentile, beginning with the public market for trading New Concept shares, hit upon a formula for plucking the gullible. As described in Plaintiffs' Brief supporting their Motions for Summary Judgment (New Concept Dkt. 71; Avalon Dkt. 76), he caused his 99%-owned offshore day-trading firm, Mintbroker International, Ltd., an alter ego, to accumulate shares of

2

New Concept over a period of months, crossing the 10% beneficial ownership border in the process.

He caused increasing rapidity of accumulation and trading of shares to take place at increasing prices until the general public noticed and joined in the scrum. This was the "pump" phase of his scheme. When the pot had been well and truly stirred, with prices spiking by percentages in the hundreds, Mr. Gentile reversed course and began a rapid liquidation of his position. During the accumulation period members of the public were induced to buy on margin and the rapid reversal of Mr. Gentile's market participation punctured the bubble he had created. His exiting caused margin calls to go out. Having cornered the market for New Concept shares Mr. Gentile's repository of stock became the seller of last resort to those caught short in meeting their margin calls. Mr. Gentile was able to liquidate at whatever prices the market would bear and those sales, made while he still held beneficial ownership of more-than-10% of New Concept shares, were the source of Mr. Gentile's recoverable short-swing profits.

So successful and easy was his scam that Mr. Gentile promptly repeated the exercise with Avalon Holdings common stock. (This description of Mr. Gentile's activities, appearing at Avalon Dkt. 76 and New Concept Dkt. 71, has not been challenged although spread upon the record early in the cases.)

B. **False Reporting Was Employed to Conceal Mr. Gentile's Intent and Schemes.**

Mr. Gentile, during his time of accumulation of New Concept and Avalon Holdings shares on his way to more-than-10% beneficial ownership, necessarily passed the 5% ownership level in each instance. He was required by the Williams Act, §13(d) of the Securities Exchange Act, 15 U.S.C. §78m(d), to file with the Securities and Exchange Commission Schedules 13(D) at the time of each passage. Through those reports he needed to inform the Commission and the

3

investing public of his entry into more-than-5%-ownership, of his reasons for doing so, of his source of funding and, through follow-on amendments, of any subsequent changes of more than one percentage point in either direction of such ownership. As compliance would have tipped his hand while he was making his accumulations and affected the market price of shares that he was intent on buying up, he simply did not do so. An uninformed public is an ideally vulnerable public.

    When Avalon Holdings filed its initial complaint in its suit it included allegations of non-compliance with §13(d). Mr. Gentile then felt compelled to file a Schedule 13(D) for Avalon Holdings and, shortly thereafter, without further compulsion, one for New Concept. As to the need to state the reason for his accumulations Mr. Gentile caused the filings simply to lie. According to the filings his purpose was to gain control of the management of each of Avalon Holdings and of New Concept, a practical impossibility because, in Avalon Holdings' case, of a two-class capitalization with structured voting that made existing management unchallengeable and in New Concept's case because of majority control by a single shareholder.

    The Schedules 13Ds for both Avalon Holdings and New Concept stated the source of funds for these purported intended takeovers to be working capital. This much was true. But when, later in the litigation, this accurate admission proved to be an admission against interest, the story changed, and purchases and sales became transactions for customer accounts of Mintbroker in which Mr. Gentile claimed to lack all pecuniary interest. Perjury or not, the revised story was unproven after months of preparation for a two-day inquest with so-called expert witnesses testifying to everything except the identity of those pecuniary interest holders benefiting from the short-swing trading. To the contrary, Plaintiffs demonstrated on summary judgment that th trading was executed in a proprietary account controlled exclusively by Mr. Gentile at Interactive Brokers.

4

The frivolity of having paid-so-called-experts testify to the existence of beneficial owners other than Mr. Gentile without ever identifying by name and account who those beneficial owners might be did not find favor with Magistrate Judge Lehrburger. No names. No identification of specific and discrete accounts. No evidence of the crediting of profits to those accounts. No evidence of payment of profits to the purported unidentified owners of the unidentified accounts. But more than the usual level of arrogance and condescension of the experts, one of them testified to forming his opinions without ever having examined a single account.

The whole charade was played out without affecting the Magistrate Judge's recommendations as intended.

C. **The Award of Prejudgment Interest Is in No Way Dependent on a Showing of Access to Inside Information or of Its Use, Nor on a Showing of Financial Injury Beyond Deprivation of The Use of Judgment Monies Due.**

At page 5 of the Opposition, Mr. Gentile raises three arguments wholly unmoored from the provisions of the statute:

(i)   The need for Plaintiffs to make a showing of financial injury;

(ii)  The need for Plaintiffs to contend that Mr. Gentile possessed, used or even had access to inside information; and

(iii) The need for Plaintiffs to plead that Mr. Gentile utilized his share ownership to influence corporate decisions.

Plaintiffs respond with two observations:

*First and foremost*, liability has been found and is the law of the case. Mr. Gentile is not at liberty to revive and reframe the case whenever during its course it goes badly for him. Article III standing is conferred upon an issuer of registered securities as beneficiary—as *cestui que trust*—of a fiduciary relationship with a more-than-10% beneficial owner in which the beneficial owner is obligated to refrain from short-swing trading and is obligated to disgorge to

the issuer any profits he may make through a violation of that breach of trust. The injury to the issuer is a betrayal of a fiduciary obligation, plain and simple, and the measure of compensation is fixed by the words of the statute which have been extensively glossed by the cases. The short-swing profits belong to the principal, the issuer, from the moment of realization and their withholding is a conversion by the insider of money belonging to the issuer.

*Second*, none of Mr. Gentile's arguments for things not pleaded asserts any element of a cause of action needed to establish any aspect of liability or damages. Plaintiffs have not pled these claims nor proved them because they are irrelevant to the outcome of any aspect of the case. If Mr. Gentile were able to cite a single case or authority to the contrary the time to have done so was while composing his opposition. Had he thought of them earlier he undoubtedly would have employed them in yet more dilatory argumentation. His briefing on the motion is closed for which we are grateful.

### D. The Defense Was Conducted as a Bad Faith Exercise of Delay and Mendacity.

If judgment were to enter immediately on the close of briefing, however improbable, this case will have been pending for a bit short of six years. Liability was found as a judgment on the pleadings early on.

The remainder of the time expended on the case has been devoted to determining damages on a reference to Magistrate Judge Lehrburger and to disposing of a Constitutional argument of lack of Article III standing. During that time the theory of the defense has been reborn and reshaped as a lack of pecuniary interest in the pleaded transactions in the face of prior Schedule 13D admissions that the transactions—tens of thousands of them—were undertaken in both cases as purported takeover attempts by Mintbroker on behalf of Mr. Gentile and funded by the working capital of Mr. Gentile's *alter ego*. When trading records were requested in the ordinary course of

discovery, their existence was denied. When Plaintiffs' counsel sought a discovery conference, Mr. Gentile's counsel represented in open Court and on the record that the requested records did not exist and never had existed.

Plaintiffs' counsel protested then and protests now that such a representation defied the laws of the universe. Yet when, notwithstanding this blatant stonewalling falsity, summary judgments of liability were rendered in Plaintiffs' favor and the matter referred to Magistrate Judge Lehrburger for a computation of damages, purported customer records were "newly" discovered. Mr. Gentile adopted the simple expedient of asking the former custodian of those records whether he had access to those records. It is a wonder Mr. Gentile had not thought to do so earlier. The miraculous exhumation of customer records led to Mr. Gentile's hiring of so-called expert witnesses whose testimonies in writing, at deposition and in open Court were found by Magistrate Judge Lehrburger to be unreliable and inadmissible.

The conduct of this case the past few years has been a game of make-believe at a sandbox level of sophistication—blatant denial, and let the Plaintiffs prove otherwise. Magistrate Judge Lehrburger's Report is filled with examples of defense insults to the court's intelligence. *Delay, delay* and *delay* have been the Defendant's operative principles. Little regard for candor, manifest observable fact or common sense has been typical of the defense' conduct.

The running up of costs has been the heart of the defense strategy. Mr. Gentile's first team of attorneys, 10 in number in each case, have all withdrawn their appearances at the five-year mark. The next team of attorneys, 3 in number in each case so far, have come onto the field. The number of individual docket entries now stands at 279 in the Avalon case and 263 in the New Concept case. Might the intent possibly have been to win by overwhelming Plaintiffs'

pocketbooks? By attrition and muscle? Surely the equities stand in favor of a fair, reasonable, and adequate rate of prejudgment interest.

## POINT II.

### THE PRE-JUDGMENT INTEREST RATES PROPOSED BY THE PLAINTIFFS AND THE METHOD FOR ARRIVING AT THEM ARE SUPPORTED BY PRECEDENT AND ARE REASONABLE APPEALS TO THE COURT'S DISCRETION

The method for arriving at a prejudgment interest rate—the use of the rate the federal government requires for unpaid taxes—is the one used by the Securities and Exchange Commission when it prevails in enforcement actions under the Exchange Act, *SEC v. First Jersey Secs., Inc.,* 101 F.3d 1450, 1476 (2d Cir. 1996); *see also* SEC Rule 17 C.F.R. §201.600 (2008) (providing for prejudgment interest at federal tax deficiency rates); one that has been approved by the Second Circuit in an ERISA suit for disability benefits, *Jones v. UNUM Life Ins. Co. of America,* 223 F. 3d 130, 139 (2d. Cir. 2000); and one discussed at length and applied in *Roth v. Jennings*, No. 03-CV-7760-DAB, 2009 WL 1440670 (S.D.N.Y. May 21, 2009), as reviewed in Plaintiffs' Application.

Mr. Gentile suggests that the Plaintiffs are presuming to place themselves in the position of the United States Government. He misapprehends the reality.

In determining interest rates to be paid it is normal to look to the credit worthiness of the debtor, not of the creditor. Mr. Gentile's creditworthiness as debtor, in the eyes of the Securities Commission of the Bahamas, which shuttered his Bahamian brokerage, Mintbroker, to protect customers and the investing public, or of the SEC of the United States, which has long-running enforcement proceeding against him in the District of Florida, or of the United States Department of Justice and the F.B.I. which had long-running criminal proceedings outstanding against him in the Third Circuit and in the District of New Jersey (concluded on statute of

limitations grounds), or of the Southern District of New York, which is in the process of entering Judgment against him in these pending cases—might be a bit low.

To adopt the rate of prejudgment interest applied by the SEC in cases enforcing a statute against a form of insider trading which can only be enforced privately is to accord him concessionary treatment to which his reputation for probity does not entitle him. Mr. Gentile doth protest too much.

## POINT III.

### COMPOUNDING OF PRE-JUDGMENT INTEREST IS FAIR, REASONABLE AND WELL PRECEDENTED

Prejudgment interest is intended to serve two functions:

1. Compensation to the judgment creditor for his deprivation of the use of money from the time of maturation of his claim to the time of its award; and

2. Deprivation of the judgment debtor of unjust enrichment from retention of Plaintiffs' monies over the same period.

In the Second Circuit the award of prejudgment interest is discretionary in the trial court both as to right and to amount. The award here has been already made so entitlement is no longer an issue. The appropriate amount has been proposed by Plaintiffs in their main Brief. It includes quarterly compounding. Mr. Gentile disputes the propriety of such compounding over the nearly six years he has managed to ward off entry of a money award.

In *Roth v. Jennings,* which Plaintiffs follow, interest was compounded quarterly:

"The Court has calculated interest using the 'tax underpayment rate' published by the IRS on a quarterly basis, taking … the first day following Defendant's last relevant transaction as a starting point. *See* 26 C.F.R. §201.6621 (2008) (authorizing the IRS to set adjusted interest rates for tax underpayment. Rev. Rul. 2008-47, 2008–39 (I.R.B. 760) (2008) (providing the current and historical rates since 1975. Compounding interest quarterly pursuant to the SEC approach set forth in 17 C.F.R. §201.600(b), Defendant owes $1,590,140.81 in prejudgment interest as of October 15, 2008, the date of this Report and Recommendation. In addition, based on the current interest rate of 6%, *see* Rev. Rul. 2008-47, Defendant

may be charged $957.56 in accruing interest for each additional day until judgment is entered." *Roth v. Jennings*, 2009 WL 1440670, at *8.

The Second Circuit has suggested that compounding is usually appropriate. Otherwise, the defendant is effectively provided with the benefit if an "interest-free-loan," *Saulpaugh v. Monroe Cty. Hosp.,* 4 F.3d 134, 145 (2d Cir. 1993) (finding the district court's failure to apply a compound rate of pre-judgment interest constituted an abuse of discretion in connection with an award of back-pay and remanding for the district court to "make the determination in the first instance"). As with all aspects of prejudgment interest the periodicity of compounding is discretionary with the trial Court.

Courts have exercised their discretion to compound prejudgment interest in a variety of ways including daily, quarterly, and annually, or to find that it is not warranted. *See Gordon v. Site 16/17 Dev., LLC,* No. 11 Civ. 0427 (RMB), 2011 WL 3251520, at ** 3-4 & n.8 (S.D.N.Y. July 28, 2011) (collecting cases). Plaintiffs have adopted the district court's choice of quarterly compounding in *Roth v. Jennings,* and SEC enforcement practice. The defense has offered no reasoned alternative.

## POINT IV.

**PLAINTIFFS HAVE WAIVED THE COURT'S AWARD OF ATTORNEYS' FEES, NO PAYMENT HAS BEEN OR WILL BE MADE IN RESPECT OF THEM, AND THEIR AWARD SHOULD HAVE NO BEARING ON THE RATE OF PRE-JUDGMENT INTEREST AND ITS MANNER OF COMPOUNDING**

The Plaintiffs, although awarded attorneys' fees in indeterminate amounts, have waived them. The reason for doing so is simply to bring district court proceedings to a prompt end and not to open the door to desultory squabbling and additional delay. Plaintiffs' counsel have agreed to contractual retainers, and they and the Plaintiffs intend to abide by them.

How a waiver of payment can entitle Mr. Gentile as the beneficiary of that waiver to an enhanced claim to a lower prejudgment interest rate, as suggested at page 1 of Mr. Gentile's Opposition, defies logic and common sense. But that is hardly unusual in this case.

Plaintiffs demur and appeal to the Court to exercise its broad discretion to fix prejudgment interest in the manner and in the amounts requested.

Dated:   Southampton, New York
         March 14, 2024

                                        Respectfully Submitted,

                                        */s/ David Lopez*

                                        _____
                                        David Lopez, Esq.
                                        Miriam Tauber

                                        *Attorneys for Plaintiffs*