

May 2, 2025

**By ECF**

The Honorable Robert W. Lehrburger
United States Magistrate Judge
United States District Court
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

     **Re:**    *Avalon Holdings Corp. v. Gentile*, No. 18-cv-7291 (DLC) (RJL); *New Concept Energy, Inc. v. Gentile*, No. 18-cv-8896 (DLC) (RJL)

Dear Judge Lehrburger:

     Non-party Ford O'Brien Landy LLP ("FOBL" or the "Firm") respectfully submits this reply to the opposition letter brief filed by Plaintiffs' counsel on April 25, 2025 [ECF 371][ECF 339] (hereinafter "Opp. Br."). None of the arguments raised or authorities cited in Plaintiffs' submission compels the intrusive form of discovery that the Plaintiffs seek, namely a full-court press inquiry into Mr. Gentile's communications with his *former* lawyers in these matters. The law, in fact, points the other way. Not only is the targeting of legal counsel improper at this preliminary stage of the judgment enforcement process, but in the unique circumstances of this case it infringes on the attorney-client privilege.

     Buried in the middle of the Plaintiffs' five-page letter brief is the bold, but entirely unfounded, assertion that "Ford has refused to provide any information, or even a description of information within the Firm's possession, about Gentile's assets or whereabouts in response to Plaintiffs' Subpoenas." Opp. Br., at 2. This statement is readily refuted. In its responses to the information subpoenas issued in these cases, FOBL has answered each and every interrogatory but one (Interrogatory No. 21). For ease of reference, FOBL sets forth here the information it has disclosed regarding Mr. Gentile's means of communication and whereabouts.

     1.  Response to Interrogatory No. 9: "the last known email address is guygentile@me.com, ggentile@swissamericas.com, guy@stockusainc.com." In its letter brief of April 17, 2025, the Firm supplemented this response, stating that "[t]he last known address of Mr. Gentile is an address in San Juan, Puerto Rico, that is listed on various documents filed in the Miami SEC action . . . ."

     2.  Responses to Interrogatory Nos. 17 and 18: FOBL Partner Matthew Ford has communicated with Mr. Gentile in the past six months through a "Messaging Application which permits phone calls. The Firm notes that the messaging app that is used is not tied to a phone number."

The Honorable Robert W. Lehrburger
May 2, 2025
Page 2

     3.  <u>Response to Interrogatory No. 22</u>:  Since March 20, 2024, the Firm has received no payments for fees incurred in representing Mr. Gentile in any matter.

     Thus, this dispute concerns only one very narrow category of information, as requested in Interrogatory No. 21, namely payments and source of payments received for fees incurred by Mr. Gentile *in these cases* from 2018 to March 20, 2024 (by now over a year ago).  Contrary to Plaintiffs' contention on page 2 of its opposition, FOBL has made clear at oral argument and in its written submission that it objects to disclosure of this information on two independent grounds:  (i) lack of relevance; and (ii) the attorney-client privilege.  Plaintiffs aver that FOBL has not properly invoked the privilege, but this briefing would not have been warranted were it not for such a clearly articulated assertion.

     With respect to the privilege objection, Plaintiffs' submission is notable as much for what it says as for what it does not say.  Plaintiffs assiduously avoid any mention of the longstanding doctrine of New York law which holds that *former counsel* for a judgment debtor has no obligation to disclose the whereabouts of its former client.[1]  The New York authority that Plaintiffs cite purportedly to refute this point is completely irrelevant.  Thus *Argon Elec. Corp. v. Gomez*, 55 Misc.3d 140(A) (N.Y. App. Term 2017) addressed a subpoena to a former employer of the judgment debtor, not an attorney, let alone a former attorney.  The case, therefore, says nothing about the scope of the attorney-client privilege in the current context.

     Given the application of the former-attorney/post-judgment rule, which Plaintiffs do not question, Plaintiffs entirely miss the import of FOBL's argument about disclosure of "fee information."  FOBL does not dispute that "fee information," however it may be defined in each

---

[1] The Plaintiffs quibble over whether the federal law of privilege as opposed to the New York law of privilege governs here, while at the same time conceding that "there is no conflict with New York law on issues relevant to this Motion."  Opp. Br., at 2; *see also Copalcor Mfg. (PTY) Ltd. v. Meteor Indus. Inc.*, 1988 WL 52194, at *2 n.2 (E.D.N.Y. May 16, 1988) ("New York law on the attorney-client privilege is virtually the same as the federal law on the subject").  While this case arose under the Court's federal question jurisdiction and thus was governed by the federal common law of privilege during the course of the litigation, this matter is now in the judgment enforcement phase, and Plaintiffs have chosen to pursue discovery under New York law, NY CPLR 5222.  The CPLR provides that "the court may at any time, on its own initiative or the motion of any interested person . . . make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."  NY CPLR 5240.  Arguably, then, consistent with Federal Rule of Evidence 501, such statute establishes a "defense for which state law supplies the rule of decision."  F.R. Evid. 501.  *See Acmetal USA LLC v. PTGi Int'l Carrier Servs. Inc.*, 2024 WL 4467174, at *5 (S.D.N.Y. Oct. 10, 2024) (recognizing CPLR 5240 as "an omnibus section empowering the court to exercise broad powers over the use of enforcement procedures," quoting *Paz v. Long Island R.R.*, 661 N.Y.S.2d 20, 22 (N.Y. App. Div. 1997)); *but see contra Copalcor*, *supra*, at *2 n.2 (finding federal privilege law governs information subpoena issued to enforce judgment).

The Honorable Robert W. Lehrburger
May 2, 2025
Page 3

particular case, is often treated as non-privileged and therefore discoverable.  But when disclosure of such information – here, principally, the source and methods of payment -- would tend to reveal confidential information about a *former client*'s whereabouts, which is otherwise protected from disclosure, it must remain protected.  The Second Circuit has recognized the "confidential communication exception" whereby access to information is barred where "disclosure would in substance be a disclosure of the confidential communication." *Vingelli v. U.S. D.E.A.*, 992 F.2d 449, 452-53 (2d Cir. 1993).  Thus in *In re Shargel*, the Second Circuit addressed whether defense counsel was obliged to produce "records of all fee arrangements or property transfers from, to, or on behalf of ten named individuals, six of whom invoke the attorney-client privilege."  *In re Shargel*, 742 F.2d 61, 61 (2d Cir. 1984).  In concluding that the fee information was discoverable, the Court acknowledged that in those instances where disclosure might reveal information about otherwise privileged subject matter, such as "concerted activity among several clients," then such information could rightly be withheld.  *Id.* at 64.  "[I]f the documents in question suggest that a group meeting took place or otherwise contain information protected by the privilege, they may be submitted *in camera* to the district court for appropriate redaction."  *Id.  See also Elliott Assocs., L.P. v. Republic of Peru*, 176 F.R.D. 93, 97-98 (S.D.N.Y. 1997) (observing that "'general' questions may be pieced together to gain more specific knowledge about the legal advice sought or rendered") (applying New York law); *Eizenstein & Co. Inc. v. Global Trading LLC*, 71 Misc.3d 1216(A), at *2 (N.Y. Sup. Ct. 2021) ("materials that are not themselves attorney-client privileged communications . . . may still be shielded by the privilege because their disclosure will provide the requesting party with information tending to reveal the nature or substance of protected communications or legal strategy").

The Plaintiffs attempt to defeat this legitimate assertion of privilege by raising the specter of the "crime-fraud exception."  But Plaintiffs' frivolous and unsupported allegations in this regard must be rejected.  The case that Plaintiffs cite makes clear that "[a] party seeking to invoke the crime-fraud exception must demonstrate that there is factual basis to show probable cause suggesting that a fraud or crime has been committed *and* that the communications in question were in furtherance of the fraud or crime."  *Knopf v. Sanford*, 65 Misc.3d 463, 514 (N.Y. Sup. Ct. 2019) (emphasis added), *quoting United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997).  Plaintiffs' submission does not even come close to meeting this probable cause threshold of demonstrating a nexus between a crime and the attorney-client communications at issue here. *See In re Omnicom Group Inc. Sec. Litig*., 233 F.R.D. 400, 405-08 (S.D.N.Y. 2006) (applying preponderance of evidence standard of proof and noting that "court findings that would deprive the client of [attorney-client] protection should be based on an adequate record and bear some assurance of reliability").

Suffice it to say, FOBL's current contacts with Mr. Gentile have nothing to do with the ongoing judgment enforcement proceedings before this Court, and are based solely on the Firm's representation of Mr. Gentile in an entirely distinct matter before the SEC.  Unless the Plaintiffs can come forward with substantial evidence demonstrating that Mr. Gentile has intentionally leveraged his existing, independent, and entirely legitimate relationship with FOBL in the SEC

The Honorable Robert W. Lehrburger
May 2, 2025
Page 4

matter in order to avoid his obligations to this Court with respect to judgment enforcement, Plaintiffs' argument must fail. *See United v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351 (2014) ("With strong emphasis on intent, the crime-fraud exception applies only when there is probable cause to believe that the communications with counsel were *intended* in some way *to facilitate or conceal the criminal activity*") (internal quotation marks and citations omitted) (emphasis added); *In re Omnicom Group Inc.*, 233 F.R.D. at 410 (finding that party did not demonstrate "an adequate basis for setting aside the privilege").

Plaintiff points to a county court decision from 1982 which held that an attorney was required to disclose the whereabouts of his current client to the grand jury when the client had failed to appear at a pretrial hearing pending his prosecution for crimes of manslaughter and operating a motor vehicle under the influence of alcohol. The grand jury opened an inquiry into an additional crime of bail jumping and subpoenaed the defendant's attorney for information about his whereabouts. In that case the court concluded even if the attorney-client privilege applied to such communications, it had to yield to the equally weighty "public interest in the investigation of a continuing crime." *In the Matter of Grand Jury of the County of Suffolk*, 117 Misc.2d 197, 202 (N.Y. Cnty. Ct. 1982). This case thus has no application here. The policy considerations that the court deemed sufficient to "supersede" the attorney-client privilege arose from circumstances where an individual indicted for manslaughter was at large. The decision by the Pennsylvania Supreme Court cited by Plaintiffs is equally inapposite as it similarly concerned a fugitive client that had failed to appear for his trial on "charges of rape, statutory rape, corrupting the morals of a minor, indecent assault, and indecent exposure," and who was facing an arrest warrant for immigration violations. *Commonwealth v. Maguigan*, 511 Pa. 112 (Pa. 1986). The New Jersey Supreme Court decision is even farther afield, as the court in that case denied application of the attorney-client privilege in light of the fact that the attorney from whom the information was sought had represented the client in negotiating the settlement terms which the fugitive client was intentionally flouting. *Fellerman v. Bradley*, 99 N.J. 493 (N.J. 1985). Yet another case cited, *G-Fours, Inc. v. Miele*, 496 F.2d 809 (2d Cir. 1974), addressed the crime-fraud exception only in the alternative and in the context of an assertion of a spousal privilege.[2]

No similarly compelling public policy factors are at stake here, and as argued in FOBL's opening letter brief, courts in this District and in New York have declined to recognize the interests of litigants seeking to enforce civil money judgments as rising to the level of compelling public policy interests that warrant piercing the privilege. *See, e.g., Elliott Assocs., L.P.*, 176 F.R.D. 93 (action for money damages in debt default case; "[i]n the absence of a

---

[2] The other out-of-jurisdiction cases cited by the Plaintiffs are no more persuasive. In *Williamson v. Recovery Limited Partnership*, 2016 WL 6211328, at *4 (S.D. Ohio Oct. 25, 2016), the court acknowledged that the crime-fraud exception was "a possible ground" warranting disclosure but did not reach the issue. *Estate of Page v. Slagh*, 2007 WL 1385957 (W.D. Mich. May 8, 2007), addressed, under Michigan law, whether fraudulent transfers triggered the crime-fraud exception.

The Honorable Robert W. Lehrburger
May 2, 2025
Page 5

substantial need to obtain this information . . . such as was shown in *Jacqueline F.*, the privilege does apply."); *Household Bank, FSB v. Ross*, 148 Misc.2d 841, 843 (N.Y. Sup. Ct. 1990) ("The relief sought, judgment of foreclosure, does not concern the welfare of a child and is far more akin to those cases involving the satisfaction of judgments in which the privilege was sustained"; citing *Boller v. Barulich*, 147 Misc.2d 502 (N.Y. Civ. Ct. 1990)); *Potamkin Cadillac Corp. v. Karmgard*, 100 Misc.2d 627, 633 (N.Y. Civ. Ct. 1979) (upholding attorney-client privilege in judgment enforcement case, finding that "[t]he competing social values of which Justice Cardozo wrote in Clark and with which the Court of Appeals was concerned in Jacqueline F. are absent here").

Plaintiff argues that FOBL bears the burden of preparing a privilege log "detailing the Firms communications with Gentile since the entry of the Judgments, which concerned either: (i) the removal of assets from the United States; or (ii) any payments to the Firm made at Gentile's direction or on his behalf." Opp. Br., at 5. No such privilege log could be made, however, since, as explained in FOBL's submission, FOBL has received no payments of any kind from Mr. Gentile since the date of the Judgment which was March 20, 2024. The need, if any, for a privilege log regarding any earlier payments received from Mr. Gentile will only become pertinent once the Court rules on the objections addressed herein.[3] Moreover, the Firm has already made clear in its Responses that the subject matter of its communications with Mr. Gentile have not touched on "removal of assets." *See* FOBL Objections and Responses to Plaintiffs' Supplemental Questionnaire, Interrogatory No. 19 [ECF 359-2] (answering "No" to query whether Firm has "communicated with Guy Gentile at any time wherein it was raised by any party the possibility of his removal of his assets and/or his person and/or his family from the United States of America?").

The District Court has "broad discretion over the decision to quash a subpoena." *Bouchard Trans. Co., Inc. v. Assoc. Elec. & Gas Ins. Servs. Ltd.*, 2015 WL 6741852, at *2 (S.D.N.Y. Nov. 4, 2015); *In Matter of Application of Frates*, 1985 WL 2752, at *1 (S.D.N.Y.

---

[3] Plaintiffs sought to submit a supplemental brief in support of their opposition, but as it was not authorized it should be disregarded. That said, the cases cited there, once again, bear little relevance to the issues at hand. In *Benthos Master Fund, Ltd. v. Etra*, 2023 WL 4350594 (S.D.N.Y. July 5, 2023), the court addressed the act-of-production doctrine not the attorney-client privilege. And in *Pala Assets Holding Ltd. v. Rolta*, LLC, 210 A.D.3d 560, 562 (N.Y. App. Div. 1st Dep't 2022), the issue was waiver of the attorney-client privilege not the crime-fraud exception. And far from granting expansive discovery in that case, the court found the "time frame and general subject matter of the ordered disclosure . . . impermissibly broad." Finally, to the extent that it ever becomes an issue in this case, Plaintiffs have no authority to designate who should sit as the Rule 30(b)(6) witness for the Firm. It is the responsibility of "the named organization" to "designate one or more officers . . . ." Fed. R. Civ. P. 30(b)(6); *cf. Barone v. Great Atlantic & Pacific Tea Co., Inc.*, 260 A.D.2d 417, 417-18 (N.Y. App. Div. 2d Dep't 1999) ("It is well established that a corporation has the right in the first instance to determine which of its representatives will appear for an examination before trial.").

The Honorable Robert W. Lehrburger
May 2, 2025
Page 6


Sep. 25, 1985). In its opening brief, FOBL quoted Your Honor's own decision in *Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC*, for the principle that judgment creditors do not have "unfettered license to go on a 'fishing expedition,' subpoenaing non-parties just to see what might turn up." 2021 WL 621226, at *3 (S.D.N.Y. Feb. 17, 2021). Plaintiffs counter that such "fishing expeditions" are indeed allowed, but the authority they cite for this proposition says no such thing. *SEC v. Verdiramo*, 2013 WL 5882918 (S.D.N.Y. Oct. 29, 2013).

Finally, as requested in FOBL's opening brief, the Plaintiffs have made no representation to this Court that they have exhausted all reasonable avenues for investigating their claim before turning to Mr. Gentile's former attorneys for discovery. New York law has a longstanding tradition of protecting former lawyers from disclosing information tending to reveal the whereabouts of their clients in the context of a judgment enforcement proceeding. The mere reference to the crime-fraud exception without a probable cause showing is insufficient to pierce the privilege.

For all these reasons, and those already set forth in FOBL's initial papers, the Firm respectfully requests that the Court issue a protective order barring the Plaintiffs' from obtaining any further information in response to Interrogatory No. 21 to which the Firm has objected.

Respectfully submitted,

FORD O'BRIEN LANDY LLP

By: */s/ Adam Ford*
Adam Ford
275 Madison Avenue, 24th Floor
New York, NY 10016