# MIRIAM TAUBER LAW

885 Park Ave. #2A • New York NY 10075
MiriamTauberLaw@gmail.com • (323) 790-4881

June 2, 2025

**Via ECF**
Hon. Robert W. Lehrburger, U.S.M.J. (S.D.N.Y.)

*Avalon Holdings Corp. v. Gentile*, 18-cv-7921
*New Concept Energy, Inc. v. Gentile*, 18-cv-8896

Re:   **Motion to Compel Ford's Production of Documents, Privilege Log, and Deposition**

Your Honor:

Plaintiffs write in response to the letter filed by Ford O'Brien LLP, which purports to respond to Plaintiffs' subpoenas as required by the Court's order overruling Ford's privilege objections and denying the Firm's motion for a protective order.

An unredacted version of the letter filed by Ford was sent to Plaintiffs' counsel by email. Attached to this motion is a version of that letter redacting the digits of financial account numbers specified by F.R.C.P. 5.2(a)(4) at Ford's request (though the Rule technically applies only to financial accounts held by *individuals*) and otherwise reflecting the full contents of Ford's letter.

Ford fails to comply with the Court's Order and instructions. The Firm's compliance should be ordered as follows:

1. **Ford is required to produce copies of "the checks or any receipts of confirmations of any payments" on behalf of Gentile in response to Plaintiffs' Request No. 21.**

The Court's Order required Ford to respond to Plaintiffs' Request No. 21, which asks whether the Firm has ever been paid for representing Gentile in these cases; and specifically asks for: (a) the dates of any payments; (b) the banks from which payments were withdrawn; and (c) ***copies of any receipts or payment confirmations.*** (Order p.3.)

Instead of producing copies of documents evidencing payment in response to Plaintiffs' Request as directed by the Court, Ford's letter lists a total of 3 payment line items, which presumably reflects text copied from documents, e.g., account statements and/or payment confirmations, which included those line items. In response to correspondence from Plaintiffs' counsel in advance of filing this motion, Ford also provided the attached supplemental list of payment dates, which reflects ***a dozen instances of payments to the Firm***, *whereas only 3 payment line items were included in the Firm's letter response.*

Plaintiffs ask the Court to compel Ford to produce the *copies* of account statements and/or payment confirmations in responding to Request No. 21 as the Court ordered. Plaintiffs expect the payment documents to reflect identifying information about the payments *on each date* that may assist Plaintiffs' further enforcement efforts—including the amount of each payment, the financial institutions and account numbers involved, and the unique transaction reference number (or "trn") associated with each payment. (Ford can redact information appearing on statements that pertain to payments for matters unrelated to Gentile).

### 2. Ford is required to produce a privilege log as to any communications with <u>Gentile regarding payments to the Firm, as the Court directed at the conference.</u>

Ford asserts that because the Firm has provided the 3 payment line items (as supplemented by the list of 12 payment dates), no additional privilege log is required. Ford refuses to comply with the Court's Order, which required the Firm to produce **both**: (i) the payment information in response to Request No. 21, within 7 days of the Order; **and** (ii) the privilege log as to the Firm's communications with Gentile regarding payment, as the Court directed at the conference held on Ford's motion, within 14 days of the Order. (Order p.11.)

Plaintiffs note that Request No. 21 (related to payments to the Firm for these cases prior to entry of judgment on March 20, 2024, as discussed above) was the only outstanding Request addressed by the Court's Order because *Plaintiffs' additional Requests were addressed by the Court at the conference held on Ford's motion on April 3, 2025.*

Specifically, at the outset of the conference, the Court addressed Plaintiffs' request that the Firm produce a privilege log with respect to the Firm's assertions of privilege in response to **Request No. 9** (regarding the Firm's communications with Gentile), as supplemented by **Request No. 17** (communications within the last 6 months**), Request No. 18** (means of communication), and **Request No. 19** (regarding Gentile's removal of assets from the United States).

Ford's objection to the scope of the log requested was resolved by the Court's instruction that the Firm **produce a privilege log as to "all documents or communications that you are asserting privilege over related to flight, liquidation or payment**." *See* Conf. Tr., *Avalon* Dkt. 367 p.14 (attached for reference):

"THE COURT: To the extent that there are any **documents or communications** that you are asserting privilege over **related to flight, liquidation or payment,** will you provide a privilege log in that respect?

MR A. FORD: With the understanding and representations that **there will not be any response with respect to the first two. And with respect to payment, we can provide a privilege log for that."**

THE COURT: Okay. Great.

The Firm has failed to produce the copies of payment documents and refuses to produce the privilege log required by the Court's Order. The Firm's compliance should be compelled.

The privilege log is expected to identify the "messaging service" used by the Firm to communicate with Gentile (and any usernames or information used to contact Gentile on that service), as described in Ford's response to Request No. 18, which was also discussed at length at the conference. The Court expressly overruled Ford's objection that disclosure of that information might lead to the identification of Gentile's whereabouts. (*See* Order p.4: "Gentile's whereabouts is plainly relevant to Plaintiffs' ability to locate Gentile and enforce the judgment against him. Ford's assertion of privilege also missed the mark").

The privilege log will also assist in evaluating the potential application of the crime fraud exception to any communications intended to frustrate enforcement of the Court's judgment and orders, including the outstanding bench warrant for Gentile's arrest. (*See* Order p.11 n.4.)

**Plaintiffs' Request for a Deposition**

The Order states that Plaintiffs' Request No. 21 (pertaining to payment on these cases, prior to entry of judgment in these cases, on March 20, 2024) was the only outstanding Request *following the conference*, based on Ford's representation that the Firm had not been paid on any Gentile-related matter since March 20, 2024. Critically, this representation was not made in the Firm's response to Plaintiffs' Subpoenas.

As the Order notes, Plaintiffs' Request No. 22 asked for information about payments to the Firm on any matter involving Gentile since entry of judgment in these cases. The Firm's only sworn Response to Request No. 22 was a privilege objection, which the Court overruled. Ford's denial that any payments were made to the Firm on Gentile's behalf since March 20, 2024, which was relied on by the Court in limiting the disclosure required by the Order, was in the form of an *unsworn statement* made in the reply letter-brief filed in support of the Firm's motion for a protective order, which the Court denied. (*See* Order p.3 n.2.)

Plaintiffs find this unsworn denial to be not credible, given that regular payments were apparently made to the Firm (as reflected in the list of payment dates provided by the Firm); and further considering that the Firm, and Matthew Ford in particular, served as lead counsel in the jury trial held in the SEC's case against Gentile in the District of Florida in the months following entry of judgment in these cases.

Plaintiffs also find it dubious that the Ford firm and partners serving as Gentile's counsel during that jury trial were supposedly able to communicate with their client only by the secret messaging service described in the Firm's response to Request No. 18, and that the Firm had no other means of finding or reaching him.

Plaintiffs renew their request for a deposition of Matthew Ford individually and as the Firm's Rule 30(b)(6) representative to ask these questions and others that the Firm has evaded answering in full.

Plaintiffs' counsel corresponded with Adam Ford in advance of filing this motion and were advised that Ford's position is that no further disclosure is required.

Respectfully submitted,

*/s/ Miriam Tauber*_____
Miriam Tauber
David Lopez
*Attorneys for Plaintiffs/Judgment Creditors*

3