**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
AVALON HOLDINGS CORP.,            :
                                    :
               *Plaintiff,*      :
                                      :
       – against –      :     Case No. 18-cv-7291 (DLC) (RWL)
                                    :
GUY GENTILE, et al.,             :
                                    :
               *Defendants.*   :
-----------------------------------------------------------x
NEW CONCEPT ENERGY, INC.,    :
                                    :
               *Plaintiff,*      :
                                    :
       – against –      :     Case No. 18-cv-8896 (DLC) (RWL)
                                    :
GUY GENTILE, et al.,             :
                                    :
               *Defendants.*   :
-----------------------------------------------------------x

<br>

## <u>MEMORANDUM OF LAW IN SUPPORT OF<br>FORD O'BRIEN LANDY LLP'S MOTION TO IMPOSE SANCTIONS</u>

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

    A. Lopez and Tauber Feign Difficulty Serving Gentile ...........................................3

    B. Lopez Lies About Publishing Subpoenas and File A False Affidavit of Alternative
    Service...................................................................................................................7

    C. Plaintiff and Lopez Use the Fraudulent Obtained Civil Arrest Warrant to Threaten Others
    Including Ford O'Brien Landy ..............................................................................9

    D. Ford O'Brien Landy Discovers Lopez Lied in the Affirmation of Alternative Service by
    Lopez Refuse to Withdraw it or Request Vacatur of the Civil Arrest Warrant and Makes
    Several Additional False Statements to this Court and the Second Circuit Court of
    Appeals ................................................................................................................10

ARGUMENT ....................................................................................................................13

   I.  The Court Should Sanction Lopez and Plaintiff Under its Inherent Authority and under
     28 U.S.C. § 1972 (Or alternatively, Rule 11 or Rule 45) ...................................13

   II.  The Sanction Should Include Compensation for all Work Ford O'Brien Landy
      Reasonably Performed in Response to Lopez's and Plaintiff's Misconduct ....................16

   III.  In the Alternative, Were the Court to Not Grant the Motion on the Papers Alone, and
       Evidentiary Hearing is Appropriate ........................................................................17

CONCLUSION...................................................................................................................18

TABLE OF AUTHORITIES

Page(s)

Cases

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................. 14, 18
*DLC Mgmt. Corp. v. Town of Hyde Park*,
  163 F.3d 124 (2d Cir. 1998) ........................................................................ 14
*Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co. Inc.*,
  714 F. Supp. 3d 294 (S.D.N.Y. 2024) .............................................................. 17
*Kaufman v. Equifax Info. Servs., LLC*,
  2019 WL 3997461 (E.D.N.Y. Aug. 22, 2019) ............................................... 14, 17
*KGK Jewelry LLC v. ESDNetwork*,
  2015 WL 899016 (S.D.N.Y. Mar. 3, 2015) ......................................................... 17
*Lang v. Walmart*, Inc.,
  2025 WL 638589 (E.D.N.Y. Feb. 27, 2025) ......................................................... 7
*Luscier v. Risinger Bros. Transfer, Inc.*,
  2015 WL 5638063 (S.D.N.Y. Sept. 17, 2015) .................................................... 13
*Matter of Friedman*,
  196 A.D.2d 280 (1994) ................................................................................ 14
*Matter of Ksenzowski*,
  56 B.R. 819 (Bankr. E.D.N.Y. 1985) .............................................................. 14
*Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*,
  196 F.R.D. 220 (W.D.N.Y. 2000) .................................................................. 14
*Rankin v. City of Niagara Falls, Dep't of Pub. Works*,
  569 F. App'x 25 (2d Cir. 2014) .................................................................... 14
*Rossbach v. Montefiore Med. Ctr.*,
  81 F.4th 124 (2d Cir. 2023) ......................................................................... 18
*Schlaifer Nance & Co. v. Est. of Warhol*,
  194 F.3d 323 (2d Cir. 1999) ........................................................................ 18
*United States v. International Brotherhood of Teamsters*,
  948 F.2d 1338 (2d Cir. 1991) ....................................................................... 14
*United States v. Stein*,
  435 F. Supp. 2d 330 (S.D.N.Y. 2006) ............................................................. 13

Statutes

28 U.S.C. § 1927 ................................................................................ 13, 14, 15
28 U.S.C. § 1972 ........................................................................................ 1

Rules

New York Rule of Professional Conduct 1.6 ........................................................ 16
New York Rule of Professional Conduct 3.3(a)(1) ................................................ 13
New York Rule of Professional Conduct 3.4(e) .................................................... 13

Regulations

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 ........................................................................... 13

Other Authorities

S-2202 ............................................................................................................................................ 8

Non-Party Ford O'Brien Landy LLP ("Ford O'Brien Landy," the "Firm," or "we") respectfully submits this memorandum of law, in addition to the accompanying Declaration of Adam Ford, (the "Ford Decl."), dated August 14, 2025, with exhibits, in support of Ford O'Brien Landy's motion to impose sanctions (the "Motion") against Plaintiff Avalon Holdings Corp. ("Plaintiff" or "Avalon") and its attorney David Lopez ("Lopez").

## PRELIMINARY STATEMENT

Ford O'Brien Landy files this Motion in response to more than a year of harassment directed at the Firm by Plaintiff, seeking to enforce a judgment against Defendant Guy Gentile ("Gentile"). Plaintiff has used the existence of the civil arrest warrant to harass, threaten, and intimidate the Firm, Gentile's family, and unrelated non-parties. The harassment towards the Firm has included repeated instances of abuse of the subpoena process by improper service of defective subpoenas on the Firm, repeated attempts to infringe on the attorney-client privilege, multiple superfluous motions seeking information about Gentile's whereabouts, and a deposition (that lasted approximately 45 minutes). The Court has wasted considerable resources ruling on dozens of letters and motions premised on the existence of the civil arrest warrant.

Plaintiff, we now know, repeatedly lied to obtain the civil arrest warrant. To be clear, Plaintiff never served any post-judgment subpoena on Gentile through traditional service or through the alternative service under Rule 45 authorized by the Court. Instead, Lopez filed a motion to compel compliance with the never-served subpoenas based on false and misleading statements, and, ultimately, filed a knowingly false affidavit of alternative service in which Lopez falsely attested to compliance with Court authorized alternative service of process of the subpoenas and notice through publication. Lopez has now filed two letters with the Court (with additional false and misleading statements) in which he has admitted that he never served the

1

subpoenas or notice through publication, rendering the statements contained in his sworn affidavit of service false and misleading.

But Lopez's deception has more layers. A review of the record demonstrates that Lopez engaged in a pattern of intentional non-service. That is, Lopez's actions were designed to not serve Gentile so that he could obtain a civil arrest warrant. The record is clear that Lopez intentionally failed to make any attempt at personal service at Gentile's home address in Puerto Rico or while Gentile attended a high-profile trial that lasted approximately five weeks in Miami, Florida (the "Miami Trial"). Lopez knew Gentile's home address in Puerto Rico, which he identified in May 8 and June 4, 2024 filings with this Court, and knew about Gentile's daily attendance (including multi-day appearance on the stand to testify) at the Miami Trial, which ran from late May to early July 2024—the precise time frame during which Lopez and his co-counsel Miriam Tauber ("Tauber") repeatedly represented to the Court they could not locate Gentile.

Lopez could have hired a private investigator to sit outside the Miami federal courthouse to follow Gentile each day after the Miami Trial and then, for example, served him on the weekend. They also could have simply texted, called, or emailed Gentile's lead counsel in the Miami Trial, since they have his personal cell-phone number. No attempt was made at personal service or to contact his Miami Trial counsel to serve Gentile with any subpoena. Instead, Plaintiff sought alternative service through publication, lied about publishing the notice and subpoenas, moved to compel compliance with the subpoenas on false pretenses, and obtained a civil arrest warrant based on a false affidavit of alternative service.

As a result, both the Court as well as the Firm have wasted substantial time and resources dealing with Plaintiff's attempt to enforce the civil arrest warrant by harassing the Firm about

Gentile's whereabouts. Courts have uniformly condemned this sort of conduct, and routinely impose sanctions and disbar attorneys who have engaged in similar conduct, including abusing the Court's subpoena power and filing false affidavits of service. The Firm respectfully requests the Court impose monetary sanctions on Plaintiff and Lopez in a reasonable amount to be determined by the Court based on more than $100,000 in attorney and paralegal time incurred by Ford O'Brien Landy responding to Plaintiff's defective subpoenas and motions all premised on the civil arrest warrant Lopez knew to have been obtained by false pretenses. Ford O'Brien Landy respectfully requests that the Court order the amount of sanctions imposed to be paid directly to the New York Indigent Defense Fund—the Firm does not seek any direct reimbursement.

## **STATEMENT OF FACTS**

### A. **Lopez and Tauber Feign Difficulty Serving Gentile**

Following the final judgment in this case, Plaintiff has sought to engage in post-judgment discovery. Plaintiff, however, has to date still made no good-faith effort to serve Gentile with any subpoena under Rule 45, by traditional service or alternative service. There is no evidence in the record that Gentile has ever seen or received any subpoena from Plaintiff, and no subpoena directed at Gentile has ever been provided to or served on non-party Ford O'Brien Landy by Plaintiff. Having never been served with any subpoena, no basis exists to assume Gentile will not comply with an actual subpoena. The Court may take note that Gentile sat for a deposition prior to the Miami Trial, produced documents in the Miami Action, and testified for multiple days at the Miami Trial, including with regards to his finances). *See* Ex.'s 1-3 (confirming Gentile trial testimony in *Sec. & Exch. Comm'n v. Mintbroker Int'l Ltd.*, Case No. 1:21-cv-21079 (S.D. Fla.), on June 24, 25, and 27, 2024).

3

Lopez engaged in what appears to have been a pattern of intentional non-service. On May 8 and June 4, 2024, his partner, Tauber filed abstracts of judgment with the Court identifying Gentile's then-current address in Puerto Rico, 860 Ashford Ave. San Juan, PR, 00907, although no proof has been submitted to the Court that service was attempted at this address. *See* Ex.'s 4-5. Rather, Lopez and Tauber claim they attempted to serve, but were unable to reach, Gentile, at "*101* Avenida de Diergo, [sic] #2202" in San Juan. Ex. 6. at 2. This address, 101 Avenida de Diego, is a completely different apartment building from the address where Lopez and Tauber initially served the Complaint on Gentile, which was *103* Avenida de Diego #2202, an address that public records reveal Gentile sold in December 2021. *See Departamento de Jusitica: Gobierno de Puerto Rico* (Puerto Rico title search), https://ridpr.pr.gov. Lopez and Tauber have provided no proof of attempted service at the address identified in the abstract of judgment, and any purported attempt at service was intentionally made at the wrong address, a different apartment building than where Gentile had lived—which was discussed at length in a public filing by the SEC in Miami Action. *See* Ex. 7 at 2-3 (*Sec. & Exch. Comm'n v. Mintbroker Int'l Ltd.*, Case No. 1:21-cv-21079 (S.D. Fla.), confirming Gentile's address as 103 Ave. de Diego, #2202 S, San Juan, PR 00911).

Having failed to comply with Rule 45 personal service requirements by purportedly attempting to serve Gentile at the wrong address, Lopez and Tauber emailed a copy of the subpoenas to Gentile's former counsel, Thomas Fleming ("Fleming"), who had already moved to withdraw at the time the subpoenas were emailed and even though Rule 45 does not authorize alternative service by email to one's former counsel. Ex. 8. As represented by Lopez in court filings, the subpoena emailed to Fleming (but never served on Gentile) purported to order Gentile to appear on July 1, 2024 in New York for a deposition (more than a hundred miles from

where he resides and while the Miami Trial was ongoing).  *See* Ex. 9.  Ford O'Brien Landy never received any deposition subpoena directed at Gentile, and no reason exists to believe Gentile ever saw these subpoenas.

As Lopez and Tauber knew, between late May and July 2, 2024, Gentile attended each day of the Miami Trial, all pre-trial and trial related conferences, and testified for three days during the trial (June 24, 25 and 27).  *See* Ex.'s 1-3 (confirming Gentile trial testimony in *Sec. & Exch. Comm'n v. Mintbroker Int'l Ltd.*, Case No. 1:21-cv-21079 (S.D. Fla.), on June 24, 25, and 27, 2024).  Lopez and Tauber made no attempt to serve Gentile or his Miami Trial counsel. Nonetheless, on July 1, 2024, with the Miami Trial ongoing, Lopez and Tauber wrote a letter to the Court claiming they attempted to serve Gentile though his other former counsel, Fleming, on or around May 30 (Ex. 10), notwithstanding that Fleming had moved to withdraw as counsel on May 2.  Ex. 8.  They had misleadingly notified the Court that they could not locate Gentile.  *See, e.g.*, Ex. 11 at 2-3 ("Plaintiffs anticipate that they will encounter . . . resistance in attempting to serve Mr. Gentile[.]").   In these filings, Lopez also signaled his intent to move for Gentile to be held in contempt of court and threatened "other avenues of persuasion, including carceral ones." Ex. 10.

In response, the Court found Lopez's and Tauber's service of Fleming through email invalid under Rule 45 and ordered a hearing for July 23, 2024.  *See* Ex. 12 (Court's Order of August 16, 2024); Ex. 13 (Court's Order of August 30, 2024).  During, this hearing, the Court asked Lopez and Tauber the central question: "[h]ave you attempted to reach Mr. Gentile through the Florida proceedings or his counsel in Florida?"  Ex. 14 at 8.  Tauber conceded they

had not.[1]  Nonetheless, Lopez and Tauber orally requested a civil arrest warrant on the basis of

the defective subpoena improperly served on Fleming without having personally served any

subpoena on Gentile and without having moved to compel compliance.  *Id.*  The Court denied

the request, but granted permission to seek alternative service and move to compel if Gentile

failed to comply following alternative service.  *Id.* at 12.  This order further "instructed that any

renewal [of a motion to compel or for issuance of a civil arrest warrant] include evidence of

diligent efforts to notify Mr. Gentile of the motion to satisfy due process concerns."  Ex. 15 at 2.

No evidence in the record reflects any diligent efforts to serve Gentile following this order.

On August 14, 2024, rather than move for alternative service, Plaintiff purported to move

to compel Gentile to comply with the never-served subpoenas and applied for a civil arrest

warrant.  Ex. 6.  In the motion, Lopez misleadingly asserted they were unable to locate Gentile,

having purportedly attempted to serve him at "*101* Avenida de Diergo, [sic] #2202" in San Juan,

Puerto Rico (*Id.* at 2) which is problematic because it is (i) a different address from the one they

originally served the Complaint in this Action at (103 Avenida de Diego #2202 S) where they

knew Gentile no longer lived because the property had been sold nearly 3 years earlier; and (ii)

different from the 860 Ashford Ave. address where Gentile then-resided and which Plaintiff had

listed in its abstract of judgment just two months prior.[2]  *See* Ex. 4 (May 8, 2024); Ex. 5 (June 4,

2024).

---

[1] Tauber responded, "I believe not that recently, but maybe sometime since the judgment we
have tried to contact Mr. [Adam] Ford and get the information.  I think that we weren't
successfully -- it's a back-and-forth correspondence, but we were about to subpoena the Ford law
firm and the Florida lawyers for information on Mr. Gentile, as Mr. Fleming suggests."  Ex. 14 at
8.
[2] Lopez and Tauber indicated they were aware that this address was deficient, as they claimed
that "[p]rocess servers sent to that address reported back that Mr. Gentile is not in residence" and
"[c]orrespondence sent to Mr. Gentile at that address has been returned as undeliverable."  The
claim they ever attempted serve Gentile, however, is dubious because unlike other instances of

**B. Lopez Lies About Publishing Subpoenas and File A False Affidavit of Alternative Service**

On August 16, 2024, the Court denied Plaintiff's motion and ordered Plaintiff to propose an alternative method of service *for the subpoenas*. *See* Ex. 12. The Court's order conformed to the customary manner in which discovery disputes are resolved: (1) one must first properly serve a subpoena; (2) if the subpoena recipient fails to comply, one may move to compel compliance; and lastly (3) if compelled and the subpoena recipient fails to comply, the Court may hold the subpoena recipient in contempt or order other relief designed to coerce compliance. *Lang v. Walmart*, Inc., No. 22-CV-02784 (JMW), 2025 WL 638589, at *4 (E.D.N.Y. Feb. 27, 2025) (granting motion to find subpoena recipient in contempt but denying request that the Court issue a warrant, and collecting cases in stating that "[a]lthough courts may issue a warrant to bring a party to court for its non-compliance with a subpoena, courts typically do so only where there is a finding of contempt, a subsequent period for the disobedient party to comply with the subpoena again, and a warning that a continued failure would result in a warrant being issued.").

In response to the Court's August 16 order, Plaintiff moved for alternative service, requesting publication in a newspaper in Dubai, although, Plaintiff was aware that the United Arab Emirates (UAE) is not a party to the Hague Convention on service and publication of a foreign subpoena in a Dubai without UAE approval violates UAE criminal and civil law. *See* Ex. 17 at 5; Ex. 18 at 3 (confirming Plaintiffs' familiarity with the UAE's legal status relative to the Hague Conventions). In addition, Plaintiff requested to serve the subpoenas on Gentile's

---

subpoena service in this case, Lopez and Tauber provided no affidavit or any other evidence from a process server. *See, e.g.*, Ex. 36; Ex. 16, *contra* Ex. 6 at 2 (no affidavit of service or attempted service). Moreover, public records reveal that the apartment had been sold nearly 3 years prior. *See Departamento de Jusitica: Gobierno de Puerto Rico* (Puerto Rico title search), https://ridpr.pr.gov.

former counsel Fleming and Adam Ford of Ford O'Brien Landy and through several unverified

social media accounts, which Plaintiff baselessly represented belong to Gentile.  Ex. 15

(Plaintiffs' proposed order on motion for alternative service of papers).

On August 22, 2024, the Court issued an order, signing without modification Plaintiff's

proposed order authorizing alternative service of notice and subpoenas for documents and

testimony on Gentile.  Ex. 19.  Specifically, the Court, adopting the language proposed by

Plaintiff, ordered publication:

> in The Gulf News, an English language daily newspaper publishing from Dubai in
> the United Arab Emirates, on three occasions during the course of a single seven
> day period beginning at a time of Avalon's choice within 30 days of the filing of
> this Order with the Court.

*Id.* at 3.  The Court, again adopting the language proposed by Plaintiff, further ordered "[t]o

increase the probability" of notice to Gentile that the subpoenas be sent (i) to "105 Diego de Ave.

Apt. S-2202, San Juan, PR 00911" (even though the correct address as reflected on property

records and public dockets would have been *103* Avenida de Diego #2202 S, San Juan, PR

00911 and without mention of the 860 Ashford Ave., the address identified in the abstract of

judgment and where Gentile then-resided), (ii) by mail and email to Gentile's former counsel

Fleming and Adam Ford, and (iii) by sending instant messages to 4 unverified social media

accounts (Twitter, LinkedIn, Facebook, and Instagram), for which there is no evidence in the

record that Gentile had access or actually belong to Gentile.  *See* Ex.'s 19-21.  On August 30,

2024, the Court issued a follow-on order, authorizing "the plaintiff shall serve its motion for civil

arrest on Gentile via the alternative methods in the attached order."  Ex. 13 at 4.  In other words,

Plaintiff through misrepresentations to the Court succeeded in obtaining an order threatening

issuance of a civil arrest warrant intended to coerce compliance with a subpoena that was never-

served and for which no good-faith attempt at service was ever made.

The following week, Lopez filed a false affirmation of alternative service (the "Affirmation") affirming under penalty of perjury that he had complied with the Court's order on alternative service. Ex. 22. This attestation, as Lopez now admits, was a lie. He attested "On September 5, 2024, I made arrangements for publication of the Notice in the Gulf News, an English language daily newspaper emanating from the city of Dubai in the United Arab Emirates, on three consecutive dates, September 9, 10, and 11, 2024." *Id.* This statement was a lie. No such arrangements were made. The statement was also designed to mislead the Court and cover up the lie by attesting only that "arrangements were made," also a lie.[3] It also rendered the entire affirmation false, since the structure and title of the document were intended to suggest that alternative service had been effectuated. *Id.*

In reliance on this false and misleading affirmation, the Court issued an order on September 20, 2024, finding that "Gentile has failed to comply with Avalon's post-judgment subpoenas" and ordering that if located, "Gentile shall be incarcerated until he responds to Avalon's post-judgment subpoenas or until further Order of this Court." Ex. 23 at 5. It remains unclear what subpoenas the Court is referring, since to date, no subpoena has ever been served on Gentile (whether through alternative means or otherwise).

**C. Plaintiff and Lopez Use the Fraudulently Obtained Civil Arrest Warrant to Threaten Others Including Ford O'Brien Landy**

Within days of the Court's civil arrest warrant, Lopez and Tauber on behalf of Plaintiff began a campaign of threats, false accusations, and harassment of several non-parties, including Ford O'Brien Landy. These threats included a threat of obtaining an arrest warrant against an

---

[3] As discussed below, when confronted with these lies, Lopez has offered up more lies while refusing to request the Court vacate the wrongfully obtained civil arrest warrant, as ethically required to do.

individual in Florida if he did not reply to a defective subpoena served by Plaintiff (*see* Ex.'s 24-25), a scenario which ultimately wound up with Lopez and Tauber being reprimanded for engaging in the unauthorized practice of law in Florida. Ex. 26 (from *Sec. & Exch. Comm'n v. MintBroker International, Ltd. et al*, case No. 1:24-mc-23709 (S.D. Fla.)).

Under the guise of Plaintiff seeking information about Gentile's whereabouts to enforce the civil arrest warrant, on September 24, 2024, Lopez filed a motion for contempt against non-party Adam Ford, emphasizing that "The Court has ordered Mr. Gentile's arrest for treating all plaintiff's discovery requests with contempt." Ex. 17 at 3. The motion, filed just four days after the civil arrest warrant issued, sought to hold Adam Ford "in contempt of court" without having served an enforceable subpoena on Adam Ford or having moved to compel compliance. *Id.* at 4. In other words, having deceived the Court into issuing one civil arrest warrant through a false affidavit, Lopez acted under the delusion that he could lie his way into obtaining others. As the Court will recall, Lopez filed a letter with the Court falsely informing it that the Firm had failed to comply with its Order compelling responses, when in fact the Firm had fully complied within hours of the Court's Order. Ex. 27. All said and done, Ford O'Brien Landy has been required to draft dozens of substantive emails, file nine letter briefs related to motions to compel,[4] attend two conferences, and a deposition. This represents over $100,000 in attorney and paralegal billable time invested by nearly a dozen attorneys and paralegals over approximately an entire year.

**D. Ford O'Brien Landy Discovers Lopez Lied in the Affirmation of Alternative Service but Lopez Refuses to Withdraw it or Request Vacatur of the Civil Arrest Warrant and Makes Several Additional False Statements to this Court and the Second Circuit Court of Appeals**

---

[4] *See* ECF Nos. 350, 353, 360, 366 (motion for protective order), 375 (reply in support of protective order), 377, 379, 381, and 384.

On July 21, 2025, Adam Ford of Ford O'Brien Landy emailed Tauber, "Can you please forward me proof of the service publication that you made in Dubai. I don't see it filed online with David's affidavit of service." Ex. 28. The next day, Lopez responding, "Adam…In what capacity are you making this request?" Adam Ford responded:

> I am making this request in the capacity of a [non party] subpoena recipient for whom my firm has expanded substantial time responding to your various requests. Not to put too fine a point on it, we are unable to locate evidence that this publication was made. Your authority to have moved forward with the subpoenas issued to our Firm was based on your affidavit of service which said the notice was actually published, as ordered by the Court. Before raising this concern with the court, I want to give you an opportunity to share with me evidence of the publication. If you have it, please send it to me. If you do not have it, I suggest we have a meet and confer on how to proceed.

*Id.* (Adam Ford email to David Lopez July 22, 2025).

Forced to confront the objective fact that he had been caught and had never carried out publication as ordered by the Court and affirmed under penalty of perjury to the Court, Lopez, without a meet and confer, filed a letter with the Court the following day, admitting that service by publication had never occurred. Ex. 29. In the letter, Lopez admitted that the affirmation of service was "misleading" and dubiously claimed that he made "arrangements by telephone for such publication." *Id.* He also dubiously claimed that he "learned" that it was never published because "having checked my credit statements have determined that payment I had authorized for publication was not drawn down." *Id.* While Lopez admitted to "profound embarrassment" he argued that his lies were "harmless error." *Id.* In other words, Lopez attempted to minimize the significance of abusing the Court's subpoena power and lying in an affidavit of service: no publication was ever made, no credit card statement or phone records corroborate his statements, and UAE prohibits service of a foreign subpoena or arrest warrant, rendering the claim that Gulf News had agreed to publish a foreign arrest warrant dictated over the phone not credible.

In response, Ford O'Brien Landy filed a letter motion seeking leave to move for sanctions. The Court granted leave, setting forth a briefing schedule directing Ford O'Brien Landy to submit its opening brief on August 14, 2025, Plaintiff to file its response on September 2, 2025, with a reply brief permitted on September 11, 2025.  Ex. 30.

Lopez, continuing his pattern of disregard for the federal procedural and ethical rules, filed a letter brief on August 7, 2025, seven days before Ford O'Brien's opening brief was due, again attempting to mitigate the significance of his misleading statements to the Court.  Ex. 31. In the letter, Lopez admitted "I have determined that publication in Dubai of the Notice of the pendency of a motion for the issuance of bench warrant for the civil arrest of Guy Gentile did not take place."  *Id.*  Lopez also admitted: " I did not engage local counsel in Dubai"; "I incorrectly assumed that placement was a routine ministerial task"; "[t]his omission resulted in my being uninformed that under emirati practice a notice ordered by a foreign court may not be published…without first obtaining permission of an emirati court"; and that "publication of the notice did not happen."  *Id.*  This too was another lie to the Court. Lopez had already made not only one, but *two* filings confirming that he had researched UAE law and the Hague conventions. On September 17, 2024, Lopez had pointed out that the UAE "is not a signatory to" the Hague Conventions.  Ex. 17 at 5.  And on October 15, 2024, Lopez filed a letter with the Second Circuit seeking to dismiss Gentile's appeal, citing the fact that the UAE is not a signatory to the Hague Convention.  Ex. 18 at 3.

In another recent letter to the Second Circuit on August 7, 2025, Lopez has urged the Court not to vacate the civil arrest warrant even though it was obtained by fraud and also has refused to withdraw his prior arguments related to "fugitive disentitlement doctrine" presented to the Second Circuit.  Ex. 37; *see also* Ex. 32 at 7-19 (Brief for Plaintiff-Appellee).  When notified

of his ethical obligation to notify the Court and request vacatur of the wrongfully obtained civil

arrest warrant, Lopez has refused, emailing Adam Ford on July 24, 2025 stating "I decline to

take the actions you request [vacatur of the civil arrest warrant] which would amount to

abandoning the cases and judgments."  Ex. 33.  On August 11, 2025, in disregard of New York

Rule of Professional Conduct 3.4(e)[5] (Ex. 34 at 30-31) and the fact that Adam Ford no longer

represents Gentile in these actions, Lopez sent another email threatening, "Withdrawal of the

warrant will need to be part of any negotiation and if there is a settlement, withdrawal will likely

be part of the agreement."  Ex. 35.  Lopez's overzealousness in his efforts to enforce the

judgment shows utter disrespect for the Court and its rules and standards.

## **ARGUMENT**

**I.      The Court Should Sanction Lopez and Plaintiff Under its Inherent Authority
and under 28 U.S.C. § 1927 (Or alternatively, Rule 11 or Rule 45).**

It is axiomatic that lawyers should tell the truth, particularly when speaking with the

Court.  New York Rule of Professional Conduct 3.3(a)(1) codifies this axiom, providing that a "

lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to

correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"

Lawyers who are "economical with the truth" are so at their own risk.  *United States v. Stein*, 435

F. Supp. 2d 330, 381 (S.D.N.Y. 2006).  And lawyers who lie to the court get sanctioned.  *See,

e.g.*, *Luscier v. Risinger Bros. Transfer, Inc.*, No. 13-CV-8553, 2015 WL 5638063, at *10

(S.D.N.Y. Sept. 17, 2015) (sanctions for "knowing submission of a false statement to the Court

in the form of the 'Attorney's Affidavit'"); *Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 378

(W.D.N.Y. 2013) (sanctions for "misleading representations to a Magistrate Judge"), *aff'd sub*

---

[5] "A lawyer shall not . . . present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter[.]" N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 3.4(e).

*nom. Rankin v. City of Niagara Falls, Dep't of Pub. Works*, 569 F. App'x 25 (2d Cir. 2014); *Matter of Ksenzowski*, 56 B.R. 819, 834-36 (Bankr. E.D.N.Y. 1985) (sanctions for "false affidavit of service executed by plaintiffs' attorney" … "reflect[ing] an absolute contempt for his responsibility as an officer of the court"); *cf. Matter of Friedman*, 196 A.D.2d 280, 295 (1994) ("the making of false affidavits *should* result in disbarment").[6]

Courts retain the inherent authority to order fee-shifting as a sanction against counsel who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted). For purpose of sanctions under a court's inherent powers, "bad faith" need only be shown by "(1) 'clear evidence' or (2)' harassment or delay or ... other improper purposes.'" *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (quoting *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991)). A court's inherent authority includes the authority to sanction counsel for abuse of the subpoena process. *See Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 196 F.R.D. 220, 225 (W.D.N.Y. 2000).

Further, under 28 U.S.C. § 1927, "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The standard for sanctions under either a court's inherent authority or § 1927 is substantially similar. *Kaufman v. Equifax Info. Servs., LLC*, No. 18-CV-7420, 2019 WL 3997461, at *2 (E.D.N.Y. Aug. 22, 2019) ("To impose sanctions under 28 U.S.C. § 1927, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought

---

[6] Two of these cases are in the Rule 11 context, but the principles apply here. Regardless, Plaintiff's, Lopez's, and Tauber's conduct is also sanctionable under Rule 11 and Rule 45, and the Court may so find notwithstanding Rule 11 safe harbor requirements.

in bad faith – that is, motivated by improper purposes such as harassment or delay.") (internal quotation marks omitted).

Sanctions are appropriate here under the Court's inherent authority and § 1927 for the manner in which Plaintiff and Lopez conducted themselves for over a year in this proceeding. The Affirmation's representation that Lopez had effectuated alternative service of a notice in a Dubai newspaper is false, and Lopez conceded in his July 23 and August 7 letters that publication never occurred rendering the affidavit false and misleading. Ex. 29; Ex 31. Lopez has conceded that such publication would be *unlawful* under the laws of the United Arab Emirates. Ex. 31. Notably, Lopez failed to adduce any evidence that he even requested publication and admitted that he never confirmed publication. Ex. 29; Ex 31. And the explanation that he made arrangement "by telephone"[7] is implausible on its face, since the Court ordered publication of such a specific document with particular formatting and specific wording that it could not have been accurately described by telephone without written communication.

But the sanctionable conduct is not limited to the false Affirmation of Alternative Service. Sanctions are appropriate for a campaign of harassment of Ford O'Brien Landy, including the following instances of bad faith all premised on the fraudulently obtained civil arrest warrant:

- Feigning difficulty serving Gentile, including by failing to serve Gentile at the month-long Miami Trial and by putting the wrong address (101 Avenida de Diego instead of 103 Avenida de Diego) for service, even though they used the correct address (860 Ashford Avenue) in a filing a couple weeks before and had knowledge that 103 Avenida de Diego had been sold nearly 3 years prior;

- Disobeying the Court's order to publish notice of a subpoena, and instead publishing notice of a *civil arrest warrant* in a rush to achieve their "carceral"

---

[7] He has not produced a record of this telephone call either, although Ford O'Brien Landy has requested evidence corroborating these apparently false statements in his July 23 and August 7 letters to the Court.

aims but without actually serving the subpoena that would be the predicate for the civil arrest warrant;

- Attempting to effect service by sending messages to unverified Facebook, LinkedIn, Twitter, and Instagram accounts with no evidence that Gentile accessed these accounts or that they belonged to Gentile;

- Attempting to effectuate service through Fleming even after he had moved to withdraw as counsel, indicating that he was unable to reach Gentile;

- Failing to *ever* serve Gentile or Gentile's Miami Trial counsel with the subpoenas they purported to seek to compel, and which form the basis for the civil arrest warrant;

- Using the existence of the civil arrest warrant to harass Ford O'Brien Landy[8] and force it to spend almost an entire year fielding requests for financial and contact information for Gentile—intended primarily to effectuate the fraudulently obtained civil arrest warrant;

- Seeking dismissal of Gentile's Second Circuit appeal under the "fugitive disentitlement doctrine," which was based on the false premise that Lopez had properly effectuated alternative service through the Dubai newspaper;

- Refusing to vacate the wrongfully obtained civil arrest warrant; and

- Attempting to minimize the consequences of the perjurious Affirmation by claiming his lies were "harmless error."

## II. The Sanction Should Include Compensation for all Work Ford O'Brien Landy Reasonably Performed in Response to Lopez's and Plaintiff's Misconduct

---

[8] Plaintiffs repeatedly invoked the bench warrant to compel further FOBL responses to its requests for information. *See, e.g.*, ECF No. 343 at 3 (moving to compel further response to subpoena and emphasizing that "[t]he Court has ordered Mr. Gentile's arrest for treating all plaintiff's discovery requests with contempt."); ECF No. 359 at 2 (arguing that subpoena against Ford O'Brien Landy should be enforced despite the attorney-client privilege and New York Rule of Professional Conduct 1.6 in light of the "arrest warrant outstanding in this court"); ECF No. 371 at 4 (arguing in brief opposing protective order that the warrant should fundamentally change the Court's legal analysis, overriding assertions of privilege or confidentiality), ECF No. 378 at 3 (motion to compel further subpoena responses and a deposition, arguing that a "privilege log will . . . assist in evaluating the potential application of the crime fraud exception to any communications intended to frustrate enforcement of the Court's judgment and orders, including the outstanding bench warrant for Gentile's arrest.").

"[T]he temporal scope of [a] fee application [is] not … limited to the briefing" in response to a bad faith filing but "include[s] all work reasonably performed in opposition to [] improper subpoenas" or other "bad faith conduct." *KGK Jewelry LLC v. ESDNetwork*, No. 11-CV-9236, 2015 WL 899016, at *3 (S.D.N.Y. Mar. 3, 2015). *See also Kaufman*, 2019 WL 3997461, at *5.

Here, the scope of Ford O'Brien Landy's fee application includes all of the work Ford O'Brien Landy reasonably performed as part of its response to all of Lopez's and Plaintiff's misconduct. And given the experience and qualifications of the attorneys at Ford O'Brien Landy involved, the amount of requested compensation for legal fees is reasonable. *C.f. Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co. Inc.*, 714 F. Supp. 3d 294, 306 (S.D.N.Y. 2024) (adopting rates up to $650 per hour as within the prevailing range for this District), *report and recommendation adopted sub nom. Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co.*, No. 18 CIV. 2318 (LGS), 2024 WL 870813 (S.D.N.Y. Feb. 29, 2024). Ford O'Brien Landy incurred over $100,000 in in-house hours across several attorneys and paralegals in responding to Plaintiff's endless barrage of harassing requests intend to effectuate the civil arrest warrant.[9] Ford O'Brien Landy stands prepared to provide proof of work performed for *in camera* inspection and requests that any monetary sanctions, as determined by the Court, be paid directly to New York's indigent defense fund.

### III.    In the Alternative, Were the Court to Not Grant the Motion on the Papers Alone, an Evidentiary Hearing is Appropriate

---

[9] Here, Ford O'Brien Landy lawyers represented the firm in the events relevant to this Motion. Therefore, the fees expended here were not "billed" by the Firm in the same sense that a firm traditionally would bill a client for time. Nonetheless, the opportunity cost of using this attorney time to defend the Firm (rather than work for a Firm client) means that the loss of time here was an actual financial loss to the firm.

Courts may impose sanctions without holding an evidentiary hearing. *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 138 (2d Cir. 2023). Nonetheless, such a hearing is "a forum" for the district court to find facts. *Id.* (*quoting Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999)); *see also Chambers*, 501 U.S. at 44 ("[A] court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.").

Were the Court not inclined to grant this Motion based on the papers alone, we respectfully request that the Court hold an evidentiary hearing with testimony. Live testimony would best equip the Court to assess their credibility and identify any further gaps in the record.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Motion and impose monetary sanctions in an amount to be determined by the Court based on Ford O'Brien Landy expending more than $100,000 in attorney and paralegal time responding to defective and improper subpoenas and motions.

Respectfully submitted,

FORD O'BRIEN LANDY LLP

*/s/ Adam C. Ford*
Adam C. Ford, Esq.
275 Madison Avenue, 24th Floor
New York, NY 100016
Tel.: (212) 858-0040 (main)
Fax: (212) 256-1047
aford@fordobrien.com

18

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing memorandum of law was served on all parties in this matter via the Court's CM/ECF system.


Dated: August 14, 2025

*/s/ Adam C. Ford*
Adam C. Ford
