# EXHIBIT 14

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
AVALON HOLDINGS CORP.,

              Plaintiff,

         v.                            18 Civ. 7291 (DLC)

GUY GENTILE and MINTBROKER
INTERNATIONAL, LTD.,

              Defendants.
------------------------------x
NEW CONCEPT ENERGY, INC.,

              Plaintiff,

         v.                            18 Civ. 7291 (DLC)

GUY GENTILE and MINTBROKER
INTERNATIONAL, LTD.,

              Defendants.
------------------------------x       Conference


                                      New York, N.Y.
                                      July 23, 2024
                                      12:00 p.m.

Before:

                    HON. DENISE COTE,

                                      District Judge

                         APPEARANCES

DAVID LOPEZ
MIRIAM D. TAUBER
     Attorneys for Plaintiffs

OLSHAN FROME WOLOSKY LLP
     Attorneys for Defendant Gentile
BY:  THOMAS J. FLEMING
```

1             (Case called; appearances noted)
2             THE COURT: Mr. Fleming, is your client's name
3    pronounced genteel?
4             MR. FLEMING: I believe it's pronounced genteel, your
5    Honor.
6             THE COURT: Could you please stand.
7             MR. FLEMING: Oh. Yes, your Honor.
8             Yes, I believe that's how it's pronounced.
9             THE COURT: How?
10            MR. FLEMING: Genteel.
11            THE COURT: Genteel. Thank you.
12            Sir, your client isn't here.
13            MR. FLEMING: That's correct, your Honor.
14            THE COURT: And why is that?
15            MR. FLEMING: I -- I don't know why he's not here,
16   your Honor. I haven't spoken with him in quite some time. I
17   was served with discovery, my law firm, in this case, and I
18   provided answers as to his last known whereabouts that I had,
19   and I have no answer as to why he's not here. He did not
20   retain me for postjudgment proceedings. I haven't discussed
21   postjudgment proceedings with him, and I have no idea why he's
22   not here other than I assume he doesn't want to be here.
23            THE COURT: And are you representing him in any other
24   connection at the moment?
25            MR. FLEMING: Yes, your Honor. I am counsel of record

1  in the Second Circuit on his appeal.
2           THE COURT:  And that's the appeal in this litigation?
3           MR. FLEMING:  Yes, your Honor.  I'm appellate counsel
4  on this matter.
5           THE COURT:  And how do you communicate with him in
6  connection with that appeal representation?
7           MR. FLEMING:  I mean I communicated with him at the
8  outset, when the judgment came down, but since then I haven't
9  spoken to him and -- you know, it's an appeal, your Honor.  I
10 think I understand how to write an appeal and how to prepare an
11 appeal.  I don't need to have a dialogue with Mr. Gentile.
12          THE COURT:  Have you filed a brief?
13          MR. FLEMING:  I have not, your Honor.  The brief is
14 due next week.
15          THE COURT:  And you're not planning to discuss it with
16 your client?
17          MR. FLEMING:  I don't expect to discuss it with my
18 client, your Honor.
19          THE COURT:  So you have not spoken to your client
20 or -- well, have you communicated with your client by any means
21 in the year 2024?
22          MR. FLEMING:  Oh, I'm sure I've spoken to him in 2024.
23 I can't tell you when the last time I spoke to him.  I mean the
24 judgment in this case, I believe, came down early 2024, and
25 when it came to filing our objections to the report and

1  recommendation, I spoke to Mr. Gentile about that.  I don't
2  have a precise timeline in '24, but you know, since the
3  judgment came down, I don't know if I've spoken to him.
4  Certainly not in July or June.
5           THE COURT:  And do you communicate with him by email
6  or mail?
7           MR. FLEMING:  Not by mail, your Honor.  I have a last
8  known address.  I send whatever I get, including my bills, I
9  send to the last known address, and it's come back return to
10 sender for, you know, nobody there.
11          THE COURT:  So he's not paying your bills?
12          MR. FLEMING:  He has not paid my bills for quite some
13 time, your Honor.
14          THE COURT:  And --
15          MR. FLEMING:  I had discovery; they asked for all the
16 paper information, which I gave them.
17          THE COURT:  I'm sorry?
18          MR. FLEMING:  They served discovery on my law firm, so
19 my law firm was served with a restraining notice along with
20 information requests, which I complied with and gave them
21 information about when I was paid, who paid me and the amounts
22 and all that stuff.
23          THE COURT:  When you say they, you're referring to the
24 plaintiffs?
25          MR. FLEMING:  Yes, I am, your Honor.

1              THE COURT:  What is the last known address you have by
2     email or other address for the defendant -- Mr. Gentile.
3              MR. FLEMING:  I have I don't have it with me, your
4     Honor.  It's an address in Puerto Rico, which I answered in the
5     discovery.  And I have an email address for him.  I could check
6     on my phone, if you'd like.  The last email I sent came back.
7              And his email is not in my contacts.  I might be able
8     to find it by searching emails.
9              THE COURT:  And did you provide the email address to
10    the plaintiffs' counsel?
11             MR. FLEMING:  I wasn't requested for that.  That
12    wasn't requested, your Honor.  The discovery asked for a last
13    known address or home address.  If they want that, I'd be glad
14    to give it to them.
15             THE COURT:  Great.  If you could provide that to
16    plaintiffs' counsel, I'd appreciate it.  Can you do that later
17    today?
18             MR. FLEMING:  I'd be glad to do that.
19             I might also add, your Honor, it might help inform the
20    Court, Mr. Gentile's whereabouts are sort of known to the
21    plaintiffs.  He was on trial earlier this month in Florida.
22    The SEC brought a proceeding against him, and I know what I
23    read on PACER, which I've talked with plaintiff's counsel; they
24    read PACER too, and they know that he's been on trial down
25    there.  He has counsel in that case.  Perhaps they have contact

1  information.  They have subpoena power to go seek out
2  information regarding Mr. Gentile.  I don't know what they've
3  done, but perhaps his counsel in that case know where he can be
4  found if that's what they're looking for.
5             THE COURT:  So you are pursuing an appeal on his
6  behalf even though you are not in communication with him and he
7  has not paid you.
8             MR. FLEMING:  That's -- he owes me money.  He has paid
9  me in the past, but he currently owes me money, yes.
10            THE COURT:  And you're not able to communicate with
11 him despite your efforts to do so.
12            MR. FLEMING:  That's correct, your Honor.
13            THE COURT:  And you're pursuing an appeal on his
14 behalf in those circumstances.
15            MR. FLEMING:  I am, your Honor.
16            THE COURT:  Doesn't that seem unusual?
17            MR. FLEMING:  It is unusual, your Honor.  The question
18 is really, is it improper, and I think it's not improper in the
19 least.  I think there are many defendants who have appeals.
20 They're often unavailable to their attorneys.  In the criminal
21 world that happens.  In the civil world, I mean the appeal is a
22 legal issue.  He authorized me and he asked me to file the
23 appeal and to prosecute the appeal.  And I don't know what he
24 would add -- he's a layperson -- to analyzing the court's
25 rulings.  I mean we discussed with him at length when the case

1  was in the district court through what had happened and got
2  information from him, but now that the record is closed, I
3  don't know what he would add to it.
4         So your Honor, I do feel, yes, of course, it's
5  unusual.  One generally likes to talk to a client and get
6  feedback, but Mr. Gentile is not an attorney, and I don't know
7  what he would really add to the appeal.  So I feel that I can
8  pursue the appeal and file an appeal on his behalf.
9         THE COURT:  No, I'm not suggesting that you can't
10 formulate arguments.  It's just unusual in a civil appeal, I
11 think, for an attorney who is not being paid to pursue the
12 appeal and can't communicate with their client to continue to
13 pursue the appeal.  But thank you for sharing that with me.
14        I'll hear from you, Mr. Lopez.
15        MR. LOPEZ:  We have been diligently trying to locate
16 Mr. Gentile.  The last known address that was given to us turns
17 out to have been an apartment in San Juan, Puerto Rico, that
18 was transferred to his wife by Mr. Gentile, and they both seem
19 now to have disappeared.
20        I do not know of what sanction really could be applied
21 that would be more effective than $16 million he already owes;
22 that is to say, monetary sanction.  Under the C.P.L.R., there
23 is a provision for civil arrest for a party who refuses to
24 participate or is believed to be about to flee the
25 jurisdiction, and I would make an application to your Honor

1     today that that provision of the C.P.L.R. be utilized and that
2     a bench warrant issue for his arrest.
3              In addition, although a monetary penalty will probably
4     not be effective, that should not excuse him from paying one,
5     and so I will also ask that an appropriate monetary sanction be
6     applied.
7              THE COURT:  Have you attempted to reach Mr. Gentile
8     through the Florida proceedings or his counsel in Florida?
9              MS. TAUBER:  I believe not that recently, but maybe
10    sometime since the judgment we have tried to contact Mr. Ford
11    and get the information.  I think that we weren't
12    successfully -- it's a back-and-forth correspondence, but we
13    were about to subpoena the Ford law firm and the Florida
14    lawyers for information on Mr. Gentile, as Mr. Fleming
15    suggests.
16             THE COURT:  I'm sorry.  Who is Mr. Ford?
17             MS. TAUBER:  Oh.  Mr. Ford is his former counsel in
18    this case and he's also, I believe, currently his lawyer in the
19    Florida case.
20             THE COURT:  So you have not recently reached out to
21    Mr. Ford in connection with the Florida litigation and contact
22    information for Mr. Gentile?
23             MS. TAUBER:  We reached out to Mr. Ford, I believe,
24    when the judgment was first entered by your Honor a few months
25    ago in this case, and we had some back-and-forth

1   correspondence.  He was traveling.  We had a few times we were
2   going to speak by phone, and that didn't happen.  And we will
3   subpoena him.  I think I will send the subpoenas out today to
4   make sure, to Mr. Ford.
5           THE COURT:  Mr. Lopez, what notice was provided to
6   Mr. Gentile of today's proceeding?
7           MR. LOPEZ:  Notice was provided to his attorney of
8   record -- Mr. Fleming.
9           THE COURT:  Mr. Fleming, what steps did you take to
10  provide Mr. Gentile with notice of today's proceeding?
11          MR. FLEMING:  I sent the materials I got to the
12  address I had in Puerto Rico.  I also sent an email to
13  Mr. Ford, asking him to have Mr. Gentile contact me.  The
14  Florida lawyers are New York lawyers; they're here in New York.
15  They were counsel of record in this case.  I replaced them.  So
16  they're not exactly hard to find.  And while Mr. Lopez is
17  colorful in saying Mr. Gentile disappeared, according to PACER,
18  he testified in the Florida court on July 9, and -- I think
19  July 8 and 9.  I may have the dates off, but it was in July he
20  testified as a witness.  So he's not truly disappeared.
21          THE COURT:  And when you sent an email to Mr. Ford,
22  what response did you get?
23          MR. FLEMING:  No response.
24          THE COURT:  Thank you.
25          Just to put some context on the record, a judgment was

1  entered in March of this year for over $8 million plus
2  prejudgment interest against Mr. Gentile.  An appeal was taken
3  in April, but no bond was filed in connection with that appeal,
4  and therefore, the plaintiffs are undertaking an enforcement
5  action; in connection with that action are taking discovery.
6  As I understand it, at the end of May, on May 30, they served a
7  subpoena and deposition notice and a restraining notice.  The
8  deposition was to occur on July 1, and Mr. Gentile failed to
9  appear.
10           I have an application in connection with today's
11 proceeding; specifically, a request for a motion to compel, a
12 deposition to occur on August 1 and for documents to be
13 produced on August 1 under threat of contempt.  I now have an
14 oral application for a bench warrant to be issued and
15 additional unspecified monetary sanctions to be levied.
16           Mr. Fleming is appearing in court today as the
17 attorney of record for Mr. Gentile.  He had previously made a
18 motion to withdraw, which I have granted conditionally on him
19 providing the plaintiffs with a means to effect service on
20 Mr. Gentile.
21           Mr. Fleming, I want to make sure I'm accurate in what
22 I am describing here, but it's my understanding that
23 Mr. Gentile has not authorized you to give the plaintiffs in
24 this litigation an address or means to effect service on him.
25 Am I right?

1              MR. FLEMING:  That is correct, your Honor.  And I
2    didn't want to provide the old address I had because I didn't
3    think it would be effective, so I don't have -- you're correct.
4              THE COURT:  And you're taking the position that you
5    have no means effectively today to ensure service on
6    Mr. Gentile.  Am I right?
7              MR. FLEMING:  That's correct, your Honor.
8              THE COURT:  So --
9              MR. FLEMING:  I don't think I -- if service on me is
10   effective, so be it, but I don't have the -- I don't -- I can't
11   reliably tell you that I've actually delivered materials to
12   Mr. Gentile.  I sent them out to the last known address I have,
13   and some material comes back from time to time saying nobody's
14   there.  I think the plaintiffs had the same experience, that
15   the apartment in Puerto Rico was either uninhabited or --
16   something.  I don't know.
17             THE COURT:  And with respect to the email address that
18   you have for Mr. Gentile, does he respond to emails that you
19   send him at that address?
20             MR. FLEMING:  No.  At the email address I have I got a
21   notice from Microsoft, or whoever, saying the address was not
22   working.  And I happen to have a phone number, your Honor; I
23   got a message that that's disconnected.
24             THE COURT:  OK.
25             Mr. Lopez, I'm going to require you to reach out to

1  Mr. Ford and do whatever investigation is appropriate in
2  connection with the Florida litigation brought by, as I
3  understand it, the SEC to learn how service was made in that
4  litigation effectively on Mr. Gentile and/or to otherwise
5  understand how he can be reached.  I'm going to deny your
6  application made orally today for a bench warrant.  This is
7  what I understand:  Mr. Gentile is --
8           You know, as I think about this, Mr. Fleming -- excuse
9  me one second -- I don't know that the Court of Appeals would
10 be very happy to know that any ruling they issue on an appeal
11 you could not effectively communicate with your client and that
12 he is not returning your messages, not paying you; that you
13 don't have an email address, a phone number or mailing address
14 for him that is effective.
15          Now, the Court of Appeals has its own rules with
16 respect to the requirements of counsel who appear before it on
17 behalf of clients.  I'm not going to presume to tell you what
18 those rules require, but I know, for me, if I have an attorney
19 in court taking positions on behalf of a client they could no
20 longer communicate with, such that if I ordered them to do
21 something they could not effectively bring their client in to
22 court to respond to that order, I would expect counsel to tell
23 me.
24          MR. FLEMING:  I understand that, your Honor, but I --
25 the appellate process is different from the district court

1  process, and I certainly wouldn't be here with such a client at
2  the district court level.  But there's really very few outcomes
3  at the appellate court.  I mean if it's affirmed, it's
4  affirmed; it's a victory for the plaintiffs, and we proceed.
5  If it's reversed, then presumably, maybe Mr. Gentile will come
6  out from where he is.  I have no idea what will happen at that
7  point.
8            THE COURT:  Mr. Fleming, again, I'm not ruling as to
9  what the Second Circuit would expect of counsel who appear
10 before it.  I leave that for you and them to determine.
11           MR. FLEMING:  Thank you, your Honor.
12           THE COURT:  I think on this record an additional
13 monetary sanction would not be effective in obtaining
14 compliance with the restraining order, the subpoenas or the
15 deposition notice.
16           I think that on this record it may be that the
17 issuance of a bench warrant and potentially a term of
18 imprisonment to coerce compliance with the requirements of this
19 Court and the law may be the only outcome that might obtain
20 compliance.  Obviously, civil contempt law requires me to make
21 a number of findings and for plaintiffs' counsel to make a
22 number of showings before I would issue such a bench warrant.
23 I bring to your attention just one case in this regard -- *CBS*,
24 814 F.3d 91, a Second Circuit decision from 2016.  But I'm
25 going to require a showing by you, Mr. Lopez, that you've

O7nWavaC

1  exhausted all methods of obtaining an effective avenue of
2  communication with Mr. Gentile, including by reaching out to
3  Mr. Ford and, if necessary, the SEC and learning what you can
4  from the Florida action.  But if you want to renew this
5  application and make a proper showing, I will consider it.
6           MR. LOPEZ:  Thank you, your Honor.
7           THE COURT:  Thank you, all.
8           MR. FLEMING:  Thank you, your Honor.
9           (Adjourned)