**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AVALON HOLDINGS CORP., | |
| Plaintiff, | No. 18-cv-7291 (DLC) (RJL) |
| v. | ECF Case |
| GUY GENTILE and MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

Related to:

| | |
|---|---|
| NEW CONCEPT ENERGY, INC. | |
| Plaintiff, | No. 18-cv-8896 (DLC) (RJL) |
| v. | ECF Case |
| GUY GENTILE and MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO PENDING MOTIONS**
**FOR SANCTIONS, VACATUR OF CIVIL ARREST WARRANT (Etc.)**

David Lopez
Law Office of David Lopez
171 Edge of Woods Rd., PO Box 323
Southampton NY 11969
631.287.5520
DavidLopezEsq@aol.com

Miriam Tauber
Miriam Tauber Law PLLC
885 Park Ave. 2A
New York NY 10075
323.790.4881
MiriamTauberLaw@gmail.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

| | |
|---|---|
| **Table of Authorities** | i |
| **OVERVIEW** | 1 |
| **DRAMATIS PERSONAE** | 1 |
| GUY GENTILE | 1 |
| ADAM FORD AND THE LAW FIRM FORD, O'BRIEN, LANDY (The "Ford Firm") | 2 |
| THOMAS FLEMING AND THE OLSHAN LAW FIRM | 3 |
| NICHOLAS ABADIOTAKIS | 3 |
| DAVID LOPEZ AND MIRIAM TAUBER | 4 |
| **POINT I.**<br>**SERVICE OF THE BENCH WARRANT**<br>**COMPLIED WITH THE REQUIRMENTS OF DUE PROCESS** | 5 |
| A.  Service Was Effective and Actual Notice Provided to Mr. Gentile Through His Counsel | 6 |
| B.  Plaintiffs' Failure to Effect Service by Additional Alternate<br>Methods Were Harmless and Any Errors Were Made in Good Faith | 9 |
| (1)  Publication in Dubai. | 9 |
| (2)  Mail to Mr. Gentile | 10 |
| (3)  Social Media | 12 |
| **POINT II.**<br>**THE CLAIMED CONSPIRACY THEORIES OF A MALIGN SCHEME**<br>**TO PUT MR. GENTILE IN JAIL MAKE NO FACTUAL OR RATIONAL SENSE** | 12 |
| **POINT III.**<br>**THE MOTIONS SHOW A LACK OF UNDERSTANDING OF**<br>**CIVIL ARREST AND THE FUGITIVE DISENTITLEMENT DOCTRINE** | 14 |
| **POINT IV.**<br>**MR. GENTILE'S OFFER TO BE DEPOSED IN DUBAI IN COMPLIANCE**<br>**WITH EMIRATI LAW IS A POISONED CHALICE. PLAINTIFFS DECLINE.** | 16 |
| **POINT V.**<br>**SHOULD THE COURT FIND SANCTIONS WARRANTED, THE $100,000 PENALTY**<br>**PROPOSED BY MR. FORD IS WHOLLY DISPROPORTIONATE TO ANY INDENTIFIABLE**<br>**HARM.** | 17 |
| A.      Redundant Alternative Methods of Service Were Proposed and Ordered | 17 |
| B.      Plaintiffs' Counsel's Errors Were Harmless | 18 |
| C.      No Probability of Repetition | 20 |
| **POINT VI.**<br>**MR. GENTILE'S MOTION FOR RECONSIDERATION OF**<br>**THE COURT'S JURISDICTION ORDER SHOULD BE DENIED.** | 20 |
| **POINT VII.**<br>**ACCUSATIONS REGARDING NICHOLAS ABADIOTAKIS AND COUNSEL'S**<br>**SUPPOSED "UNAUTHORIZED PRACTICE OF LAW" IN FLORIDA ARE BASELESS** | 22 |
| **CONCLUSION** | 23 |

## TABLE OF AUTHORITIES

**Cases**

*Commerzbank AG v. U.S. Bank, N.A.*,
    100 F.4th 362 (2d Cir. 2024)................................................................................................ 20

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384 (1990),........................................................................................................... 17

*Doe v. Hyassat,*
    337 F.R.D. 12 (S.D.N.Y. 2020) ............................................................................................. 7

*Ipcon Collections LLC v. Costco Wholesale Corp.*
    698 F.3d 58, 63 (2d Cir. 2012). ........................................................................................... 17

*Perez v. Posse Comitatus,*
    373 F.3d 321 (2d Cir. 2004) ................................................................................................ 17

*Ransome v. Epstein,*
    No. 17 Civ. 616 (JGK), 2018 WL 637421 (S.D.N.Y. Jan. 30, 2018*);* ....................................... 7

*SEC v. Tome*,
    833 F.3d 1086 (2d Cir. 1987) ................................................................................................ 8


**Treatises**

2 Moore's Federal Practice
    (Matthew Bender 3rd ed.) ................................................................................................... 17

## OVERVIEW

What had begun as a motion to impose severe sanctions on David Lopez, Plaintiffs' lead counsel, for having botched the publication of notice in Dubai to inform the Defendant of the pendency of a motion for the issuance of a bench warrant for his civil arrest has, with the emergence of Mr. Gentile from fugitive hiding, morphed into a cascade of his motions addressing other aspects of the case. The motions in need of consideration are:

1) A motion brought by Adam Ford as a non-party seeking sanctions against the Plaintiffs and their counsel (*Avalon* Dkts. 392-394). Points I, II and III of this Brief are responsive.

2) A motion for sanctions brought by Guy Gentile (*Avalon* Dkts. 399, 405). The facts and arguments are generally duplicative of those advanced by Ford and so share the responses of Plaintiffs' Points I, II and III.

3) Mr. Gentile also moves and then moves again as an "Emergency" to vacate the court's bench warrant for his civil arrest, *Avalon* Dkts. 399, 405, 407. Ancillary to this motion is a document addressed to Your Honor labelled "Supplemental Notice Regarding Sua Sponte Duty to Vacate Void Arrest Warrant." Plaintiffs' Points I, II and III are responsive.

4) Mr. Gentile moves for reconsideration of the Order of August 29, 2025. (*Avalon* Dkt. 408). Plaintiffs' Point VI is responsive.

5) With respect to Mr. Gentile's purging himself of contempt by submitting to examination as a judgment debtor, Plaintiffs' Point IV opposes having Mr. Gentile's oral deposition take place in Dubai subject to U.S. law, international law, and the law of the United Arab Emirates. A venue of the Southern District of New York and controlling law of the Federal Rules of Civil Procedure are Plaintiffs' counter proposals.

6) Should Your Honor rule that sanctions are merited, Plaintiffs' Point V addresses the proportionality of sanctions to measurable harm and suggests that there has been no harm.

## DRAMATIS PERSONAE

In light of the weight of traffic to be directed by the Court, Plaintiffs' counsel respectfully submit a brief playbill as an aid to following the plot.

- **GUY GENTILE** is the judgment debtor in both cases and has been a fugitive from these proceedings for over a year. On August 21, 2025, he provided a mailing address in Dubai

1

in the United Arab Emirates and filed with the Court a purported "Notice of Pro Se Limited Appearance, which Your Honor by Order entered August 29, 2025 (the "Jurisdiction Order," *Avalon* Dkt. 404) ruled ineffectual to limit the Court's *in personam* jurisdiction over him. He is in continuing contempt of this Court's Order directing him to submit to examination as a judgment debtor and a bench warrant for his arrest is outstanding. As the Court found, this Court has continuing *in personam* jurisdiction over Mr. Gentile acquired over many years of this litigation and Mr. Gentile's purporting to make a special appearance while remaining beyond the physical bounds of this District and, indeed, of the United States, is of no moment. Mr. Gentile purports now to represent himself *pro se* and is the proponent of various of the motions listed above. Mr. Gentile has acknowledged by his recent filings with the Court that he is aware of the existence of the outstanding warrant for his civil arrest. He continues to treat it, the Court's Orders, and the judgments outstanding against him with non-compliance. He holds the key to the jailhouse door in his own hands and can terminate the warrant at any time by obeying the Court's orders and judgments.

- **ADAM FORD AND THE LAW FIRM FORD, O'BRIEN, LANDY (The "Ford Firm")** are the proponents of a Motion to Impose Sanctions against Plaintiff's counsel and against the Plaintiffs. Mr. Ford and the Ford Firm come before the Court in the guise of aggrieved non-parties which tortures the truth. The Ford Firm and Adam Ford (and his brother and law partner Matthew Ford) have been for many years and through many indictments and civil suits against Mr. Gentile, in the pay of Mr. Gentile as, among other things, continuing current attorneys of record for Mr. Gentile in the pending case of *SEC v. Gentile* et. al., 21-cv-21079 (S.D. Fla.) (the "SEC Case"), and prior counsel to Mr. Gentile in these cases. The Firm withdrew and was substituted by Olshan following entry of Magistrate Judge

2

Lehrburger's Report & Recommendation ("R&R") that judgment be entered for the Plaintiffs, along with pre-judgment interest, and an award of attorneys' fees owing to the Firm's misrepresentations and dilatory conduct. As Adam Ford testified, the Firm has billed hundreds of thousands of dollars in fees to Mr. Gentile and his affiliates in connection with this case alone, and the Firm's presence on Mr. Gentile's pay continues to this day. The Firm clearly acts on Mr. Gentile's behalf and seemingly believes the Court should be spared the burden of this context.

- **THOMAS FLEMING AND THE OLSHAN LAW FIRM** are Mr. Gentile's Attorneys of Record in these cases, including in his pending appeal of the judgments to the Second Circuit. Mr. Fleming previously applied to the Court to be relieved of his representation of Mr. Gentile in post judgment proceedings before this Court and was informed that his withdrawal was conditioned on Mr. Gentile's appearance and designation of an alternative manner of service. (*Avalon* Dkt. 300.) While Mr. Gentile has since purported to appear *pro se* and has filed a consent to service by ECF as the Court required, Mr. Fleming is not Mr. Gentile's "former attorney" as he has described himself to the Court. Mr. Fleming continues to actively represent Mr. Gentile in his appeals of these cases and recently filed two letters with the Court of Appeals echoing the claims made by Mr. Gentile and Ford on these motions.

- **NICHOLAS ABADIOTAKIS** is a person introduced into these motions by reference to a letter from Plaintiffs' counsel to Mr. Abediotakis seeking to persuade him to cooperate in scheduling a date, time, and location for his deposition in the Southern District of Florida. Mr. Abadiotakis has played the following roles in the course of this case:

3

(i) At Mr. Gentile's deposition, Mr. Gentile identified Mr. Abadiotakis as a long-time associate, and the trustee of one or more trusts established by Mr. Gentile for his own benefit.

(ii) Years later, when a letter from a pleased customer of Mr. Gentile's brokerage was needed as a testimonial to vouch to the authorities for the righteous conduct of its business, Mr. Abadiotakis was called upon to provide an Affidavit to that effect to file with the Court.

(iii) Testimony taken at the Court-ordered post-judgment deposition of the current CEO of SpeedTrader, a New York business founded and reportedly held in trust for Mr. Gentile, reflects that Mr. Abadiotakis is actively engaged in the management of SpeedTrader.

Ford and Mr. Gentile wrongly accuse Plaintiffs' counsel of having engaged in the unlicensed practice of law in Florida in connection with their efforts to pursue enforcement discovery from Mr. Abadiotakis. Plaintiffs' counsel would most certainly like to talk to Mr. Abadiotakis and will not engage in the unlicensed practice of Florida law to do so. Plaintiffs believe this Court has jurisdiction to compel Nicholas Abadiotakis's deposition testimony as the manager of a New York business. If it becomes necessary to arrange for a deposition in the Southern District of Florida, Plaintiffs will seek any order required to be issued from that District in full compliance with applicable local *pro hac vice* requirements.

- **DAVID LOPEZ AND MIRIAM TAUBER** are Plaintiffs' attorneys in these cases, practicing members of the New York State and Southern District bars of good repute. David Lopez has been a lawyer for 59 years, and Miriam Tauber for 18 years. Neither has previously ever been the subject of a motion for sanctions or other bar discipline. We have no relationship to the parties other than arms-length professional ones. We are lawyers representing our clients in pursuit of claims against Mr. Gentile found meritorious by this Court. Mr. Gentile, on the other hand, appears to have developed an *animus* toward us. It comes with the territory.

It is against this background and with these *dramatis personae* that Plaintiffs and counsel address the Ford and Gentile motions for sanctions against them for their failure to effect publication of the Court's notice in Dubai, United Arab Emirates, as Plaintiffs proposed and the Court ordered as one of several alternative methods of "substituted service." That failure arose under circumstances governed by the laws and customs of a foreign nation, whose existence and applications were not known to Plaintiff's counsel, David Lopez, who arranged for the publication. The adjective and pejorative laden accusations flowing from Ford and Mr. Gentile relating to that failure are denied as fevered zeal. And the notice intended to be published to inform Mr. Gentile of the pendency of an application for an order of contempt and a warrant for his civil arrest was actually and successfully conveyed to him by, among other means, service upon the Ford firm itself, and upon Mr. Fleming, as Mr. Gentile's attorney of record in this case. How forgetful of Mr. Ford not to inform the Court candidly of those facts.

### POINT I.

### SERVICE OF THE BENCH WARRANT
### <u>COMPLIED WITH THE REQUIRMENTS OF DUE PROCESS</u>

The central issue raised by the pending motions is whether the issuance and service of the bench warrant against Mr. Gentile met minimal standards of due process. Due process is satisfied by Mr. Gentile's actual notice of the warrant and does not require the success of every one of the alternative methods of substituted service proposed by Plaintiffs and ordered by the Court. Whether counsel's conduct merits sanctions is a subsidiary issue of concern to the target of the motion, but for the case in whole it is not the main event.

At the conference on Plaintiffs' motion to compel Mr. Gentile to respond to Plaintiffs' enforcement discovery, the Court permitted Plaintiffs' to move for issuance of the contempt order and bench warrant, finding that, "on this record an additional monetary sanction

would not be effective in obtaining compliance with the restraining order, the subpoenas or the deposition notice" and "that the issuance of a bench warrant and potentially a term of imprisonment to coerce compliance with the requirements of this Court and the law may be the only outcome that might obtain compliance." (*See* Conf. Tr., *Avalon* Dkt. 354 p.13.)

Plaintiffs' proposed order of substituted service, which the Court granted, provided for the following alternative methods of service, given that Mr. Gentile's counsel of record stated that he was unable to contact his client and personal service on Mr. Gentile having been rendered impractical or impossible by his flight from the United States:

1) **Publication** in The Gulf News, an English language newspaper of Dubai. (*See* Substituted Service Order, *Avalon* Dkt. 333, p.3 ¶1).

2) Direct messages to **social media accounts** maintained in the name of Guy Gentile, and which include his picture and other information identifying the Defendant as the owner of the accounts. (Id. p.4 ¶2(d)).

3) **First class mail and e-mail to Mr. Gentile** at his last known address in Puerto Rico, and his last known e-mail address. (Id. p.4 ¶2(a).

4) **First class mail and e-mail to Mr. Gentile's counsel,** Thomas J. Fleming of Olshan Frome Wolosky LLP (Mr. Gentile's attorney of record in these cases before this Court and on appeal to the Second Circuit); and Adam Ford of Ford O'Brien LLP (Mr. Gentile's former counsel in these cases, and his current counsel and continuing attorney of record in the SEC Case. (Id. p.4 ¶¶ 2(b), 2(c)).

### A. Service Was Effective and Actual Notice <u>Provided to Mr. Gentile Through His Counsel</u>

Gentile and Ford contest the effectiveness of methods (1), (2), and (3), but service was accomplished by method (4) – via service to Mr. Gentile's counsel, Messrs. Ford and Fleming.

Mr. Fleming is Mr. Gentile's current counsel in this case, and although he represented to the Court that he was unable to communicate with Mr. Gentile, he has since filed two separate letters to the Court of Appeals repeating the arguments made by Mr. Gentile and Ford in these pending motions. (*See Avalon*, 2d Cir. Case No. 24-999, Dkt. 68.1, Dkt. 66.1).

6

The Ford lawyers are Mr. Gentile's current counsel in the SEC Case. Courts have held that service on counsel in another matter is sufficient to provide notice and satisfy due process, even where counsel is purportedly "not authorized" to accept service. *Ransome v. Epstein*, No. 17 Civ. 616 (JGK), 2018 WL 637421, at *1 (S.D.N.Y. Jan. 30, 2018*); see also Doe v. Hyassat,* 337 F.R.D. 12, 17 (S.D.N.Y. 2020) ("courts have permitted service upon a defendant's lawyer in another matter [where] the fact of that representation has been well-established").

Notice to Mr. Gentile's lawyers at Ford O'Brien was reasonably calculated to – and did – provide Mr. Gentile with notice of the contempt order and bench warrant. Mr. Gentile and all his lawyers concede and even emphasize that the Ford attorneys spent at least 3 days with Mr. Gentile at the federal courthouse in Florida while he testified at his jury trial in the SEC case at the end of June 2024, a month after Plaintiffs' enforcement discovery was served on Mr. Fleming as Mr. Gentile's counsel of record and forwarded to the Ford firm. Ford's suggestion that Plaintiffs should have hired a private investigator to stake out the courthouse instead of expecting the firm to advise Mr. Gentile of Plaintiffs' subpoenas and this Court's Orders is absurd and contrary to case law.

In addition to Plaintiffs' service order and bench warrant on the Ford firm by email and mail (and personal delivery) as the Court ordered as one method of substituted service. (Dkts. 335-336), the Ford lawyers have remained on the ECF service list for this case and continue to receive all ECF case filing notices -- including notice of Plaintiffs' motion to compel and the subpoenas attached as exhibits (*Avalon* Dkt. 321), the Court's Order on substituted service (Dkts. 333-334), and the civil contempt order and bench warrant (Dkt. 341).

The Ford firm was indisputably aware of the bench warrant, having repeatedly cited the existence of the warrant as the basis for unsuccessful efforts to avoid the enforcement discovery

7

sought by the Plaintiffs from the firm. (*See, e.g., Avalon* Dkt. 366.) And at the Firm's recent Rule 30(b)(6) deposition ordered by Magistrate Judge Lehrburger (*see* Order, *Avalon* Dkt. 385), Adam Ford testified that the Firm is in regular and ongoing contact with Mr. Gentile, who has been a client for over ten years.

Most importantly, as Your Honor correctly found in issuing the bench warrant and ordering substituted service:

> "***Gentile is aware of this action and the judgment against him, having previously appeared in this case and having appealed the final judgment***. 'In the case of persons missing or unknown, employment of an indirect and possibly futile means of notification is all that the situation permits and creates no constitutional bar' … The 'fundamental requisite of due process of law is the opportunity to be heard' … ***This record clearly establishes that Gentile was afforded such an opportunity and that he made a conscious decision to ignore the post-judgment proceedings in this action***."

(Order, *Avalon* Dkt. 334 pp.4-5, quoting *SEC v. Tome*, 833 F.3d 1086, 1094 (2d Cir. 1987) (other internal citations omitted) (emphasis added)).

Given Mr. Gentile's actual notice, including through notice to his counsel at the Ford and Olshan firms, both representing him in pending litigation, due process was satisfied. Whether or not the additional methods of service ordered by the Court, which were superfluous and which the Court acknowledged were "possibly futile," were successful or "reasonably calculated" to provide "constructive notice," is irrelevant to the due process inquiry under these circumstances. *SEC v. Tome*, 833 F.3d 1086, 1093 ("The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of *constructive notice*" provided by alternative service," where "there can be no doubt" *actual notice* was provided, including to counsel who "refused to accept service") (emphasis in original). Plaintiffs' failure to accomplish service by any of these additional methods were harmless.

8

Furthermore, Mr. Gentile has appeared *pro se* and consented to service via ECF as the Court required. All claims of defective service of any case filings, including the bench warrant, are now moot.

**B. Plaintiffs' Failure to Effect Service by Additional Alternate Methods Were Harmless and Any Errors Were Made in Good Faith**

Mr. Gentile and Ford assert that Plaintiffs' attempts to serve Gentile via methods (1), (2), and (3) were "intentionally defective" and sanctionable, characterizing mistakes made by Plaintiffs' counsel in their efforts to locate Mr. Gentile as malicious, when in fact they were harmless error.

Substituted service was required in the first instance because of Mr. Gentile's and Ford's own evasive conduct in refusing to acknowledge their actual notice of Plaintiffs' enforcement efforts. Their demand that the Court sanction Plaintiffs' counsel for defective alternative service attempts that their own willful conduct made necessary is the height of *chutzpah* and should be denied.

Plaintiffs' errors in proposing and attempting service through these additional alternative methods were made in good faith. We provide the following explanation of the alternative methods we proposed and which the Court approved.

**(1) Publication in Dubai**.

Plaintiffs proposed publication as one method of substituted service because the Court had directed Plaintiffs' counsel to inquire as to how service was accomplished in the SEC case and were informed that service there was by publication in Puerto Rico at a time when Mr. Gentile resided there. We likewise proposed to serve by publication as an attempt to comply with the Court's suggestion that looked to the SEC case for guidance. We advised the Court that our proposal to publish in Dubai was based on unconfirmed rumors that Gentile had relocated there,

9

which were repeated by the SEC's counsel. Dubai publication was proposed and ordered as an alternative and "possibly futile" method, which was superfluous given Gentile's actual notice of case proceedings through his two separate counsel.

As explained in a letter to the Court, Plaintiffs' counsel was not aware of any restrictions on Dubai publication, or that Plaintiffs' request to publish in Dubai could not be processed. Plaintiffs believed that publication had been effected consistent with counsel's instructions when the Affirmation of alternative service was filed. When informed of the mistake by Mr. Ford, Plaintiffs' counsel immediately alerted the Court and apologized for the error. What followed was an incessant bevy of filings in this Court by Ford and Mr. Gentile demanding sanctions and *vacatur* of the warrant, and additional filings by Olshan in the Second Circuit contesting Gentile's status as a "fugitive" disentitled to pursue an appeal.

Plaintiffs respectfully suggest that counsel's honest mistake does not merit the punishment demanded by Messrs. Ford and Gentile. Service by publication or any other alternative means would not need to have been ordered or attempted if Messrs. Ford and Gentile had acknowledged their receipt and notice of Plaintiffs' enforcement subpoenas and all case filings, including the contempt order and bench warrant.

**(2) Mail to Mr. Gentile**

Mr. Gentile claims the Puerto Rico address proposed and ordered for substituted service by mail to him was incorrect. As the Court found in ordering substituted service, "Plaintiffs have diligently attempted to obtain Gentile's current address, to no avail." (Order, *Avalon* Dkt. 334 p.3.)

At the conference held on Plaintiffs' motion to compel, Plaintiffs advised the Court that they were unaware of Mr. Gentile's current address or whereabouts and had requested that

information from his counsel. Mr. Fleming as Mr. Gentile's counsel of record informed the Court that the address that his firm had on file and that he had provided to Plaintiffs appeared to be outdated, as correspondence sent to that address was returned as undeliverable. That address was 860 Ashford Avenue in Puerto Rico, the address that Mr. Gentile now claims was then valid.

Given that Mr. Gentile's counsel told the Court that this address was non-working, Your Honor directed Plaintiffs' counsel to inquire whether either Mr. Ford or counsel for the SEC had a more recent address. SEC counsel informed us that the most recent address on file for Mr. Gentile was the Avenida de Diego address appearing on the Florida case docket sheet. Ford gave us the same information when the firm finally responded to our discovery requests after objections were overruled in proceedings before Magistrate Judge Lehrberger. That address is where Plaintiffs attempted to send the notice.

Again, Plaintiffs were aware that this address was also likely not current as they had informed the Court that they suspected Gentile had relocated to Dubai. If the Ashford Avenue address was Mr. Gentile's address at the time as he now claims, then none of his own lawyers were aware of that; and if they were, they gave contrary information to the Plaintiffs (and the Court). Moreover, if Gentile was then residing at the Ashford Avenue address in Puerto Rico, Plaintiffs' defective publication in Dubai, is necessarily harmless.

More to the point, both. Ford and Mr. Gentile had notice of the proposed Order for substituted service and they had the opportunity to respond and provide a correct address. Alternative service by mail would not have been required if Messrs. Ford and Gentile had acknowledged actual notice.

11

**(3) <u>Social Media</u>**

Mr. Gentile claims that service by social media was made to defunct or invalid accounts.

Plaintiffs' proposed order on substituted service, which the Court approved, identified the specific accounts that Plaintiffs designated for service — including an "X" (Twitter) account that appeared to have been active that month, and a LinkedIn account indicating that it belonged to Guy Gentile, founder of SpeedTrader, who is retired to Dubai. As the Court found, social media service as Plaintiffs' proposed was a reasonable "supplemental" method of service in this case, given that Mr. Gentile otherwise had actual notice, including through his counsel. (Order, *Avalon* Dkt. 334 p.4.)

Mr. Gentile asserts that Plaintiffs were first obligated to subpoena the social media companies to determine that the accounts belonged to him. Nothing in the case law suggests that there is such a requirement, especially where a party has actual notice and is deliberately avoiding service. The specific social media accounts were identified in the proposed Order on substituted service, of which Mr. Gentile and all his counsel had notice. If those were not his accounts, Mr. Gentile could and should have spoken up.

As to accusations of our "plastering notice all over the internet," Mr. Gentile could have avoided social media service entirely by acknowledging service via counsel or providing a current address.

## POINT II.

### THE CLAIMED CONSPIRACY THEORIES OF A MALIGN SCHEME <u>TO PUT MR. GENTILE IN JAIL MAKE NO FACTUAL OR RATIONAL SENSE</u>

At the risk of repetition, Plaintiffs' counsel denies the repetitive claims made in the pending motions of a scheme to assure that Mr. Gentile ended up in jail. This Point II should be

read in tandem with Point III discussing the nature of civil arrest and the Fugitive Disentitlement Doctrine.

A common thread running through the conspiracy theories advanced are that Plaintiffs' counsel, and I, David Lopez, in particular, bear some sort of *animus* toward Mr. Gentile. I do not. I have had minimal direct personal contact with him.

The first time I met him was at his deposition early in the case. My colleague, Miriam Tauber, conducted the bulk of the examination, and I consulted with her during its course and examined Mr. Gentile for, at most, five minutes on some inconsequential point.

The second time I met Mr. Gentile was at the inquest conducted by Magistrate Lehrberger. Mr. Gentile gave direct testimony of perhaps three hours. He led off by recalling his service to the FBI in the role of a confidential informant in a sting operation. An individual had approached him to participate in a pump and dump stock manipulation, and the FBI persuaded him to cooperate with the manipulator while acting as their informant.

When it came to cross-examination I took the lead for perhaps fifteen minutes. I began by asking him why, in a short-swing trading case, his testimony began by focusing on his service to law enforcement. My questioning brought out that the FBI had detained him at an airport on his return from a night on the town and provided him with overnight accommodations in a cell. They were under the impression that he was associating with the manipulator, and they gave him a choice of cooperating with the agency as an informant or being arrested himself. He chose to volunteer. Later, as his service to the government stretched out over weeks and months, he surreptitiously recorded meeting with his handlers and then, to free himself of further participation in acting as a conspirator and informing, he attempted to use the threat of revealing his tape recordings to embarrass the agents. He was indicted for crimes preceding the beginning of his

13

cooperation and was released from his obligations when the judge ruled that the statute of limitations had expired on the acts with which he was charged.

I then sat down, and Ms. Tauber conducted the remainder of his examination. The inquest ultimately produced a finding of liability and damages that now, with accumulated interest, approximate $18,000,000.

Plaintiffs' counsel are lawyers doing our jobs on behalf of the Plaintiffs, our clients. Neither of us has had any interaction with Mr. Gentile outside of these cases. Neither of us bears any personal *animus* toward Mr. Gentile. We suspect it may not be mutual.

For reasons explained at Point III, the conspiracies Mr. Gentile spins to explain the mishaps of non-publication of the notice in the Dubai newspaper are structurally pointless.

## POINT III.

### THE MOTIONS SHOW A LACK OF UNDERSTANDING OF <u>CIVIL ARREST AND THE FUGITIVE DISENTITLEMENT DOCTRINE</u>

Civil arrest is not punitive. It is a procedural device to bring a recalcitrant defendant into the physical jurisdiction of the court. Once that is accomplished and the recalcitrant defendant obeys the orders of the court the arrest is terminated. The recalcitrant defendant has the key to his jail cell in his hand, meaning he has the power to procure his own freedom at a time of his own choosing.

The Fugitive Disentitlement Doctrine is a rule of law that allows an appellate court to dismiss an appeal without reaching the merits if the appellant absconds during the pendency of the appeal. The rationale for the rule is that judicial resources should not be squandered on the case of an appellant who absconds thereby demonstrating that he will honor the court's decision only if it is in his favor and that there can be no assurance that the absconding appellant will obey the court's rulings if they are noy to his liking.

14

The existence of a warrant for civil arrest is not a requirement for application of the doctrine. What needs to be demonstrated is flight of the appellant during the pendency of the appeal.

The two movants, Messrs. Ford and Gentile, have each advanced conspiracy theories in which Plaintiffs' counsel have maliciously sought to create a fabricated record of Mr. Gentile's appearing to have absented himself from post-judgment proceedings in these cases so that he might be arrested to invoke or enhance application of the fugitive disentitlement doctrine. The defect with this storytelling is that it makes no sense to conspire to clap Mr. Gentile in civil arrest irons. Arrest does not enhance the case for disentitlement.

Plaintiffs' counsel placed before the Second Circuit in support of their motions for fugitive disentitlement a transcript of the conference held in open Court on Plaintiffs' motion to compel, at which Your Honor permitted the Plaintiffs to move for the civil contempt order and bench warrant. The Second Circuit denied Plaintiffs' motion without prejudice to Plaintiffs' renewing the argument in responsive briefing, which Plaintiffs have done.

Mr. Gentile has since come out of hiding because he has become aware of Plaintiffs' argument for disentitlement. His attempt to make a special appearance limited to challenging the arrest warrant is of a piece with his attempting to stand clear of the Court's physical jurisdiction. What is developing is a dawning realization by Mr. Gentile that the Court has *in personam* jurisdiction over Mr. Gentile, as Your Honor held, and that he cannot alter that through a purported limited appearance.

What the Court does not have, and what I predict it will not easily obtain, is physical jurisdiction over the person of Mr. Gentile.

15

Mr. Gentile's Motion for Reconsideration of Your Honor's Jurisdiction Order is a harbinger of what is to come: a backtracking and withdrawal of recent showings of cooperation from Mr. Gentile in subjecting himself to examination as a judgment debtor and fugitive.

## POINT IV.

### MR. GENTILE'S OFFER TO BE DEPOSED IN DUBAI IN COMPLIANCE WITH EMIRATI LAW IS A POISONED CHALICE. PLAINTIFFS DECLINE.

Mr. Gentile has made no formal offer to be deposed but has alluded to such an offer as though previously made. His allusion is that he be examined in his attorney's office in Dubai in compliance with U.S. law, international law, and the law of the United Arab Emirates.

The injection of Emirati law into the gathering of testimony to be used in the United States in these cases is the offer of a poisoned chalice. The reference to the law of the United Arab Emirates would allow a foreign court to interject a body of law other than the Federal Rules of Civil Procedure to control the manner of gathering and the scope of admissible evidence. Neither is acceptable to the Plaintiffs.

As we have learned from bitter experience, the law of the United Arab Emirates can differ materially from the law of the United States in matters as basic as the placement of legal advertising. Neither Plaintiffs' counsel nor, I venture to say, Your Honor, is versed in Emirati law and practice and giving to a court in the Emirates a voice in the conduct of an examination of a judgment debtor for use in the United States would be a sure opening to endless disputation.

As to compliance with international law, what international law are we specifically talking about? And what is the identity and address of the court that will resolve disputes?

Plaintiffs reject Mr. Gentile's offer as an attempted denial of due process to them. In the alternative, we request a venue within the Southern District of New York, where the

16

judgments were rendered, and under the Federal Rules of Civil Procedure, which control the conduct of this case, and we propose that discovery of the judgment debtor happen soon.

**POINT V.**

**SHOULD THE COURT FIND SANCTIONS WARRANTED,
THE $100,000 PENALTY PROPOSED BY MR. FORD
IS WHOLLY DISPROPORTIONATE TO ANY INDENTIFIABLE HARM.**

The imposition of sanctions is a matter committed to the sound discretion of the court. Your Honor, even if you find a fault, may choose to excuse it and impose no sanction whatsoever. *See, e.g., Ipcon Collections LLC v. Costco Wholesale Corp.* 698 F.3d 58, 63 (2d Cir. 2012). Under *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990), the decision to award or decline sanctions is reviewed for an abuse of discretion. *See also Perez v. Posse Comitatus,* 373 F.3d 321, 325-27 (2d Cir. 2004) (district court's ruling that, even if violation had occurred, it would exercise its discretion not to impose sanctions, is reviewable only for abuse of that discretion). *See generally* 2 Moore's Federal Practice §11.28[4](b) (Matthew Bender 3rd ed.)

**A. Redundant Alternative Methods of Service Were Proposed and Ordered**

The violations at issue consist of failure to follow-up to assure that publication had taken place and failure to timely notify the court that it had not. Mr. Ford would, without evidence, go further and describes this as a willful and knowing lie presumably intended to deprive Mr. Gentile of his right to due process by not notifying him of the pending motion for his civil arrest and part of a scheme to assure Mr. Gentile's arrest. Keep in mind the Mr. Ford was one of Mr. Gentile's past and present attorneys on whom service of the notice was directly made.

Divining another person's intent is hardly an exact science but in the absence of direct evidence a look at the circumstances of my actions or omissions might be helpful.

17

1.  I had proposed to the court publication as one of several means to make probable notification of Mr. Gentile of the pendency of a motion for his civil arrest. The court had so ordered it.

2.  What possible motive could I have had to knowingly sabotage implementation of my proposal?

3.  Additional forms of notice included service by mail on the proponent of this motion for sanctions, Adam Ford, and on Thomas Fleming, Mr. Gentile's attorney of record then and now, both of whom were also receiving notice by ECF. How is this consonant with a desire to keep Mr. Gentile in the dark? And by what mechanism is knowledge imparted by actual service by mail on two members of the bar a concealment of that knowledge?

4.  Courts in this District have repeatedly held that substituted service on attorneys representing the person to be notified in another action provides actual notice and comports with due process, as discussed at Point I.

5.  The Ford firm, at the time and continuing to this date, are attorneys of record to Mr. Gentile in the SEC Case. The SEC Case involved a jury trial at which Mr. Gentile testified over three days. It produced a jury verdict of liability. Damages are currently being weighed, with a Magistrate Judge's Recommendation for an aggregate of upwards of $15,000,000 spread over several counts.

6.  Mr. Fleming is the attorney of record for Mr. Gentile in these cases and his appellate lawyer on his appeal of the Court's judgment to the Second Circuit. Mr. Fleming and Mr. Ford were both served pursuant to the Substituted Service Order and were additionally notified of all case filings in this case by ECF.

To concoct an accusation of my scheming to keep Mr. Gentile in the dark as to the pendency of a motion for issuance of a bench warrant for his civil arrest while assuring that his lawyers were notified is a leap of creative imagination beyond everyday understanding.

Mr. Ford's fevered accusations are not a substitute for evidence of malign intent, and he has presented none.

**B.  Plaintiffs' Counsel's Errors Were Harmless**

Without seeking to diminish or trivialize the seriousness of the charges made against Plaintiffs' counsel, a sober look of the harm caused by non-publication turns up little. Mr. Gentile has been induced to appear *pro se* and his attempt to diminish the Court's *in personam*

18

jurisdiction has been rejected. He continues in contempt of an outstanding order compelling him to submit to examination as a judgment debtor, but he purports to be willing to purge himself, the means of his doing so seeming to be in negotiation. The warrant has not been executed, and Mr. Gentile has not been arrested or detained. Assuming good faith, the matter now seems to be progressing towards resolution.

Ford proposes a $100,000 sanction, payable to a charity of the Firm's choosing, purportedly arriving at this weighty punishment by looking to the billing value of time he estimates that his Firm expended due to the issuance of the warrant for Mr. Gentile's civil arrest. There are many reasons why this suggestion is arbitrary and wholly disproportionate and at odds with the facts.

1. Discovery was diligently overseen by Magistrate Judge Lehrberger with repeated motion practice made necessary by Ford's assertions of privilege based on the outstanding arrest order, which were overruled.

2. Ford offers no means of verification of time claimed to have been expended or its purported value.

3. Ford offers no means of determining what tasks are included in the estimate, but it appears to include all time expended in fulfilling the Firm's discovery obligations relating to the judgment, not limited to the failure of publication. Those expenditures were incurred because of an obligation to honor a subpoena seeking Mr. Gentile's whereabouts to compel Mr. Gentile to be brought before the Court to answer for a judgment; not because there was a failure to publish information actually known to the Firm.

4. The failure of publication caused no measurable harm to the Firm nor to Mr. Gentile. The warrant was not executed. Mr. Gentile was not arrested. Ford incurred no cost whatsoever from non-service.

5. Payment by Plaintiffs' counsel to a charity of Ford's choosing is inequitable. If there is to be a choice of charitable recipient, Plaintiffs' counsel proposes to be allowed to make the choice of public charity with the Court's approval.

C. **No Probability of Repetition**

I, David Lopez, as the one of Plaintiffs' counsel accused of the bulk of the supposedly sanctionable conduct, am 83 years old. I have practiced law since 1966 and have never previously been the subject of a sanctions application. I have never been the subject of any other bar discipline. I have never been cited for a parking violation in proximity to a courthouse. I am of good professional repute.

One of the objects of sanctions is to discourage a repetition of the targeted conduct. The probability of my ever again taking for granted that even so simple an act as publishing a legal notice in a foreign newspaper can be done without engaging local counsel is zero. So much so that the possibility of my agreeing to have Mr. Gentile be examined as a judgment debtor while physically in the United Arabe Emirates and subject to its laws is zero. I do not know the ins and outs of Emirati discovery practice, and I will not rely on a wing and a prayer.

I am embarrassed and contrite that my lapse has allowed this distraction to arise and the likelihood that there will be a repetition is *nil*, sanctions or not. I consign the outcome of this proceeding, without further defense, to the sound discretion of the Court.

**POINT VI.**

**MR. GENTILE'S MOTION FOR RECONSIDERATION OF
THE COURT'S JURISDICTION ORDER SHOULD BE DENIED.**

S.D.N.Y. Local Civil Rule 6.3 requires that a motion for reconsideration be accompanied by a brief "concisely identifying the matters or controlling decisions which the moving party believes the court has overlooked." The decision to grant reconsideration is subject to the Court's discretion. *See Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 376 (2d Cir. 2024) (denial of reconsideration reviewed for abuse of discretion). The Court's Jurisdiction Order (*Avalon* Dkt. 404) was correct, and reconsideration should be denied.

20

**(1)** Mr. Gentile appears to believe that "the Court overlooked that Defendant raised improper venue in his very first filing in 2018." Judge Broderick overruled Mr. Gentile's objections to venue and held venue was proper in this District in a decision and order denying Mr. Gentile's motion to dismiss early on in this case. (*Avalon* Dkt. 35.) Your Honor subsequently denied Mr. Gentile's later motion to dismiss for lack of jurisdiction, which he filed in connection with the liquidation of Mintbroker, his wholly owned brokerage firm and co-defendant in these cases. (Dkt. 139.) Mr. Gentile is currently pursuing an appeal of the Court's final judgment in these cases but has not appealed the Court's decisions on either venue or personal jurisdiction.

**(2)** Mr. Gentile appears to believe the Court misconstrued its own Order for Substituted Service by treating the various ordered methods as alternative rather than subordinate to service by publication. It would be contrary to common sense to provide for service by every which-way intending instead for there to be only one way. The object of the exercise was to provide Mr. Gentile with notice comporting with due process; and actual notice was provided to Mr. Gentile as ordered, specifically through his lawyers.

**(3)** Mr. Gentile appears to believe the Court misconstrued his attempt to enter a limited appearance as consent to jurisdiction. Mr. Gentile may believe whatever he likes, but the jurisdiction of the Court over his person does not require his consent. It was established years ago by service of process followed by his appearance in and continued litigation of this case through counsel, and he has no power to alter that fact by his say-so. His refusal to obey the Court's orders combined with his liquidation of U.S. assets and his physical relocation to Dubai make him a fugitive. If Mr. Gentile does not like that description, he is

free to return to the United States and obey the Court's orders thereby terminating the arrest warrant and his fugitive status.

**POINT VII.**

**ACCUSATIONS REGARDING NICHOLAS ABADIOTAKIS AND COUNSEL'S SUPPOSED "UNAUTHORIZED PRACTICE OF LAW" IN FLORIDA ARE BASELESS**

Nicholas Abadiotakis is an individual who submitted an affidavit in support of gentile's opposition to the Magistrates R&R and who currently serves as the trustee of one or more trusts established for Mr. Gentile's benefit. Mr. Abadiotakis, in his supporting letter, wrote as a satisfied customer of Mr. Gentile's brokerage and did not in any way identify himself as a trusted confederate.

One such trust is the current owner of SpeedTrader, a New York brokerage founded by Mr. Gentile. According to post-judgment testimony from the current CEO of SpeedTrader (which the Court ordered at *Avalon* Dkt. 313), Mr. Abadiotakis makes executive hiring and strategic decisions for the company. Plaintiffs have sent enforcement subpoenas to Mr. Abadiotakis and intend to move to compel him to respond.

Plaintiffs described the relationship between Messrs. Gentile and Abadiotakis in requesting the courts permission to register the Judgment in the Southern District of Florida, which Your Honor granted. (Order, *Avalon* Dkt. 339.) Plaintiffs proceeded to register the judgment as proposed and ordered, resulting in the opening of "miscellaneous proceedings" assigned Case No. 24-MC-23707 (S.D. Fla.)

Plaintiffs' counsel was not censured for practicing law in Florida without a license. Instead, upon registering the Judgments, Plaintiffs' counsel received a letter from the Southern District of Florida Clerk of Court that they would be required to obtain local counsel to appear *pro hac vice* in the "miscellaneous proceeding" opened in that District to reflect the registration. It is

22

this letter that Ford mischaracterizes as a censure of Plaintiffs' counsel. (Ford also erroneously claims that the letter was entered in the SEC case; the referenced letter was in fact filed on the dockets of the miscellaneous proceeding opened when Plaintiffs registered the Judgments in that District, as the Court permitted.)

Plaintiffs assure the Court that if they intend to appear in the Southern District of Florida in any case or for any reason, including to enforce the Judgments via motion practice in the "miscellaneous proceedings" opened when the Judgments were registered, they will obtain local counsel in accordance with the local rules of that court for *pro hac vice* practice. Neither of Plaintiffs' counsel has ever been deemed to be in violation of any local rules or sanctioned by any court. Ford's suggestion otherwise is based solely on his misunderstanding and/or mischaracterization of a form letter advising Plaintiffs' counsel of *pro hac vice* requirements in proceedings opened with the Court's approval.

## <u>CONCLUSION</u>

For the foregoing reasons, the pending motions should be denied.

Respectfully submitted,

*/s/ David Lopez*
David Lopez
Miriam Tauber
*Attorneys for Plaintiffs*

23