# MIRIAM TAUBER LAW

885 Park Ave. 2A • New York NY 10075
MiriamTauberLaw@gmail.com • (323) 790-4881

October 9, 2025

**Via ECF**
Hon Robert W. Lehrburger, U.S.M.J. (S.D.N.Y.)

<u>Re</u>:            *Avalon Holdings Corp. v. Gentile*, et. al., 18-cv-7921
*Related Case:*   *New Concept Energy, Inc. v. Gentile*, et. al., 18-cv-8896

**Motion to Compel Mr. Gentile
to Respond to Plaintiff's Document Subpoena and to Overrule His Objections**

Your Honor:

We write pursuant to Judge Cote's Order at *Avalon* Dkt. 427, which ordered Mr. Gentile to appear for an in-person deposition within the Southern District of New York by October 21, 2025, and referred all further enforcement discovery disputes to Your Honor.

Judge Cote's Order at *Avalon* Dkt. 433 granted the parties' joint request to extend Mr. Gentile's deposition deadline until November 10, 2025, to provide time for Mr. Gentile to produce documents responsive to Avalon's outstanding document subpoena prior to the deposition.

Plaintiffs ask Your Honor to compel Mr. Gentile to produce all documents responsive to the Subpoena and overrule the following objections he has raised. A copy of the outstanding subpoena was filed at *Avalon* Dkts. 321-2 and 413-1 and is attached again to this Motion for the Court's reference. The parties have conferred on these objections and were unable to reach an agreement.

Since then, Mr. Gentile has also asked that Plaintiffs waive their right to the in-person deposition ordered by Judge Cote and agree to a remote deposition of Mr. Gentile, who proposes to phone in from Dubai. Plaintiffs refuse to waive their right to depose Mr. Gentile in person and within this District as the Court expressly ordered.

Mr. Gentile has alternatively asked Plaintiffs to pay his travel expenses from Dubai for the deposition. Plaintiffs have declined and seek a ruling requiring Mr. Gentile to pay his own expenses given his decision to remain in and litigate from Dubai, outside of the Court's jurisdiction, while purporting to appeal the Court's outstanding, unpaid, and unbonded Judgments against him (and various post-Judgment orders), in contravention of the "fugitive disentitlement" disentitlement doctrine, *see Empire Blue Cross Blue Shield v. Finkelstein*, 111 F.3d 278 (2d Cir. 1997).

1. **Timeframe.** The subpoena calls for production of documents dating from August 2018 through the present. Mr. Gentile asserts that time frame is overbroad and proposes to limit the production to documents dating from March 2023, i.e., one year prior to the entry of the final Judgments in these cases.

The time period covered by the subpoena is from the time the underlying actions were filed, in August 2018, through the present. This is consistent with the standard time frame provided for judgment enforcement subpoenas issued in accordance with New York procedures, as reflected

in the form document subpoena to judgment debtor included in the NYSBA's desk book on Debt Collection & Judgment Enforcement (2023-2024 ed.), at Form ENF-11 (attached for reference) (providing a time frame of 6 years prior to the subpoena date).

The time period covered by Plaintiffs' subpoena is also consistent with the time frame of enforcement discovery ordered by federal courts in this District (which incorporate New York enforcement procedures pursuant to F.R.C.P. 69). *See, e.g., Benthos Master Fund, Ltd. v. Etra,* No. 20 Civ. 3384 (VEC), 2022 WL 4467249, at *8 (S.D.N.Y. Sept. 26, 2022) (overruling objection to providing information "going back to August 1, 2017, even though the parties only began their business engagement in August 2018. This objection ignores settled law that a judgment-creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor, by its nature, that inquiry has nothing to do with when the parties first began transacting with one another"); *see also SEC v. Verdiramo,* No. 10 CIV. 1888 (RMB), 2013 WL 5882918, at *3 (S.D.N.Y. Oct. 29, 2013) (ordering production of documents dating from 6 years prior to filing of complaint in 2010, "ie, March 2004," in connection with enforcement of judgment entered in 2013.)

The time frame of permissible enforcement discovery permitted is informed by the concern for identifying any fraudulent asset transfers that may have been made in an effort to avoid payment on the underlying claims for which the judgment was entered. *See id.; see also Benthos*, 2022 WL 4467249, at **3-4 (discussing the defendant's long history of avoiding enforcement discovery, resulting in an order threatening a finding of contempt and imprisonment pending compliance).

Mr. Gentile may have begun transferring assets into accounts held in other names or outside of the Court's jurisdiction for years prior to, and in anticipation of, the Court's entry of the final Judgments, while these cases were pending. Plaintiffs remind Your Honor that the Court entered summary judgment in Plaintiffs' favor on the issue of Mr. Gentile's §16(b) liability on April 8, 2022, a year before Mr. Gentile's proposed discovery response time frame beginning in March 2023, and that Mr. Gentile was also then under investigation by both the Bahamian Securities Commission and the U.S. SEC.

Plaintiffs also note that Request #9 calls for Mr. Gentile to produce all trust instruments. Plaintiffs are aware of several trusts established by Mr. Gentile. For the avoidance of doubt, Plaintiffs request that the Court specifically order Mr. Gentile to identify and produce trust documents (including any financial information relating to the conduct of the trusts, or the trusts' assets, income and disbursements): (i) for any trusts established since the inception of these actions; and (ii) for any active trusts, regardless of when established.

2. **Third-Party/Spousal Assets.** Plaintiffs' Requests call for production of accounts and assets held by the Judgment Debtor, individually or in connection with any other person, including his spouse. Gentile objects to requests for his "spouse's property or unrelated third-party accounts."

Marital assets are subject to execution. Accounts and assets held in the name of "third party" entities that are owned and controlled by Mr. Gentile are discoverable and subject to

2

execution. Accounts or assets held in the name of Mr. Gentile's spouse or by "third party" affiliates of Mr. Gentile are subject to execution if funded by Mr. Gentile and/or used to make payments on his behalf, or if transferred to Mr. Gentile's spouse following entry of the Judgments.

*See Verdiramo*, 2013 WL 5882918 (compelling production of information about accounts held in the name of corporate entities controlled by the debtor, and accounts held in the name of judgment debtor's spouse and other family members that were used to pay for the debtor's "personal expenses" and airline tickets); *see also Benthos*, 2013 WL 5882918, at *5 & n.7 (compelling production of information identifying the owners of accounts to which the judgment debtor disbursed funds from escrow accounts, and any accounts held by debtor's spouse and affiliates).

Plaintiffs are aware of dozens of corporate entities that are wholly owned and controlled by Mr. Gentile, many of which were reviewed at Mr. Gentile's depositions and in his testimony in these cases and in the SEC's case pending against him in Florida. Plaintiffs are also aware that Mr. Gentile has directed transfers of funds to some of these entities during the pendency of these cases, including in the months prior to the entry of final judgments and while Your Honor's Report & Recommendation on damages following the inquest was pending the Court's approval.

Discovery is permitted to determine whether these entities are alter-egos of Mr. Gentile, and/or whether any transfers to accounts held for Mr. Gentile's benefit in other names were fraudulent. *See, e.g., First City, Tex. Houston, N.A. v. Rafidain Bank,* 281 F.3d 48, 50 (2d Cir. 2002) (permitting discovery of information to determine whether various entities were an "alter ego" of judgment debtor.)

3. **Other Information.** Mr. Gentile objects to providing information other than "bank and brokerage accounts, real property, and business ownership interests." Mr. Gentile objects to Plaintiffs' requests for "educational degrees, professional licenses, memberships, general insurance, and similar categories" as irrelevant.

Judgment creditors are entitled to broad discovery of information that could lead to the identification of assets subject to execution. The information Plaintiffs request is relevant and routinely sought from judgment debtors in enforcement discovery, as reflected in the NYSBA form document subpoena attached. (*See* NYSBA Form ENF-11, Items #12, #13, #16, #18.)

The specific categories that Mr. Gentile objects to are relevant to Plaintiffs' judgment enforcement. For example, membership and professional license fees that may be paid by or for Mr. Gentile's benefit could instead be applied towards the Judgments. Insurance payouts that Mr. Gentile (or his spouse) might be entitled to could be executed on and diverted to pay the Judgments. This information should be produced.

4. **<u>Proposed Protective Order</u>**.

Plaintiffs consent to Mr. Gentile's request for entry of a protective order restricting the use of documents produced by Mr. Gentile containing sensitive financial information (e.g., Mr. Gentile's tax returns) to Plaintiffs' efforts to enforce the Judgments entered in these cases. For the sake of simplicity and in the interest of expediency, Plaintiffs propose that in ruling on this motion, Your Honor enter an order providing that documents produced in response to the Subpoena will be used only for that purpose.

Respectfully submitted,

*/s/ Miriam Tauber*

Miriam Tauber
David Lopez
*Attorneys for Plaintiffs*


cc:   Guy Gentile
      (via ECF & by email to: fightfightfigth@proton.me)

4