UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVALON HOLDINGS CORP.,<br><br>Plaintiff,<br>v.<br><br>GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD.,<br><br>Defendants. | No. 18-cv-7291 (DLC) (RJL)<br><br>ECF Case |

Related to:

| | |
|---|---|
| NEW CONCEPT ENERGY, INC.<br><br>Plaintiff,<br>v.<br><br>GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD.,<br><br>Defendants. | No. 18-cv-8896 (DLC) (RJL)<br><br>ECF Case |

**GENTILE'S REPLY MEMORANDUM IN SUPPORT OF CORRECTING
JUDGMENT: RULES 54(B), 60(a)**

  This reply presents a dispositive ground for relief. The March 20, 2024 "Final Judgment" (ECF 281) was entered while claims against co-defendant Mintbroker remained stayed and unresolved. In a multi-party case, Rule 54(b) requires an express "no just reason for delay" determination before any partial judgment can be final. No such certification was made. Plaintiffs' opposition does not cite a single authority excusing that omission; instead, it confirms the defect by acknowledging Mintbroker's claims remained pending, see DKT 456 p. 4. An uncertified, partial judgment is interlocutory. It cannot be enforced as "final," and any post-judgment measures premised upon it must be unwound.

  The path forward is straightforward and preserves both procedural integrity and inter-court harmony. The Court should: (i) vacate the March 20, 2024 judgment and any enforcement orders dependent on it; (ii) re-enter a proper judgment against me with an express Rule 54(b) determination. Plaintiffs' rhetoric cannot cure the missing Rule 54(b) certification.

**RULE 54(b) DEMANDS CERTIFICATION
PLAINTIFFS OFFER NO COUNTER-AUTHORITY**

1

Federal Rule of Civil Procedure 54(b) provides, in no uncertain terms, that in an action involving multiple claims or multiple parties, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.". This requirement is not optional; it is the *sine qua non* of finality in multi-party or multi-claim cases. The Supreme Court has long held that a judgment disposing of fewer than all claims or parties is not final absent strict compliance with Rule 54(b). *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435–37 (1956) (district court must expressly determine "no just reason for delay" and direct entry of judgment for a partial judgment to be final); *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742–43 (1976) (order adjudicating liability against one party, with claims against another party still pending, was not a final decision and could not be appealed where no Rule 54(b) certification was entered). In short, without an express Rule 54(b) certification, a partial disposition remains interlocutory.. See *Liberty Mutual,* 424 U.S. at 742 (claims remained and the District Court had not directed the entry of a final judgment under Rule 54(b)).

Plaintiffs do not and cannot dispute that this action involved multiple defendants (Gentile and Mintbroker) alleged to be jointly liable under §16(b). Nor do they contest that the case was explicitly stayed as to Mintbroker during its Bahamian liquidation proceedings (and that stay was never lifted). See R&R (ECF No. 240) at 2 (noting the action "is stayed as to Mintbroker" due to the foreign liquidation); Order (ECF No. 178) (imposing the stay). The March 20, 2024 judgment (ECF No. 281) thus resolved the claims against me while leaving the claims against Mintbroker unadjudicated. Absent a Rule 54(b) certification—which this Court never made—such an order is interlocutory. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980) (Rule 54(b) was adopted to strike a balance between the undesirability of piecemeal appeals and the need for expeditious review in multi-party cases, and requires an "express determination" by the district court). The rule tolerates no exception: a court's failure to expressly certify means the judgment is not final, no matter how much one party wishes it to be.

Plaintiffs' opposition does not cite a single case to counter this black-letter principle. They identify no authority suggesting that a stay or unresolved party can be ignored. They effectively concede the issue by insisting that the claims against Mintbroker were "stayed" and "remained pending" (Opp'n at 1) — which is precisely why Rule 54(b) certification was required before entering a final judgment against myself alone. No amount of rhetoric can circumvent the plain language of the Rule. See *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991) (Rule 54(b) certification is to be used "only in the infrequent harsh case," not as a routine matter, reflecting the strong policy against

piecemeal appeals). Plaintiffs' failure to address Rule 54(b) head-on is a telling silence that effectively concedes its applicability and their oversight.

## THE JUDGMENT AGAINST ME IS INVALID AND MUST BE VACATED; A PROPER FINAL JUDGMENT REQUIRES ADJUDICATION OR DISMISSAL OF MINTBROKER

Plaintiffs attempt to salvage the March 20, 2024 judgment by pointing to events that occurred long after its entry—namely, Mintbroker's dissolution in the Bahamas on October 15, 2025, and a purported stipulation of dismissal filed over two weeks later (ECF No. 456-2). This *post ho*c maneuvering does not cure the defect. Finality is assessed at the time judgment is entered, not retroactively after an appeal. *Grand River Enterprises Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 164-65 (2d Cir. 2005) for the proposition that the time of the entry of judgment is the critical time for determining whether a judgment is final; *Digital Equipment Corp. v. Desktop Directr, IN, 511 US 863 (1994), supporting that* subsequent events cannot retroactively "transform an interlocutory order into a final judgment. At the time the judgment here [ECF No. 281] was entered, Mintbroker was still a party, the stay was in effect, and no Rule 54(b) certification existed. The judgment was therefore interlocutory on its face. Post-judgment developments—no matter how conclusive—cannot turn a non-final judgment into a final judgment.

Even accepting Mintbroker's recent dissolution and the parties' belated stipulation, those developments highlight the procedural missteps rather than cure them. Plaintiffs effectively acknowledge that they abandoned any intent to pursue Mintbroker long ago (they admittedly filed no claim in the Bahamas liquidation and took no action to lift the stay), yet they only after I filed this motion did they rush to formalize Mintbroker's dismissal. Rule 54(b) was designed to prevent exactly this sort of procedural ambush. See *Sherrod v. Walmart,* No. 21-3428 (6th Cir. 2024) citing to 1*0 Wright & Miller, Fed. Prac. & Pro*c. Civ. § 2654 (4th ed. 2023) (the certification requirement is "jurisdictional in nature" and cannot be ignored without risking an invalid judgment; "Generally speaking, a final decision is one that disposes of all claims and parties in a case. Adler v. Elk Glenn, LLC, 758 F.3d 737, 739 (6th Cir. 2014) (per curiam) (Sutton, J.,concurring" ).

Moreover, Plaintiffs' handling of Mintbroker's dismissal raises its own concerns. By Order of the Supreme Court of the Bahamas dated October 15, 2025, Mintbroker was formally dissolved, ceasing to exist as a legal entity. (Opp'n Ex. A). Nonetheless, on November 5, 2025, Plaintiffs and Mintbroker's

Page 3

former liquidators (through U.S. counsel Warren Gluck) filed a "Stipulation" purporting to dismiss all claims against Mintbroker with prejudice under FRCP. 41(a)(1)(A)(ii). (Opp'n Ex. B). That rule does not permit voluntary dismissal by stipulation for a Bahamian entity. Here, Mintbroker had no legal existence on November 5, 2025 to appear or sign—its dissolution on October 15, 2025[1] means it had no capacity to act. A dissolved Bahamian corporation cannot litigate or stipulate to anything absent specific statutory authority[2], which is not present here. Thus, the stipulation is *void ab initio*. The proper mechanism to terminate the claims against a dissolved Bahamian party would be a Bahamian court order to enable a Rule 41(a)(2) order ("on terms that the court considers proper"), not a stipulation that Mintbroker could not validly join. By submitting a stipulation "signed" on behalf of a non-existent entity, Plaintiffs' counsel misrepresented the law to this Court. This only compounds the earlier oversight and constitutes further grounds for relief under Rule 60(b)(3) (relief for "fraud, misrepresentation, or misconduct by an opposing party"). The Court should not countenance procedural sleight-of-hand. If the Court must deem the stipulation ineffective due to Mintbroker's dissolution; it should instead enter an order dismissing Mintbroker with prejudice pursuant to Rule 41(a)(2), thereby formally resolving the last remaining party and clearing the path for a proper final judgment. This Court needs to reject the hoodwinking of the Plaintiffs.

Plaintiffs' failure to address Mintbroker's status until now is especially glaring given Judge Cote's directive that they keep the Court informed about the Bahamian liquidation. See Order (ECF No. 168, Nov. 16, 2022) (ordering joint letter by Jan. 13, 2023 on status of Mintbroker's liquidation and every 180 days thereafter). No such updates were provided. Plaintiffs and their counsel were content to let the issue lie dormant while pushing forward to enforce the judgment against me, knowing full well that Mintbroker's involvement lingered unresolved. This lack of candor—failing to inform the Court that Mintbroker was being dissolved overseas while trumpeting the "finality" of the Gentile judgment—undermines the integrity of the proceedings. It is a deliberate "mistake" justifying relief under Rule 60(b)(1), and arguably a Rule 60(b)(3) violation as well. The Court has the inherent power and duty to ensure its judgments rest on a solid jurisdictional foundation, not on counsel's strategic omissions.

---

[1] I and the Court learned of Mintbroker's dissolution on October 15, 2025, at the same time, based on Plaintiffs' reply to this motion. Mr. Glock, who was under a standing court order to keep the Court informed, failed to do so. Mintbroker was alive when a Judgement was entered against me, and the case against Mintbroker is still live until the court dismisses it.

[2] Under Bahamian law, which this court is fully capable of giving judicial notice, Howard Gluck does not possess the ability to represent MintBroker post liquidation. See Companies (Winding-Up Amendment) Act 2011, Sections 180 and 254; Companies Liquidation Rules, Rule 77; Re Samson Estates Ltd. BHS J. No. 123 Re Cambridge-Tennessee Corp. BHS J. No. 262 (2017); In re Richmond Court Ltd. (No. 2) BHS J. No. 54; Insolvency proceedings under Bahamas Companies Act, Ch. 308.

The Court retains the power under Rule 60(a) or 60(b) to vacate the March 20, 2024 judgment and all enforcement orders predicated on it, and then re-enter a proper judgment once Mintbroker is formally dismissed and the case is truly resolved as to all parties. Attempting to paper over the issue by "deeming" the judgment final after the fact (without formal certification) would invite further jurisdictional quagmires. Instead, the Court should take the straightforward route: vacate the flawed judgment, and enter a new judgment against me with an express Rule 54(b) determination that there is no just reason for delay. This approach protects the integrity of the judicial process and ensures a solid procedural foundation.

## PLAINTIFFS' COUNSEL RESORT TO INVECTIVE BECAUSE THEY CANNOT REFUTE THE PROCEDURAL DEFECT

It is noteworthy that Plaintiffs' opposition devotes more energy to attacking my character and litigation conduct than to discussing Rule 54(b) or other points of law. Miriam Tauber and David Lopez are experienced securities litigators who have multiple §16(b) cases prior to and since 2018 the year they commenced this action. They should be well-versed in the final judgment rule and the requirement of 54(b) in multi-party litigation. Yet their opposition brief falsely accuses me of "market manipulation," "evasion of discovery," "fugitively" and so forth (Opp'n at 2–3, 6–7), none of which is responsive to the Rule 54(b) issue. They deride this motion as "specious" and "frivolous" (Opp'n at 3), insinuating that I am trying to play "heads I win, tails you lose" (Opp'n at 7). But name-calling is not a legal rebuttal. Notably, nowhere do Plaintiffs cite any legal authority to counter the straightforward application of Rule 54(b) discussed above. They implicitly admit that Mintbroker's claims were pending and unadjudicated, which is all I need to show to prevail on the jurisdictional point. Bluster cannot change that reality.

*Pro se* litigants have a right to invoke procedural rules and to be heard on the merits of their arguments, even if those arguments inconvenience the opposing side's narrative of the case. See *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*) (*pro se* pleadings are to be liberally construed and held to less stringent standards to ensure fairness). I have diligently combed the record and the law to raise a fundamental jurisdictional issue that Plaintiffs' counsel should have addressed themselves. It is telling that after years of litigation, including an appeal, it is the *pro se* defendant-myself- who has pointed out the lack of a final judgment. Attorneys, especially those as seasoned as Tauber and Lopez, are expected to engage with the actual rules and precedent. If the law is on their side, they cite it. Here, the silence

speaks volumes: Rule 54(b) is against them, so they prefer to talk about my alleged conduct. The Court should decide this motion on the law and facts, not on counsel's invective.

## UNEQUAL ENFORCEMENT OF CIVILITY STANDARDS

In its September 23, 2025 Order (ECF No. 427), this Court admonished me that my filings contained "particularly harsh language that is customarily not tolerated when used by attorneys," and cited *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975), for the principle that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom." This was despite any recognition that the Plaintiffs' submission contained indignities against me first.

The Court's admonition highlights an imbalance in how civility standards are being enforced in these proceedings. Plaintiffs' counsel, Ms. Miriam Tauber and Mr. David Lopez, have repeatedly used personal, inflammatory, and accusatory language toward me—labeling me a "fugitive," a "manipulator," and a "bad-faith actor," among other pejoratives—both in their written submissions, oral presentations, and to me personally by email. These characterizations, which attack my integrity, have gone unremarked upon by the Court despite being more "harsh" as the phrasing attributed to me.

The disparity in tone policing creates the appearance of unequal treatment between represented and *pro se* litigants. A self-represented party is bound by the same rules of procedure and courtesy as an attorney, but they are also entitled to the same protection from *ad hominem* rhetoric and professional discourtesy. The Federal Rules of Civil Procedure and the Court's inherent authority require civility from all participants. See, e.g., *In re Snyder*, 472 U.S. 634, 644 (1985) (attorneys are officers of the court and "must maintain a standard of conduct that upholds the dignity of the judicial process"); *United States v. Wunsch,* 84 F.3d 1110, 1115 (9th Cir. 1996) (civility obligations extend equally to government and private counsel). As these authorities recognize, decorum in judicial proceedings is not a one-way obligation imposed only on those who appear without counsel.

I respectfully submit that civility should be applied and expected evenhandedly. The Court's reminder under *Faretta* is noted and appreciated; at the same time, I request that the same professional courtesy and restraint be required of opposing counsel, whose filings have frequently used personal attacks.

## CONCLUSION

Rule 54(b) required an express determination and certification to make the March 20, 2024 judgment final in this multi-defendant case. That never happened. Consequently, the judgment was interlocutory, and the ongoing enforcement of that judgment is improper. Plaintiffs' eleventh-hour attempt to dismiss Mintbroker now cannot retroactively fix the Rule 54(b) issue. The appropriate remedy is to grant my motion and restore this case to a procedurally proper posture. Specifically, I respectfully request that the Court: (1) vacate the "Final Judgment" at ECF No. 281 (and any subsequent orders enforcing it) pursuant to Rules 54(b), 60(a), and 60(b) and (2) direct the entry of a new final judgment against me only, with an explicit Rule 54(b) certification for finality, thereby conclusively adjudicating all remaining claims and parties.

For all the foregoing reasons, my motion should be GRANTED. The Court should vacate the improper judgment, dismiss Mintbroker as a party, and enter a proper final judgment with Rule 54(b) certification.

Dated: November 10, 2025

Respectfully submitted,

/s/ Guy Gentile
Guy Gentile, Pro Se
P.O. Box 504377
Dubai, UAE
+971 58 590 2347
fightfightfight@proton.me

**Certificate of Service**

I hereby certify that on November 10, 2025, a true copy of the foregoing was served via CM/ECF on all counsel of record. AND TWO COPIES US MAIL TO THE COURT

/s/ Guy Gentile