**MANDATE**

24-999(L)
*Avalon Holdings Corp. v. Gentile*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of October, two thousand twenty-five.

PRESENT:

> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
>     *Circuit Judges.*

_____

AVALON HOLDINGS CORPORATION, NEW CONCEPT ENERGY, INC.,

    *Plaintiffs-Appellees*,

v.       Nos. 24-999 (L),
                            24-1002 (Con)

GUY GENTILE,

    *Defendant-Appellant*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/2025

**MANDATE ISSUED ON 11/19/2025**

MINTBROKER INTERNATIONAL, LTD.,

        *Defendant*.

_____

| | |
|---|---|
| **For Defendant-Appellant:** | Thomas J. Fleming, Kerrin TenEyck Klein, Olshan Frome Wolosky, LLP, New York, NY. |
| **For Plaintiffs-Appellees:** | David Lopez, Law Office of David Lopez, Southampton, NY; Miriam Tauber, Miriam Tauber Law PLLC, New York, NY. |

Appeals from judgments of the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 20, 2024 judgments of the district court are **AFFIRMED**.

Defendant-Appellant Guy Gentile appeals from judgments entered in favor of Plaintiffs-Appellees Avalon Holdings Corporation ("Avalon") and New Concept Energy, Inc. ("New Concept") on their claims for disgorgement of short-swing trading profits under section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). On appeal, Gentile principally argues that the district court improperly granted summary judgment despite the existence of genuine disputes of material fact regarding his pecuniary interest in the securities at issue.

2

He also contends that the district court miscalculated his short-swing profits and abused its discretion in awarding Plaintiffs prejudgment interest. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to resolve this appeal.

**I.  Background**

MintBroker International, Ltd. ("MintBroker") is a now-defunct broker-dealer that was formerly registered in the Bahamas. In 2017, Gentile – MintBroker's founder, director, and chief executive officer – began actively trading on MintBroker's behalf, engaging in proprietary day-trading for the company's benefit. That trading was primarily conducted through MintBroker's account at Interactive Brokers, a clearing firm.

MintBroker's day-trading included purchases of stock in Avalon and New Concept, two corporations traded publicly on the New York Stock Exchange. By July 27, 2018, MintBroker had acquired 1,922,095 shares in Avalon, which it then traded thousands of times before zeroing out its position by August 2018. MintBroker similarly disclosed a position of 1,073,713 shares in New Concept on June 29, 2018, only to trade the shares thousands of times before reducing its holdings to zero by September 2018. MintBroker used its account at Interactive

2

Brokers for all of its trading in the Avalon and New Concept stock at issue in this case.

Through separate actions filed in 2018, Plaintiffs alleged that Gentile and MintBroker's trading violated section 16(b) of the Exchange Act. Section 16(b) makes statutory insiders (including beneficial owners of more than ten percent of an issuer's equity securities) liable to the issuer for profits derived from purchases and sales of the issuer's securities within a six-month period, if the insider had a pecuniary interest in those securities. *See* 15 U.S.C. § 78p(b); 17 C.F.R. § 240.16a-1(a)(2).

The district court ultimately granted summary judgment in Plaintiffs' favor.[1] In particular, the district court concluded that the undisputed record showed that, as of the relevant time periods, Gentile and MintBroker qualified as statutory insiders because they were beneficial owners of more than ten percent of Avalon's and New Concept's shares. The district court also determined that because Gentile and Mintbroker had a pecuniary interest in the shares, they were liable to Plaintiffs for any profits derived from the purchases and sales of those

---

[1] These cases were initially assigned to Judge Vernon S. Broderick. Following Judge Broderick's grant of summary judgment in Plaintiffs' favor, the cases were reassigned to Judge Denise L. Cote.

3

shares. The district court then referred the case to Magistrate Judge Robert W. Lehrburger to determine "the exact period of time that [Gentile and MintBroker] were more-than-10% beneficial owners, as well as the calculation of damages." Sp. App'x at 25.

Just before the ensuing damages hearing, Gentile offered a set of previously undisclosed records containing line-by-line trading data pulled from MintBroker's internal record-keeping systems. According to Gentile, these records showed that most of MintBroker's trading in Avalon and New Concept stock was conducted on behalf of MintBroker's customers, rather than on a proprietary basis. Based on those trading records, Gentile's experts testified that Gentile and MintBroker were never beneficial owners of more than ten percent of New Concept's stock and that they lacked a pecuniary interest in much of the Avalon stock traded through MintBroker's Interactive Brokers accounts. As a result, Gentile's experts calculated the short-swing profits to be zero for the New Concept shares and just $1.2 million for the Avalon shares.

Following the hearing, Judge Lehrburger issued a Report and Recommendation concluding that Gentile's damages calculation based on the new trading records was fundamentally incompatible with the district court's

4

summary judgment ruling on liability. Judge Lehrburger also excluded the testimony and reports of Gentile's experts, which were based on the new trading records, as incompatible with the district court's prior summary judgment ruling and inadmissible under Federal Rule of Evidence 702. Judge Lehrburger then accepted Plaintiffs' otherwise-undisputed damages calculation, and recommended awarding disgorged profits in the amount of $6,235,908 for Avalon and $6,102,002 for New Concept. Judge Lehrburger also recommended awarding Plaintiffs prejudgment interest, to be calculated at the entry of final judgment.

On February 5, 2024, the district court adopted Judge Lehrburger's Report and Recommendation with certain modifications not relevant here. The district court then entered final judgment in favor of Plaintiffs and awarded disgorgement of Gentile's short-swing profits in the amounts recommended by Judge Lehrburger. The district court also awarded prejudgment interest to Avalon in the amount of $1,983,267 and to New Concept in the amount of $1,971,281. Gentile timely appealed.

## II.   Discussion

We review *de novo* a district court's grant of summary judgment, "construing all the evidence in the light most favorable to the non-movant and

5

drawing all reasonable inferences in that party's favor." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).[2] "We review the findings of a district court in connection with a damages award for clear error, and questions of law *de novo*." *Henry v. Oluwole*, 108 F.4th 45, 51 (2d Cir. 2024) (citation omitted). A district court's decision to award prejudgment interest and its determination of which interest rate to use are both reviewed for abuse of discretion. *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1071–72 (2d Cir. 1995).

### A. The District Court Properly Granted Summary Judgment on the Issue of Pecuniary Interest.

Gentile challenges the district court's determination at summary judgment that he held a pecuniary interest in the Avalon and New Concept shares traded through MintBroker's Interactive Brokers account. According to Gentile, genuine disputes of material fact precluded a grant of summary judgment on that issue. We disagree.

Under section 16(b) and its implementing regulations, a statutory insider is only liable for profits derived from transactions in securities in which the insider

---

[2] Although Gentile contends that the district court lacked subject matter jurisdiction on the ground that a violation of section 16(b), by itself, cannot support Article III standing, he concedes that this argument is squarely foreclosed by our precedent. *See Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 56 (2d Cir. 2024).

6

has a "pecuniary interest." *Roth ex rel. Estée Lauder Cos. v. LAL Fam. Corp.*, 138 F.4th 696, 704 (2d Cir. 2025). Under the applicable regulations, the term "pecuniary interest" means "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." 17 C.F.R. § 240.16a-1(a)(2)(i).

Gentile stipulated below that MintBroker's Interactive Brokers records reflected trading in the company's "proprietary" account and two subaccounts. Sp. App'x at 61. And Gentile failed to challenge the assertion in Plaintiffs' statement of material facts that he "had the authority to withdraw cash from the" Interactive Brokers accounts "at any time." App'x at 85.4. Indeed, Gentile did not deny that he "withdrew funds in an amount equal to the cash balance on all of MintBroker's Interactive [Brokers] accounts and the value of any marketable securities in the accounts, and transferred such funds to an account . . . owned and controlled by [him]." *Id.* Given these undisputed portions of the summary judgment record, the district court properly held that Gentile "had pecuniary interests" in the Avalon and New Concept shares traded through MintBroker's Interactive Brokers account because Gentile "had the opportunity to and did profit from them." Sp. App'x at 23.

7

## B. The District Court Properly Calculated Gentile's Short-Swing Profits.

Relying principally on the new trading records – which were not produced until after the district court's summary judgment ruling – Gentile argues that the district court erred in calculating the amount of his disgorgeable short-swing profits under section 16(b). Again, we disagree.

As the district court observed, Gentile's reliance on the new trading records, ostensibly for purposes of calculating damages, actually constituted an attempt to relitigate – under a new theory – the issues of beneficial ownership and pecuniary interest that the district court had already resolved at summary judgment.[3] The court therefore correctly treated Gentile's request to consider those records under the standard applicable to a motion for reconsideration. *See JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 101 (2d Cir. 2024) ("When a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, absent cogent and compelling reasons to the contrary." (internal quotation marks omitted)).

---

[3] As explained above, the district court properly granted summary judgment in Plaintiffs' favor on the issue of pecuniary interest. We therefore necessarily reject Gentile's alternative contention that the district court's summary judgment decision "did not deal with that issue" at all. Gentile Br. at 25.

8

Because Gentile could have timely obtained the new trading records through the exercise of reasonable diligence before the district court issued its summary judgment ruling, he failed to show that the new trading records constituted newly discovered evidence or that consideration of those records was necessary to avoid manifest injustice. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted)). Accordingly, the district court properly declined to consider the new trading records – and the expert testimony based on those records – in calculating the amount of Gentile's short-swing profits.

### C. The District Court Did Not Abuse Its Discretion in Awarding Prejudgment Interest.

Gentile further asserts that the district court abused its discretion in awarding Plaintiffs prejudgment interest. That contention has two parts: first, that the district court should not have awarded prejudgment interest at all without determining whether Gentile abused inside information; and second, that the district court erred in selecting the IRS underpayment rate as the basis for calculating the amount of such interest. We reject both arguments.

9

To begin, prejudgment interest "is generally awarded as part of § 16(b) recoveries." *Morales v. Freund*, 163 F.3d 763, 767 (2d Cir. 1999). And contrary to Gentile's suggestion, there is no rigid requirement that a district court consider whether a defendant abused inside information before granting prejudgment interest in a section 16(b) case. *See Blau v. Lehman*, 368 U.S. 403, 414 (1962) (explaining that prejudgment interest is "given in response to considerations of fairness" (internal quotation marks omitted)); *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (listing the general factors that district courts should consider when deciding whether to award prejudgment interest). Though evidence that an insider abused non-public information may be relevant, "the question of whether such interest should be given in a particular case is within the discretion of the trial court." *Morales*, 163 F.3d at 767. Thus, the mere fact that the district court did not assess whether Gentile abused inside information does not, by itself, constitute an abuse of discretion.

Gentile's argument that the district court improperly relied on the IRS underpayment rate is equally unpersuasive. Recognizing that disgorgement is "designed to strip a wrongdoer of its unlawful gains," we have previously "approved the use of the IRS underpayment rate in connection with

10

disgorgement" in the context of civil enforcement actions brought by the Securities and Exchange Commission. *Sec. & Exch. Comm'n v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996). The IRS underpayment rate, we explained, "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud." *Id.* For similar reasons, the IRS underpayment rate is generally well-suited to private actions for disgorgement of short-swing profits under section 16(b). *See Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 179 (2d Cir. 2012) (explaining that section 16(b) effectively transforms statutory insiders into "constructive trustees of the corporation, with a fiduciary duty not to engage in short-swing trading of the issuer's stock at the risk of having to remit to the issuer any profits realized from such trading" (citation modified)). In light of the district court's determination that "Gentile did not violate § 16(b) inadvertently" and that he "repeatedly delayed this litigation through his machinations," Sp. App'x at 117, the court was justified in awarding prejudgment interest as calculated under the IRS underpayment rate.

\*   \*   \*

We have considered Gentile's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

12