## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVALON HOLDINGS CORP., | Case No. 18 Civ. 7291 (DLC) (RJL) |
| Plaintiff and Judgment Creitor, | |
| v. | |
| GUY GENTILE, Defendant. | |

Related to:

| | |
|---|---|
| NEW CONCEPT ENERGY, INC., | Case No. 18 Civ. 8896 (DLC) (RJL) |
| Plaintiff and Judgment Creditor, | |
| v. | |
| GUY GENTILE, Defendant. | |

## PLAINTIFFS' OPPOSITION TO GUY GENTILE'S MOTION FOR THE EXTENSION OF COMITY TO HIS DUBAI BANKRUPTCY PROCEEDINGS

**TABLE OF CONTENTS**

| | |
|---|---|
| <u>OVERVIEW</u> | <u>1</u> |
| <u>PROCEDURAL BACKGROUND</u> | 1 |
| <u>FACTS</u> | 2 |
| POINT I.  GENTILE, AS MOVANT, BEARS THE BURDEN OF PERSUASIION AS TO EVERY SUBSTANTIAL ELEMENT OF FACT OR LAW OF HIS APPLICATION.  HE HAS NEITHER ADDRESSED NOR ATTEMPTED TO ARGUE ESSENTIALLY ANY AND ALL OF THEM. | 7 |
| POINT II.  GUY GENTILE LACKS STANDING TO MAKE THIS MOTION AND/OR IS UTTERLY WITHOUT DEFENSE FOR DEFYING THE ORDERS OF THE COURT TO APPEAR PHYSICALLY IN THE SOUTHERN DISTRICT OF NEW YORK BY NOV. 10, 2025, TO BE EXAMINED AS A JUDGMENT DEBTOR. | 8 |
| POINT III.  GENTILE'S SELECTION OF DUBAI AS THE VENUE FOR HIS BANKRUPTCY IS TRANSPARENT FORUM SHOPPING BASED ON A CONTRIVED CHANGE OF DOMICILE. | 9 |
| POINT IV.  EXTENDING COMITY TO GENTILE'S DUBAI BANKRUPTCY PETITION WOULD SPRING A MOUSETRAP OF HIS DEVISING. | 10 |
|     A.    *Malum Prohibitum* vs. *Malum In Se* | 12 |
|     B.    Seeking Comity for Irreconcilable Economic Premises | 12 |
| POINT V.  GENTILE'S MOTION SHOULD BE DENED UNDER CHAPTER 15 OF THE U.S. BANKRUPTCY CODE AND JUDICIAL PRINCIPLES OF COMITY. | 14 |
|     A.  Comity Is Governed by Bankruptcy Code Chapter 15 and Requires a Bankruptcy Court Order of Recognition. | 14 |
|     C.    No Stay or Deference to Gentile's Submission Is Warranted Under Chapter 15 or Incorporated "Principles of Comity. | 16 |
|     D.    No Other "Principles of Comity" Support Gentile's Motion | 17 |
| CONCLUSION | 19 |

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Allstate v. Hague*,
  449 U.S. 302 (1981)...................................................................................................................7

*Andrus v. Digital Fairway Corp.*,
  No. 3:08 Civ. 119, 2009 WL 1849981 (N.D. Tex. June 26, 2009)........................................15

*Arcelormittal North American Holdings LLC v. Essar Global Fund Ltd.*,
  No. 21 Civ. 6975 (KPF), 2022 WL 4334665 (S.D.N.Y. Sept. 19, 2022)..............................18

*In re Basis Yield Alpha Fund (Master)*,
  381 B.R. 47 (Bkrptcy S.D.N.Y. 2008) .................................................................................17

*Blau v. Lamb*,
  363 F.2d 507 (2d Cir. 1966) .................................................................................................12

*In re Creative Finance Ltd.*,
  543 B.R. 498 (Bkrptcy. S.D.N.Y. 2016)...............................................................................16

*Drexel Burnham Lambert Grp. Inc. v. Galadari*,
  777 F.2d 877 (2d Cir. 1985) .................................................................................................18

*Econ. Premier Assurance Co. v. CPI Plastics Grp., Ltd.*,
  No. 09 Civ. 2008, 2010 WL 11561369 (W.D. Ark. June 7, 2010)........................................15

*Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*,
  No. 14 Civ. 8196, 2018 WL 4742066 (N.D. Ill. Oct. 2, 2018) ..............................................17

*Laker Airways Ltd. v. Sabena Belgian World Airlines*,
  731 F.2d 909 (D.C. Cir. 1984), .........................................................................................4, 12

*Oak Point Partners, Inc. v. Lessing*,
  No. 11 Civ. 3328, 2013 WL 1703382 (N.D. Cal. Apr. 19, 2013) ...........................................15

*Orchard Enterprise NY, Inc. v. Megabop Records Ltd.*,
  No. 09 Civ 9607 (GBD), 2011 WL 832881 (S.D.N.Y. Mar. 4, 2011)....................................15

*Reserve International Liquidity Fund, Ltd. v. Caxton International Ltd.*,
  No. 09 Civ. 9021, 2010 WL 1779282 (S.D.N.Y. Apr. 29, 2010) ..................................................15

*Royal & Sun Alliance Insurance Co. of Canada v. Century International Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006) .............................................................................................1, 11

*SEC v. Mintbroker International Ltd.* et. al.,
  No. 21-cv-21079, 2025 WL 2664459 (S.D. Fl. Sept. 18, 2025) ....................................3, 4, 6

*In re Silicon Valley Bank (Cayman Isl. Branch)*,
  658 B.R. 75 (Bankr. S.D.N.Y. 2024)....................................................................................14

*In re Steadman*,
  410 B.R. 397 (Bankr. D.N.J. 2009).......................................................................................15

## Cases (cont.)

*In re SVB Financial Group*,
  No. 23-10367 (MG), 2025 WL 2751584 (Bankr. S.D.N.Y. Sept. 29, 2025); ...........................15

*Trikona Advisers Ltd. v. Chugh*,
  846 F.3d 22 (2d Cir. 2017) ........................................................................................................16

*U.S. v. J.A. Jones Construction Group, LLC,*
  333 B.R. 637 (E.D.N.Y. 2005) ...................................................................................................15

## Statutes

11 U.S.C §1501.............................................................................................................................14

11 U.S.C. §1507............................................................................................................................17

## OVERVIEW

Ever resourceful, Mr. Gentile is implementing a clever plan to divest this court of *de facto* jurisdiction, lodge it instead in a bankruptcy court in the Emirate of Dubai and then employ the law and practice of the Emirates to neuter the Court's Judgments, rendering them unenforceable. Seeking a general declaration of comity by this Court giving the rulings and actions of the Dubai court presumptive blank-check deference is the plan's first step. Invoking an aspect of Emirati practice that refuses recognition to the validity of a judgment emanating from a foreign legal system that compensates for a *malum prohibitum* that is not recognized as wrongful under Emirati law or the law of Shariah, is the second step. There is no "short swing" trading prohibition in the law of the Emirates, no §16(b) of the United States Securities Exchange Act operative. Submit the judgments of this Court to the Dubai bankruptcy court for their inclusion as claims in a division of Gentile's assets and the bankruptcy trustee will be duty bound by Emirati law to oppose their recognition.

What has been presented to this Court as a request so routine as not to merit briefing on point is in fact, with apologies to Agatha Chrisite, a mouse trap that the Court is being invited to spring. Plaintiffs oppose the Motion, acting in defense of "a district court's unflagging obligation to exercise its jurisdiction," *Royal & Sun Alliance Ins. Co. of Canada v. Century Internatl. Arms, Inc.,* 466 F.3d 88, 92 (2d Cir. 2006) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)), and in defense of our hard-won Judgment awards.

## PROCEDURAL BACKGROUND

Gentile filed this motion for comity on November 7, 2025 – the day after Plaintiffs confirmed that his deposition was scheduled. Two days later, on November 9, 2025, Gentile informed Plaintiffs that he would not be appearing for his Court-ordered deposition because of this

1

motion. As detailed in the accompanying Reply brief in support of reinstatement of the arrest warrant, the Court's original arrest warrant was entered on September 10, 2024, and lifted on September 13, 2025, without prejudice to renewal if Gentile failed to appear for an in-person deposition by the deadline of November 10, 2025, the date on which Gentile's deposition was scheduled. Paintiffs filed their motion for re-instatement as permitted by Judge Cote given Gentile's failure to appear.

On November 18, 2025, Judge Cote granted Plaintiffs' request to defer consideration of Gentile's motion for comity seeking recognition of the Dubai proceedings pending Gentile's filing of supporting documents, including copies of his Dubai submission. (*See* Order, *Avalon* Dkt. 466.) Gentile filed some supporting documents in response to the Court's Order on December 2, 2025. (*Avalon* Dkt. 480.)

The Motion for Comity was referred to Magistrate Judge Lehrburger, who ordered Plaintiffs to file this Response together with Plaintiffs' Reply to Gentile's opposition to their motion for reinstatement of the bench warrant for his arrest, which was also referred to Magistrate Judge Lehrburger.

## **FACTS**

1.    Guy Gentile is a judgment debtor to the Plaintiffs for a total of approximately $18 million, including pre-Judgment and post-Judgment interest, the latter still accruing.

2.    Gentile is also a judgment debtor to the Securities & Exchange Commission ("SEC") for approximately $19 million, including pre-judgment interest and post-judgment interest, the latter still accruing.

3.    The Judgments entered for the Plaintiffs by the Court in these cases is not related to the judgment in favor of the SEC, entered by the U.S. District Court for the Southern District of

Florida, *see SEC v. Mintbroker Internatl, Ltd.* et. al., No. 21-cv-21079, 2025 WL 2664459 (S.D. Fl. Sept. 18, 2025) (Remedies order entered following jury trial). The SEC is not a participant in these proceedings. Plaintiffs and their counsel do not speak for anyone other than themselves.

4.      Taken together, the Plaintiffs' Judgments and the SEC's judgment are estimated to constitute more than 90% of Gentile's liabilities. Gentile's flouting of the Court's order to appear and be deposed makes us unable to be more precise.

5.      The judgments were awarded by U.S. district courts in favor of Plaintiffs and the SEC for Gentile's failure to obey U.S. securities laws.

6.      The U.S. securities laws Gentile was found to have violated have no enforceable effect in the Emirate of Dubai and have no Emirati legislative equivalents. Short swing trading and the violations of regulatory broker-dealer rules at issue in the SEC's case are not actionable wrongs under the laws of Dubai.

7.      The courts of Dubai will not recognize, enforce or implement a judgment rendered, nor otherwise extend comity to, judgments rendered by U.S. courts that arise solely from the violation or transgression of U.S. securities laws not recognized in that jurisdiction.[1] The Court's Judgments in favor of the Plaintiffs, affirmed through the appellate process, will therefore be effectively nullified if comity is extended to bankruptcy proceedings initiated in the courts of Dubai. The template for dealing with a conflict of sovereigns in their competing views on aspects

---

[1]      If Gentile contests this statement of the law and practice of the bankruptcy court of Dubai, Plaintiffs request that he be required to challenge these assertions by recourse to F.R.C.P. 44.1, entitled "Determining Foreign Law." As the workings of the Bankruptcy Courts in Dubai are subject both to secular statutes, rules and regulations and to the less conventionally accessible provisions of Shariah, the "immutable, intangible divine law" which will inevitably lead to interpretations by Islamic scholars, we ask that such recourse include the safeguards customary in this court to expert witness testimony including the exchange of expert witness reports, oral deposition examination of proffered witnesses, and an evidentiary hearing in open Court with Gentile as a required fact witness.

of regulation is provided by *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984), discussed below at Pt. III.

8.      Gentile is a native-born U.S. citizen who holds a U.S. passport.

9.      Gentile is also an Italian citizen who holds a Republic of Italy passport.

10.      Gentile is also a Jamaican citizen who holds a Jamaican passport.

11.      Gentile is not an Emirati citizen and does not hold a Dubai passport. He holds a temporary residential visa, which he obtained as the owner of a "Free Zone LLC" that he established in March 2025, and which is an entity permitted to operate solely in the applicable "free zone" of registration or outside of the UAE.

12.      Until around May or June of 2025, Gentile was a domiciliary of San Juan, Puerto Rico, the United States; and prior to that, a lifelong U.S. domiciliary.

13.      During the pendency of these suits and after the Judgments were entered, Gentile liquidated substantially all of the U.S. assets that Plaintiffs have been able to identify in post-Judgment discovery, including property previously owned in San Juan, Puerto Rico and sold in 2024, and property owned in Putnam Valley, New York, sold in October 2025.

14.      The Plaintiffs' Judgments were awarded by the Court on March 20, 2024.

15.      The jury verdict in the SEC's case was announced on July 2, 2024. (*See SEC v. Mintbroker*, S.D. Fl. Case No. 21-cv-21079, at Dkt. 313). Although Gentile testified at the jury trial in Florida in June 2024, he did not appear for the announcement of the verdict. Plaintiffs believe that Gentile left the U.S. at around this time for the purpose of avoiding Plaintiffs' ongoing Judgment collection efforts.

16.      Gentile then became unreachable to Plaintiffs' counsel and to his own attorney of record in his pending appeals of these cases. A full transcript of his counsel's colloquy with Judge

Cote regarding Gentile's abscondment at the conference held on July 23, 2024, appears at *Avalon* Dkt. 354, and was also filed with the Second Circuit to affirm his fugitive status in connection with Gentile's appeals of the Court's Judgments (which have now been affirmed).

17.    A bench warrant for Gentile's arrest was issued by the Court on September 20, 2024, and remained outstanding until September 23, 2025, when it was vacated without prejudice to reinstatement should Gentile fail to travel to New York and cooperate in his examination as a judgment debtor no later than November 10, 2025 (as adjusted by agreement and order).

18.    Gentile failed to appear as scheduled and a motion to reinstate his arrest warrant is pending.

19.    Gentile contends that his electronic filing in Dubai of a request to open insolvency proceedings created an automatic stay of all proceedings in this court excusing his contumacy in flouting the appearance order of this Court and his discovery obligations here.

20.    There is no Dubai bankruptcy court order that we have been able to locate effective at the time of his disobedience or at any time that would arguably justify his contumacy, which is ongoing.

21.    Gentile contends that upon his pressing the "send" button transmitting to the bankruptcy court a request for leave to apply for bankruptcy he was barred by Emirati law from custody or possession of all key documents, accounts and records subpoenaed by the Plaintiffs as Judgment Creditors, and that his affairs are now in the hands of the Dubai court.

22.    At the time of filing his motion for comity a trustee in bankruptcy, or equivalent foreign representative, had not been appointed to his then non-existent case.

23.    Gentile's books and records remained in his possession and/or control.

24.    Gentile's application to the Dubai bankruptcy court is replete with disclosures of

5

facially fraudulent transactions, false statements, and factual misrepresentations, including the following:

1) Gentile reports approximately a facially fraudulent $82.7 "capital contribution" made in 2025 to an unidentified entity, which he now claims is not accessible to him. (*See, e.g.,* Auditor's Report, Dkt. 480-10 pp.6, 11)

2) Gentile's submission states that he has no ownership of assets held by the Swiss America Asset Trust (*see* Submission, *Avalon* Dkt. 480-9 p.5) - contrary to the Florida district court's findings of fact in the SEC case that Gentile has access to and ownership of assets held by that trust.

   *See SEC v. Mintbroker*, 2025 WL 2664459, at *4: "Gentile's objection that … the SAAT [Swiss America Asset Trust] 'is an irrevocable trust for Gentile's children, not Gentile,' is belied by the fact that Gentile is also listed as a beneficiary of the trust. The SAAT permits the Trustees to 'pay or apply the whole or any part or parts of the capital of the Trust Fund to or for the benefit of all or such one or more of the Beneficiaries as the Trustees, in their absolute discretion, think fit.' The SAAT also permits the settlor—Gentile—to 'by deed remove any Trustee and may by deed appoint any other person or persons to be a trustee or trustees in the place of such first mentioned Trustee.' Therefore, the consultancy fee [paid to the Trust] 'would be effectively available to Gentile by virtue of common ownership and/or benefit.'"

3) Apart from the two trusts disclosed in Gentile's submission, which are situated in Florida and the Bahamas, Gentile omits disclosure of an additional trust held for his benefit by Asiaciti and situated in Rarotonga, the Cook Islands. The glaring omission of the Asiaciti trust renders the Dubai bankruptcy request fraudulent on its face.

4) Included among Gentile's assets are $20 million for a defamation claim against the Plaintiffs and their counsel, filed in the Superior Court of San Juan, Puerto Rico in the Spanish language, since removed to the United States District Court for Puerto Rico, and dismissed by order of that court (in the English language); and $100 million for a purported defamation claim against the Plaintiffs and their counsel purportedly filed in Dubai in the Arabic language of which we have no other notice or knowledge. Plaintiffs' counsel have never set foot in Dubai or done business there.

5) Gentile also misrepresents that the Judgments of this Court are "under appeal" to the Second Circuit, which has, in fact, affirmed the Judgments and dismissed the appeals. (*See* Auditor's Report, *Avalon* Dkt. 480-9 p.3.)

6

**POINT I.**

**GENTILE, AS MOVANT, BEARS THE BURDEN OF PERSUASIION
AS TO EVERY SUBSTANTIAL ELEMENT OF FACT OR LAW OF HIS
APPLICATION.  HE HAS NEITHER ADDRESSED NOR
<u>ATTEMPTED TO ARGUE ESSENTIALLY ANY AND ALL OF THEM</u>**

With the exception of the "full faith and credit" clause of Art. IV, §1, of the U.S. Constitution, which mandates that the states respect the "public acts, records, and judicial proceedings of every other state," the recognition of comity between the courts of different jurisdictions is a courtesy extended in the sound discretion of the petitioned court, so long as it does not infringe on that court's sovereignty. *See generally Allstate v. Hague*, 449 U.S. 302, 323 (1981) (Stevens, J., concurring). Where, as here, foreign sovereignties are involved there is no Constitutional right to comity.

Gentile has designed a bare-bones request worthy of a doctoral examination. But he has not begun to discharge his obligation to make a competent pleading nor to carry his burden of persuasion on, *inter alia*, the following issues:

1) Is there a pending bankruptcy decree in Dubai or merely a request for the initiation of bankruptcy proceedings?

2) If there is a decree, may the Court see it, with an English translation?

3) Has a trustee in bankruptcy been appointed? If so, who?

4) If a trustee has been appointed, what is the extent of his powers and jurisdiction? What is Dubai law on point?

5) If a trustee has been appointed, what powers and jurisdiction remain in Gentile to speak for the bankruptcy estate?

6) Has the trustee authorized this motion? If so, how? And by what attorney?

7) Which acts, if any, of the Dubai court does Gentile ask the Court to afford comity to?

8) Or is his request for a blank check ceding of jurisdiction to a Dubai court?

9) How can blank check comity be granted without interfering with the sovereignty of this Court?

10) Are there conflicts in fundamental principles of substantive law of the two sovereignties that bear upon the request?

11) What might they be and how might they be resolved?

12) Will public policy have a bearing on the extent to which the principles of Dubai substantive law override the principles of U.S. substantive law that underly the Court's Judgments?

13) Should not the relevant laws of Dubai be first determined through proceedings under F.R.C.P. 44.1, including the giving of required notice?

We could continue to at length enumerating issues not addressed by Gentile's bare-bones motion but necessary to consideration of the motion. We think the point has been made. It would be an abuse of discretion and a denial of due process to the Judgment Creditors to grant comity to ill-defined or undefined judicial proceedings in Dubai on the altogether inadequate submission now before the Court.

## POINT II.

## GUY GENTILE LACKS STANDING TO MAKE THIS MOTION AND/OR IS UTTERLY WITHOUT DEFENSE FOR DEFYING THE ORDERS OF THE COURT TO APPEAR PHYSICALLY IN THE SOUTHERN DISTRICT OF NEW YORK BY NOV. 10, 2025, TO BE EXAMINED AS A JUDGMENT DEBTOR.

Gentile as the movant has the burden of persuasion. He has utterly failed to address let alone carry it.

If Gentile is correct in his contentions of law about having been made helpless to comply with the orders of this Court or its subpoenas by his filing, then Gentile had no authority to petition this court for comity as he had no standing to act on behalf of his bankrupt estate, that power having passed to his non-existent trustee in bankruptcy, and this motion must be denied.

If, on the other hand, Gentile is mistaken and he was not made helpless, then he had

no arguable basis for disobeying the Court's order to appear and for declining to produce books and records on the rationale that they were not in his custody or control but, rather, in the custody and control of the non-existent trustee. In either event, no legitimate basis has been pleaded for the orders of this court or its jurisdiction over his person to have been overruled by the actions or inaction of a foreign court nor of the facts which will need to be established to weigh those contentions.

**POINT III.**

**GENTILE'S SELECTION OF DUBAI AS THE VENUE
FOR HIS BANKRUPTCY IS TRANSPARENT
FORUM SHOPPING BASED ON A CONTRIVED CHANGE OF DOMICILE**

A request for recognition of comity is an appeal to the discretion of the court from which it is sought. Invocation of discretion inevitably implies a consideration of the totality of the equities.

Gentile is a man of many passports and citizenships. He was born in the United States, spent much of his life in New York State, changed his domicile to the Bahamas until the brokerage he owned there was investigated and forced into liquidation by the Bahamas Securities Commission, changed his domicile to Puerto Rico until these cases neared conclusion, and most recently changed his domicile to Dubai as his jury trial in the SEC's case against him in Miami wound down to a predictable unfavorable verdict. Gentile's choice of Dubai is consistent with a plan to evade the effects of adverse judgments by a sleight of hand involving a quirk of Dubai law that makes for non-enforcement of foreign judgments based on foreign law if there is no corresponding law in effect in Dubai.

In seeking comity for his Dubai bankruptcy, Gentil seeks to have the orders of the Dubai bankruptcy court supersede those of this Court.

9

Gentile's assertion of a Dubai domicile is transparently contrived. Gentile is not a citizen of Dubai. He resides there under a temporary residency permit issued on May 6, 2025, within 6 months prior to his seeking permission to declare bankruptcy. (*See* ID Card, *Avalon* Dkt. 480-7; Submission, *Avalon* Dkt. 480-9.) His business establishment in Dubai consists of a lease or license for the non-exclusive use in a "Free Zone" of a single desk for a maximum of 4 hours each month, and a postal address where he may receive mail, the basic requirements for establishment of a "Free Zone LLC" authorized to do business anywhere but the UAE. Yet Gentile asserts that the UAE is the logical venue for the resolution of the claims of his U.S. creditors to enforce Judgments entered against him for violations of U.S. securities laws, which he argues should now be conducted in the Arabic language and adjudicated under the complexities of Emirati law and in accordance with nebulous requirements of Shariah law vaguely referred to in Gentile's submission.

Plaintiffs are not inclined to become mired in proceedings contrived to take place 6,500 miles from this courthouse and up to 8,000 miles from their domiciles, subject to laws and practices alien to Plaintiffs' and their counsels' experience, and conducted in a foreign language requiring translation of volumes of writings, in a jurisdiction that provides no indication that reciprocal comity will be extended to the very Judgments at issue. Plaintiffs appeal to the discretion of the Court to deny Gentile's attempt to deprive the Court of jurisdiction over enforcement of the Court's Judgments, in favor of a venue having no meaningful connection to the Judgments or Plaintiffs and only a transient and manufactured connection to Gentile.

## POINT IV.

### EXTENDING COMITY TO GENTILE'S DUBAI BANKRUPTCY PETITION WOULD SPRING A MOUSETRAP OF HIS DEVISING.

Early in the history of the Republic, President Thomas Jefferson was faced with a variant of the quandary facing the Court on this motion. The United States and the Barbary States

had irreconcilably differing economic philosophies. The Barbary States were tolerant and supportive of piracy on the high seas; the U.S. was not. The two economic outlooks were not reconcilable. President Jefferson addressed the situation with a political, non-judicial solution. He sent the marines onto the shores of Tripoli and provided us with lyrics for the Marine Corps. anthem.

Gentile would have this Court refight that small war to a different and more deferential conclusion.

A district court has "an unflagging obligation to exercise its jurisdiction." *Royal & Sun Alliance*, *supra*. Granting comity to the Dubai bankruptcy court, which we suspect would not grant comity to the Judgments or treat them as enforceable, would be a ceding of the Court's obligation to protect its own jurisdiction to a foreign sovereign at the behest of Gentile, a litigant unwilling to obey the Court's orders himself.

The conflict of comity that Gentile has concocted is rooted in competing economic philosophies underlying applicable laws. The U.S., for good and sufficient reasons, has legislated a body of laws for the regulation of the securities markets and of securities ownership. Dubai has not followed suit. Gentile has been adjudged to have violated the short swing trading regimen of §16(b) of the Securities Exchange Act; and, in the SEC suit in Florida, the rules regarding broker-dealer registration and the attendant rules governing customer trading protections when those customers are U.S. persons. There is no indication that Dubai has comparable laws and rules or protections for investors in the public markets – or that Dubai offers appropriate protections for the interests of foreign judgment creditors whose judgments arise from the violation of U.S. securities regulations.

How to resolve competing and incompatible legal frameworks where comity would

require the abandonment by one sovereign or the other of its legal principles are knotty questions that are fundamentally political in nature and may not have easy answers in the law. But these questions cannot simply be glossed over by an order of comity.

### A.  *Malum Prohibitum* vs. *Malum In Se*

Liability arising from short swing trading is entirely a statutory creation. "Prior to the enactment of the Securities & Exchange Act, profits from 'sure thing' speculation in the stocks of their corporations were more or less generally accepted by the financial community as part of the emolument for serving as a corporate officer or director notwithstanding the flagrantly inequitable character of such trading." *Blau v. Lamb,* 363 F.2d 507, 514 (2d Cir. 1966) (quoting 10 Ann. Rep. 50 (1944)). Absent the statute there is no impediment to trading of a "flagrantly inequitable character."

Short swing trading is thus a *malum prohibitum,* a legal wrong made such through prohibition of its elements. This is distinct from a *malum in se*, a legal wrong made such by natural law, or an inherently evil act such as murder, arson, or theft. Dubai has not made short swing trading a *malum prohibitum* and it is not viewed as a *malum in se.*

### B.  Seeking Comity for Irreconcilable Economic Premises

In blandly seeking a declaration of comity, Gentile is thus seeking to elide the irreconcilable nature of U.S. and Dubai perspectives on the enforceability of U.S. judgments grounded on the U.S.'s creation of the *malum prohibitum* of §16(b).

A template for analysis, we suggest, lies in the lengthy and thoughtful opinion of the Court of Appeals for the District of Columbia in the *Laker Airways, supra*. In *Laker*, the conflict of competing economic viewpoints involved the U.S. anti-trust laws. Airlines do business across borders and the opportunities for conflict of laws are many and inherent.

Laker Airways, a non-U.S. entity, sought to sue a collection of other non-U.S. airlines for having conspired with each other against Laker's intrusion into the trans-Atlantic air transport market anchored in the U.S. Laker sought refuge in the Sherman Act and U.S. anti-trust law generally, filing suit in the U.S. District Court for the District of Columbia.

Some of the foreign airlines reacted by filing suits in the High Court of Justice of the United Kingdom, seeking and obtaining an injunction forbidding Laker from prosecuting its American antitrust action. The United Kingdom's Court of Appeal followed on with issuance of a permanent injunction ordering Laker to dismiss its U.S. actions against the British airlines. Laker sought and obtained a restraining order from the U.S. District court to prevent the other airlines from repeating the successful procedure employed by the British. And, presumably, many a lawyer in many a nation rejoiced at the prospect of endless litigation.

The District of Columbia appellate opinion provides a more detailed inventory of suit and countersuit and of the decisional principles involved. To cut to the chase, there was no abuse of discretion by the district court in issuing a restraint protecting its jurisdiction from further attempts to have foreign courts strip it of control over the adjudication of pending claims. The United Kingdom added to the scrum by promulgating legislation and rules that would prohibit or impede the application of United States antitrust law.

In a much simpler factual setting, Gentile asks the Court to stay collection of the Court's Judgments in deference to Dubai court proceedings, without any indication that the Judgments will not be nullified by Dubai courts applying Dubai law and policy. We urge the Court to exercise the discretion to protect the Court's jurisdiction and the enforceability of the Court's Judgments by denying Gentile's motion for comity.

13

## POINT V.

## GENTILE'S MOTION SHOULD BE DENED UNDER CHAPTER 15 OF THE U.S. BANKRUPTCY CODE AND JUDICIAL PRINCIPLES OF COMITY

**A. Comity Is Governed by Bankruptcy Code Chapter 15 and Requires a Bankruptcy Court Order of Recognition**

Chapter 15 of the United States Bankruptcy Code, 11 U.S.C §1501, *et. seq.,* enacted in 2005, provides an extensive procedure for the recognition and extension of comity to foreign bankruptcy proceedings in U.S. courts, and governs the extent to which the "automatic stay" applies. Chapter 15 amended and repealed Section 304, which was the prior Section permitting U.S. bankruptcy courts to enjoin or stay actions against a foreign debtor. Prior to the enactment of Chapter 15, district courts did not consider the initiation of Section 304 proceedings in bankruptcy court to be a prerequisite to their extension of comity to foreign insolvency proceedings.

Chapter 15, unlike its predecessor, provides that a request for comity made to any U.S. court must be accompanied by a certified Chapter 15 order of recognition obtained from a U.S. bankruptcy court. The extent to which Chapter 15 now provides the exclusive procedure for extending comity to foreign bankruptcy proceedings, i.e., whether a Chapter 15 order is required for a foreign debtor to obtain a stay or other order of comity to foreign proceedings, "remains an unsettled question." *In re Silicon Valley Bank (Cayman Isl. Branch)*, 658 B.R. 75, 91 (Bankr. S.D.N.Y. 2024) (despite noting the legislative purpose of Chapter 15 to provide "the exclusive door to ancillary assistance to foreign proceedings").

Most courts, including in this District, have taken the view that Chapter 15 is the required procedure for obtaining a stay or comity order deferring to foreign bankruptcy proceedings, unless Chapter 15 is inapplicable to the foreign debtor, i.e., unless the foreign debtor is eligible for an exemption from Chapter 15 provided by 11 U.S.C. §1501(c). *See In re SVB Fin.*

14

*Grp.*, No. 23-10367 (MG), 2025 WL 2751584, at \*30 (Bankr. S.D.N.Y. Sept. 29, 2025); *Orchard*

*Enter. NY, Inc. v. Megabop Records Ltd.,* No. 09 Civ. 9607 (GBD), 2011 WL 832881, at \*3

(S.D.N.Y. Mar. 4, 2011) (entering default judgment despite letter from foreign liquidator advising

of foreign proceedings for failure to comply with Chapter 15 requirements); *Reserve Int'l Liquidity*

*Fund, Ltd. v. Caxton Int'l Ltd.,* No. 09 Civ. 9021, 2010 WL 1779282, at \*14 (S.D.N.Y. Apr. 29,

2010) (denying request for order of abstention and comity in deference to BVI liquidation where

no Chapter 15 petition was filed); *see also U.S. v. J.A. Jones Const. Grp., LLC,* 333 B.R. 637

(E.D.N.Y. 2005) (failure to seek Chapter 15 recognition precluded entry of stay in comity to

foreign proceedings); *Oak Point Partners, Inc. v. Lessing*, No. 11 Civ. 3328, 2013 WL 1703382,

at \*6 (N.D. Cal. Apr. 19, 2013) ("the Court finds that Chapter 15 provides the appropriate avenue

for Defendant to seek recognition of the foreign proceedings and the exercise of comity by U.S.

courts"); *Econ. Premier Assurance Co. v. CPI Plastics Grp., Ltd.,* No. 09 Civ. 2008, 2010 WL

11561369, at \*\*3-4 (W.D. Ark. June 7, 2010) (same); *Andrus v. Digital Fairway Corp.,* No. 3:08

Civ. 119, 2009 WL 1849981, at \*2 (N.D. Tex. June 26, 2009) ("Defendant's representations do not

entitle it to a stay under Chapter 15, as its Motion insists. The process Congress enacted in that

very well deliberated statute is clearly stated therein. Under that process, the Court has yet to hear

from a party with standing to raise even the possibility of relief under Chapter 15"). *But see In re*

*Steadman*, 410 B.R. 397, 403 (Bankr. D.N.J. 2009) ("These cases where Chapter 15 does not apply

[i.e., where the debtor demonstrates qualifications for an exemption], remain subject to the

domestic rules and general notions of comity and cooperation").

Gentile does not argue that he is eligible for a Chapter 15 exemption. As Gentile

concedes, a trustee has not yet been appointed in Dubai with authority to file a Chapter 15 petition

in a U.S. bankruptcy court. And Gentile has not submitted the type of documentation of his

purported foreign insolvency proceedings required for recognition under Chapter 15. There are no court records, case number, or any other indication that insolvency proceedings have in fact been initiated.

The Second Circuit has held that a Chapter 15 petition is not required for courts to recognize foreign bankruptcy court orders and findings of fact under principles of collateral estoppel. *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 30 (2d Cir. 2017). There is no record of any orders or findings issued by the Dubai bankruptcy court in this case to which collateral estoppel may apply. And unlike in *Trikona*, collateral estoppel requirements are not satisfied because Plaintiffs have not had the full and fair opportunity to participate in (and have not even been provided with notice of the initiation of) any Dubai bankruptcy proceedings. In contrast, the party opposing comity in *Trikona* was a creditor who had initiated involuntary proceedings in the foreign jurisdiction.

### B. No Stay or Deference to Gentile's Submission Is Warranted Under Chapter 15 or Incorporated "Principles of Comity"

Gentile claims that his submission caused an "automatic stay" of proceedings. But there is no evidence of any stay having been entered by the Dubai bankruptcy court. Under Chapter 15, the "automatic stay" of claims provided by the U.S. Bankruptcy Code only applies to the extent the Dubai proceedings are recognized as "foreign main proceedings," i.e., proceedings in a jurisdiction that is the debtor's Center of Main Interests ("COMI").

Although no petition for recognition has even been filed, Plaintiffs note that the Dubai proceedings would not qualify as "foreign main proceedings" entitled to the automatic stay under Chapter 15 given that Gentile's only activities in Dubai involve his attempt to remove assets from the reach of Plaintiffs' collection efforts. *See In re Creative Finance Ltd.*, 543 B.R. 498, 517-518 (Bkrptcy. S.D.N.Y. 2016) (reviewing cases discussing "COMI"-manipulation)*. In that respect,

16

Gentile would also not be entitled to any presumption afforded to his status as a resident of Dubai, which was obtained by his ownership of a Free Zone LLC not authorized to operate in "mainland UAE" under whose laws Gentile seeks cover as a foreign debtor. *See In re Basis Yield Alpha Fund (Master),* 381 B.R. 47, 48 (Bkrptcy S.D.N.Y. 2008) ("COMI" presumptions not warranted based on registration in "letterbox" jurisdiction under foreign law permitting foreign businesses to operate only outside of the foreign jurisdiction).

        Gentile would also not be entitled to a stay or other order of comity in deference to the Dubai proceedings as "foreign nonmain proceedings." Orders of comity to "nonmain proceedings" are to be entered based on "principles of comity" and several enumerated factors designed to provide "reasonable assurance" that creditors will be protected and not prejudiced. *See* 11 U.S.C. §1507(b). Those reasonable assurances are not provided by Gentile's submission.

**C.  No Other "Principles of Comity" Support Gentile's Motion**

        Gentile makes no attempt to meet any Chapter 15 requirement and instead relies on pre-Chapter 15 case law deferring to foreign insolvency proceedings under principles of international comity. The ongoing relevance of this jurisprudence for debtors who are subject to Chapter 15 is questionable, as discussed above. *See Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.,* No. 14 Civ. 8196, 2018 WL 4742066, at *2 (N.D. Ill. Oct. 2, 2018) ("CDI must comply with Chapter 15 of the U.S. Bankruptcy Code to receive recognition of its foreign bankruptcy and the corresponding relief it seeks. The cases CDI cites in support of its Motion were all decided prior to Congress's enactment of [Chapter 15] and thus do not control here.")

        But in any event, Chapter 15 expressly incorporates the "principles of comity" developed by the courts. Those principles take into account many of the same considerations for creditor interests and expectations enumerated by Chapter 15 and do not support the extension of

comity for the same reasons. Comity is not warranted because Gentile initiated the insolvency proceedings to vitiate the Court's Judgments and insulate himself from Plaintiffs' collection efforts. *Arcelormittal N. Am. Holdings LLC v. Essar Global Fund Ltd.*, No. 21 Civ. 6975 (KPF), 2022 WL 4334665, at *22 (S.D.N.Y. Sept. 19, 2022) (denying comity to foreign proceedings characterized as "part and parcel of the Essar Group's scheme to avoid satisfaction of the Judgment," noting the debtor's limited activities in the foreign jurisdiction and the uncertainties about the procedure and timing of the foreign proceedings). Gentile's submission reflects his fraudulent concealment of assets in newly formed Dubai "Free Zone LLC" and his characterization of trust and other assets in a manner contrary to the findings and rulings of U.S. courts.

Gentile's submission does not indicate that the bankruptcy procedures to be applied in Dubai are not in conflict with fundamental U.S. policies and principles of fairness. *See Drexel Burnham Lambert Grp. Inc. v. Galadari,* 777 F.2d 877, 881 (2d Cir. 1985) (remanding to district court for evidentiary hearing on whether Dubai insolvency proceedings should be afforded comity, even where dispute concerned property in Dubai). As the Second Circuit noted in *Drexel*, "Our courts have had no experience with Dubai bankruptcy practices and procedures," which the court described as "uncharted territory." Although *Drexel* was decided in 1985, there is minimal further case law addressing the fairness of Dubai bankruptcy law. As Gentile's submission reflects, UAE bankruptcy laws have also been amended several times since *Drexel* was decided. (*See, e.g.,* Submission, *Avalon* Dkt. 480-6 p.1, referring to bankruptcy laws adopted in 2016, and amended in 2019 and 2021).

## **CONCLUSION**

Gentile's motion for comity should be denied. Plaintiffs' enforcement efforts should continue notwithstanding Gentile's Dubai bankruptcy submission and any further intervening motions he may file unless and until the Court expressly orders otherwise.

Dated: Southampton, New York
        December 22, 2025

Respectfully submitted,

*/s/ David Lopez*

_____
David Lopez
Miriam Tauber
*Attorneys for Plaintiffs/Judgment Creditors*

19