UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
:
AVALON HOLDINGS CORPORATION, :
:
          Plaintiff, :
:    18-CV-7291 (DLC)(RWL)
    - against - :
:    18-CV-8896 (DLC)(RWL)
GUY GENTILE and MINTBROKER :
INTERNATIONAL, LTD., :
:    **REPORT AND RECOMMENDATION**
          Defendants. :    **TO HON. DENISE L. COTE:**
------------------------------------------------------:    **MOTION TO CLARIFY AND CORRECT**
:    <u>**JUDGMENT (DKT. 450)**</u>[1]
NEW CONCEPT ENERGY, INC., :
:
          Plaintiff, :
:
    - against - :
:
GUY GENTILE and MINTBROKER :
INTERNATIONAL, LTD., :
:
          Defendants. :
------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      In the immediate wake of his unsuccessful appeal of the more than sixteen million dollar judgment against him, Defendant Guy Gentile moves to vacate the judgment on the basis that it was not final or certified for appeal by the District Court pursuant to Federal Rule of Civil Procedure 54(b) ("Rule 54(b)"). For the following reasons, the motion should be denied.

---

[1] All docket citations are to the *Avalon* case, No. 18-CV-7291, unless otherwise denoted as the *New Concept* case, No. 18-CV-8896.

1

**Background**

In 2018, Plaintiffs Avalon Holdings Corporation and New Concept Energy, Inc. (together, "Plaintiffs") sued Gentile and his offshore brokerage company Mintbroker International, Inc. ("Mintbroker") for disgorgement of short-swing profits under § 16(b) of the Securities Exchange Act of 1934.  On April 8, 2022, Judge Broderick, then the presiding District Judge, granted summary judgment against Gentile and Mintbroker on the merits of Plaintiffs' claims.  (Dkt. 97.)  During the ensuing damages phase, Gentile and Mintbroker produced purportedly newly discovered evidence.  (Dkt. 103.)  In the midst of discovery about that evidence, and before the Court held an evidentiary hearing on damages, Plaintiffs filed a notice that Mintbroker had been placed into liquidation proceedings in the Bahamas.  (Dkt. 162.)  On November 16, 2022, Judge Cote, to whom the case had been reassigned, entered a temporary stay as to Mintbroker in light of the liquidation proceedings.  (Dkt. 168.)

Plaintiffs did not then or at any subsequent time file a claim against Mintbroker in the Bahamian liquidation proceeding, effectively abandoning their claims against Mintbroker.  (*See* Dkt. 186 at 1 (Plaintiffs' December 2022 letter informing the Court that "Plaintiffs have lodged no claim in the Bahamas Supreme Court believing liquidation and court costs will consume the Mintbroker estate. The joint and several claims of liability against Mr. Gentile continue and are almost certainly the only claims that are worth pursuing").)

Plaintiffs and Gentile continued with damages discovery, and a hearing on damages was held on February 2, 2023.  Following post-hearing briefing and other proceedings, Judge Cote entered "Final Judgment" on March 20, 2024, awarding

Plaintiffs a combined total of more than $16 million in damages and interest (the "Judgment").  (Dkt. 281.)  Gentile, represented by counsel, appealed.  He did not file a bond to avert enforcement of the Judgment pending the appeal.  Instead, he has resisted and evaded compliance with Plaintiffs' efforts to enforce the Judgment.

Mintbroker was formally and finally dissolved by the Bahamian Supreme Court on October 15, 2025.  (Dkt. 456-1.)  On October 28, 2025, the Second Circuit ruled on Gentile's appeal and affirmed the Judgment.  (Dkt. 469.)  One day after losing his appeal, Gentile filed in this Court the instant motion to "clarify and correct" the Judgment under Federal Rules of Civil Procedure 54(b) and 60(a).[2]  (Dkt. 450.)

Gentile argues that the action remains stayed and unadjudicated as to Mintbroker and, because the Court did not issue a Rule 54(b) certification that there is no just reason for delay of entry of judgment against Gentile, the Judgment was interlocutory and non-final.  Gentile therefore asks, as laid bare in his reply, not to clarify or modify the Judgment as the caption of his motion indicates, but instead to (1) "vacate the [Judgment] and any enforcement orders dependent on it," and (2) "re-enter a proper judgment against [Gentile] with an express Rule 54(b) determination."  (Dkt. 463 at 1; *see also id.* at 5, 7.)  Plaintiffs respond that Gentile's motion is another stratagem to evade enforcement of the Judgment, deployed only after losing his appeal.  They argue that the Judgment is in fact final, but for avoidance of doubt the Court can and should certify the Judgment pursuant to Rule 54(b) *nunc pro tunc.*  (Dkt. 456 at 2-3.)  Alternatively, or additionally, Plaintiffs

---

[2] Although Gentile invokes both Federal Rules of Civil Procedure 54(b) and 60 (relief from judgment or order), his motion begins and ends with Rule 54(b), and the Court need not discuss Rule 60 further.  Put differently, because, as discussed below, Gentile's arguments regarding finality and certification are unavailing, there is no basis to grant relief from the Judgment under Rule 60.

"propose to moot any need for Rule 54(b) certification of the Judgment" by dismissing Mintbroker from the case with prejudice, as reflected in a stipulation of dismissal, which has been signed by counsel for Plaintiffs and by counsel for "the former Joint Official Liquidators of Mintbroker International, Ltd. (now dissolved)." (Dkts. 456 at 3, 456-2 at 2.) In reply, Gentile argues that Plaintiffs cannot rely on post-Judgment events – specifically, Mintbroker's dissolution and a stipulation of dismissal entered into after dissolution of Mintbroker – to turn what was a non-final judgment into a final one. (Dkt. 463 at 3-4.)

The motion has been referred to me. (*See* Dkt. 481.) Because the motion has dispositive implications, the Court issues its decision as a report and recommendation.

## Discussion

Gentile's motion should be seen for what it is: a cynical attempt filed after losing his appeal to void the existing Judgment against him and Plaintiffs' enforcement proceedings to date based on an argument that is incompatible with his having invoked the Court of Appeals' jurisdiction. (*See* Dkt. 463 at 1 (arguing that the Judgment "cannot be enforced as 'final,' and any post-judgment measures premised on it must be unwound").) If Gentile genuinely questioned the finality of the Judgment, he could not in good faith have filed his appeal. That is because federal appellate courts generally lack jurisdiction over interlocutory orders. *See* 28 U.S.C. §§ 1291, 1292. Instead, Gentile raised the argument only after having lost the appeal he initiated. In any event, his newly asserted Rule 54(b) argument does not lead to the result he seeks.

A "final" decision is one "that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Bey v. City of New York*, 999 F.3d 157, 163 (2d Cir. 2021) (internal quotation marks omitted). "[I]n the federal district courts, the

4

entry of a final judgment is generally appropriate only after all claims have been adjudicated." *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (internal quotation marks omitted).  Rule 54(b), however, permits entry of final judgment as to fewer than all parties or claims when certain conditions are met:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Rule 54(b) thus "authorizes a district court to enter partial final judgment when three requirements have been satisfied: (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express determination that there is no just reason for delay." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 322-23 (2d Cir. 2018) (internal quotation marks omitted).  The underlying purpose and policy of Rule 54(b) is "to avoid redundant review of multiple appeals based on the same underlying facts and similar issues of law." *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 418 (2d Cir. 1989); *see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997) (recognizing the "historic federal policy against piecemeal appeals") (internal quotation marks omitted).  The determination that there is no just reason for delay under Rule 54(b) ultimately "'is left to the sound judicial discretion of the district court' and 'is to be exercised in the interest of sound judicial administration.'"  *Ginett v. Computer Task*

5

*Group, Inc.*, 962 F.2d 1085, 1092 (2d Cir. 1992) (quoting *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S. Ct. 1460 (1980)).

For all practical purposes the Judgment resolved the litigation, and was final, as to all parties, not merely Gentile: although the litigation had been stayed as against Mintbroker, by the time the Judgment issued, Plaintiffs had abandoned any claim against Mintbroker in declining to submit any claim in the Bahamian liquidation proceedings. (Dkt. 186.) And, both Gentile and Plaintiffs treated the Judgment as final. Gentile appealed the Judgment, and Plaintiffs pursued enforcement. Gentile resisted enforcement but never questioned finality of the Judgment.

Gentile is correct, however, that the stay against Mintbroker had not been lifted at the time the Judgment was entered and that Mintbroker was then in liquidation proceedings that had not yet been completed. To the extent that somehow renders the Judgment non-final, the appropriate course is not to vacate the Judgment but instead to certify the Judgment pursuant to Rule 54(b) *nunc pro tunc*. "Nunc pro tunc, Latin for 'now for then,' refers to a court's inherent power to enter an order having retroactive effect." *Iouri v. Ashcroft*, 487 F.3d 76, 87 (2d Cir. 2007). "[T]he Supreme Court … [has] recognized that 'a nunc pro tunc order should be granted or refused, as justice may require in view of the circumstances of the particular case.'"[3] *United States v. Tannenbaum*, 764 F. App'x 115, 116 (2d Cir. 2019) (summary order) (quoting *Mitchell v. Overman*, 103 U.S. 62, 65, 26 L.Ed. 369 (1880)).

---

[3] In certain contexts not applicable here, the standard for applying rulings *nunc pro tunc* is stricter. *See, e.g.*, *In re Motors Liquidation Co.*, 438 B.R. 365, 376 (Bankr. S.D.N.Y. 2010) (explaining that *nunc pro tunc* approval of a professional's retention in a bankruptcy action may be granted only under "extraordinary circumstances").

The issue of retroactive certification under Rule 54(b) typically arises in the context of determining whether the Court of Appeals has appellate jurisdiction over a prematurely filed appeal that has not yet been decided. "In the absence of prejudice to the nonappealing party," the Second Circuit "has declined to dismiss premature notices of appeal where subsequent actions of the district court have imbued the order appealed from with finality.'" *Leonhard v. United States*, 633 F.2d 599, 611 (2d Cir. 1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975 (1981). "As courts and commentators have observed, 'the lack of certification at the time the notice of appeal is filed is not necessarily fatal, because the district court may subsequently issue the certificate, thus establishing appellate jurisdiction nunc pro tunc.'" *Seat Sack, Inc. v. Childcraft Education Corp.*, No. 07-CV-3344, 2010 WL 1848225, at *2 (S.D.N.Y. May 7, 2010) (quoting 10 James Wm. Moore, et al., *Moore's Federal Practice*, § 54.24 at 54-75 (3d ed. 2009)); *see also Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 285 (2d Cir. 1974) (overlooking "technical defect" that order appealed from did not include Rule 54(b) certification where district court, after appeal was filed, modified order to include Rule 54(b) certification).

The Second Circuit also has endorsed *nunc pro tunc* certification even after an appeal has been decided. *See Kaufman & Ruderman v. Cohn & Rosenberger*, 177 F.2d 849, 850 (2d Cir. 1949). In *Kaufman*, the district court dismissed one of two causes of action, allowing the other to proceed. Plaintiff appealed dismissal of the one claim and the Second Circuit affirmed. The Second Circuit's affirmance did not address the lack of Rule 54(b) certification. The published opinion, however, includes a "Supplemental Opinion" that does address Rule 54(b): "Although neither appellant nor appellee noted the matter, it is now suggested that, under Rule 54(b) … the order was not appealable

7

because the district judge did not make an express determination that there is no just reason for delay.'" *Id*. (internal quotation marks omitted). The Second Circuit instructed that the omission could be cured *nunc pro tunc* by the district court: "If the district judge within ten days makes such an express determination, we shall treat it as made nunc pro tunc, and our order of affirmance will stand." *Id.* The Second Circuit did not, however, explain its reasoning.

This Court is aware of only one opinion addressing *nunc pro tunc* certification under Rule 54(b) after an appeal has been decided and explaining the basis for its rationale – a rationale that fully supports *nunc pro tunc* certification here. *See Rosenbaum v. Seybold*, No. 06-CV-352, 2013 WL 2285942 (N.D. Ind. May 23, 2013). In *Rosenbaum*, the district court entered an opinion and order granting summary judgment to a group of defendants referred to as the Law Firm Defendants and directed entry of final judgment by the Clerk. Plaintiffs appealed and lost, after which the district court realized that the claims against other parties "had not been actively pursued to a final judgment." *Id.* at *1. In response to the court's inquiry, the plaintiffs indicated they intended to continue to pursue some of those claims. The Court then determined that there was no just reason for delay as to the judgment against the Law Firm Defendants already affirmed on appeal, and certified the judgment under Rule 54(b) *nunc pro tunc*. *Id.* at *1 and n.1. The court denied Plaintiffs' motion for reconsideration. *Id*. at *2-4.

In arguing for reconsideration, Plaintiffs contended that a *nunc pro tunc* order could not retroactively vest jurisdiction in the Court of Appeals where none previously existed. *Id.* at *2. The district court rejected that argument. The court explained that notwithstanding the absence of a statement of there being no just reason for delay in the
8

judgment, "[i]t would have been proper to enter a Rule 54(b) order when the Court ruled in favor of the [defendants]." *Id.* at *3. The court noted its own intent that the judgment be final, and placed particular emphasis on the parties' having treated the judgment as final, most notably evidenced by the plaintiffs' appeal. *Id.* at *2, 3. "Thus, the *nunc pro tunc* order makes the record speak the truth and does not revise the substance of what transpired – a determination that immediate appeal was appropriate." *Id*. at *2. Further, as the appealing party, plaintiffs were not prejudiced. *Id*. In contrast, the Law Firm Defendants, having already succeeded on appeal, would be subject to "extreme prejudice" as a result of "undoing the previous record." *Id.* at *3; *see also id.* at *2 (recognizing that in opposing *nunc pro tunc* certification, plaintiffs hoped to file a new appeal and thus hopefully gain what they already had lost).

The same reasoning applies here. The Court and the parties have treated the Judgment as final, Gentile in appealing, and Plaintiffs in pursuing enforcement. The District Court expressly and unequivocally designated the Judgment as the "Final Judgment" and referred to it (in the Judgment itself) as "final" three more times. (Dkt. 281; *see also* Dkt. 341 at 1, 2 (order for contempt and arrest of Gentile characterizing the Judgment as "final").) Certifying the Judgment *nunc pro tunc* under Rule 54(b) merely would be "mak[ing] the record speak the truth." Absent *nunc pro tunc* certification, Plaintiffs would be subject to severe prejudice given Gentile's goal to vacate all post-judgment enforcement efforts. (*See* Dkt. 463 at 1.) *Nunc pro tunc* certification also is consistent with the policy and purpose underlying Rule 54(b). There was and is no potential for redundant or piecemeal appeals: there was none at the time of entry of

9

Judgment since Plaintiffs had abandoned their claims against Mintbroker, and there is not now because Mintbroker is dissolved.

*Nunc pro tunc* certification in this case also accords with the Second Circuit's embrace of substance over form with respect to finality:

> In most instances, the question of finality is relatively straightforward, and neither the parties nor the courts (district or appellate) have any trouble determining that the litigation is over. But on those occasions when it is not, "we eschew formalism in favor of a pragmatic approach" and "look to whether, following the district court's decision, further proceedings are contemplated or required." *Bey*, 999 F.3d at 163 (internal quotation marks omitted); *see also Fiataruolo v. United States*, 8 F.3d 930, 937 (2d Cir. 1993) ("What essentially is required is some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as it is concerned, is the end of the case.").

*Alessi Equipment, Inc. v. American Piledriving Equipment, Inc.*, 160 F.4th 38, 44 (2d Cir. 2025). Following entry of Judgment, no further proceedings were contemplated or required; all that remained was execution of the Judgment. In these circumstances, *nunc pro tunc* certification of the Judgment pursuant to Rule 54(b) is pragmatic, appropriate, and warranted.[4]

## Conclusion

For the foregoing reasons, I recommend that the Court (1) deny Gentile's motion to clarify and correct the Judgment, and (2) certify the Judgment pursuant to 54(b) *nunc pro tunc*, explaining that there is no just cause for delay.

---

[4] With *nunc pro tunc* certification being the appropriate outcome, the Court does not consider the validity and effect of the stipulation of dismissal signed after Mintbroker's dissolution by counsel for the former Joint Official Liquidators of Mintbroker.

**Objections And Right To Appeal**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Any party shall have fourteen (14) days to file a written response to the other party's objections. Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Denise L. Cote, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007. Any request for an extension of time for filing objections must be addressed to Judge Cote. **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:   January 8, 2026
         New York, New York

Copies transmitted to all counsel and Defendant Gentile pro se.