**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AVALON HOLDINGS CORP., <br><br> Plaintiff, <br> v. <br><br> GUY GENTILE and <br> MINTBROKER INTERNATIONAL, LTD., <br><br> Defendants. | No. 18-cv-7291 (DLC) (RJL) <br><br> ECF Case |

Related to:

| | |
|---|---|
| NEW CONCEPT ENERGY, INC. <br><br> Plaintiff, <br> v. <br><br> GUY GENTILE and <br> MINTBROKER INTERNATIONAL, LTD., <br><br> Defendants. | No. 18-cv-8896 (DLC) (RJL) <br><br> ECF Case |

**DEFENDANT GUY GENTILE'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING REINSTATEMENT OF THE
ARREST WARRANT**

**PRELIMINARY STATEMENT**

The Report and Recommendation ("R&R") rests on an incorrect premise: that reinstatement of a civil arrest warrant following a conditional vacatur is automatic upon an asserted failure to comply. It is not. Civil contempt sanctions are equitable and discretionary, and once a warrant has been vacated, its reinstatement requires renewed judicial discretion and renewed consideration of my opposition arguments. Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827–28 (1994); Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 657 (2d Cir. 2004).

1

I do not dispute the Court's authority to enforce its orders. I object because the R&R treated reinstatement as ministerial rather than discretionary and discounted or failed to meaningfully consider record-supported arguments bearing on due process, clarity of the deposition obligation, reasonable diligence, feasibility of compliance, causation, and the proportionality of arrest as a coercive remedy.

Because reinstatement of a civil arrest warrant implicates liberty interests, the Court was required to reassess—on the merits—each argument Defendant raised opposing arrest. Bagwell, 512 U.S. at 827; Spallone v. United States, 493 U.S. 265, 276 (1990). The R&R did not do so under the correct legal standards.

## LEGAL STANDARD

A district court reviewing an R&R must make a de novo determination of any portion to which specific objections are made. 28 U.S.C. § 636(b)(1). Civil contempt sanctions are equitable, discretionary, and must be tailored to coerce compliance rather than to punish. Bagwell, 512 U.S. at 827–28; Paramedics, 369 F.3d at 657.

Contempt may be imposed only where (1) the underlying order is clear and unambiguous, (2) noncompliance is proven by clear and convincing evidence, and (3) the alleged contemnor has not been reasonably diligent in attempting to comply. King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995); Drywall Tapers & Pointers of Greater N.Y. v. Local 530, 889 F.2d 389, 395 (2d Cir. 1989).

## ARGUMENT

### I. Reinstatement of the Arrest Warrant Was Discretionary, Not Automatic

Civil contempt sanctions "are remedial and coercive, not punitive," and their imposition "rests in the sound discretion of the court." United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947); Paramedics, 369 F.3d at 657. Where an arrest warrant has been vacated, reinstatement is not self-executing unless the operative order expressly provides otherwise.

Nothing in the Court's orders provided that the warrant would automatically reissue upon an alleged failure to comply. Treating reinstatement as automatic improperly collapses a discretionary equitable inquiry into a ministerial act, contrary to the nature of civil contempt remedies. Bagwell, 512 U.S. at 827–28.

2

## II. Due Process Defects at the Inception of the Contempt Proceedings Required Heightened Scrutiny Before Reinstatement

Due process requires notice reasonably calculated to apprise an interested party of the pendency of proceedings and an opportunity to be heard. Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). These requirements apply to civil contempt proceedings, particularly where coercive sanctions affecting liberty are authorized. Bagwell, 512 U.S. at 827; S.E.C. v. Musella, 818 F. Supp. 600, 602–03 (S.D.N.Y. 1993).

Here, the publication directive existed solely to apprise me of the contempt application and the risk of arrest. I established in the record that publication did not occur as represented and that I first learned of the arrest warrant only after issuance, through a third party. Even if subsequent proceedings occurred, defects in notice at the inception of contempt remain relevant to whether renewed coercive enforcement should issue without heightened scrutiny. Bagwell, 512 U.S. at 834.

## III. The Deposition Obligation Never Ripened Because the Order Required Agreement on a Date

Contempt cannot rest on an ambiguous order. King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995). The operative order required the parties to agree on a date certain for My deposition. No such agreement was reached. Plaintiffs instead unilaterally selected the final possible date and treated nonappearance as contempt.

Resolving this ambiguity against me effectively converted a conditional obligation into an unconditional one, contrary to Second Circuit precedent requiring ambiguity to be resolved in favor of the alleged contemnor. Drywall Tapers & Pointers of Greater N.Y. v. Local 530, 889 F.2d 389, 395 (2d Cir. 1989).

## IV. Plaintiffs' Own Delay in October 2025 Undermines Any Finding of Non-Diligence or
## Causation

The R&R's conclusion that I failed to act diligently overlooks record evidence that Plaintiffs' counsel, Miriam Tauber, materially delayed [10 days] responding to my October 2025 communications concerning deposition scheduling. I timely reached out to coordinate logistics, but Plaintiffs did not respond for a significant period, compressing the scheduling window and contributing directly to the absence of agreement.

Where the movant's own delay contributes to the alleged noncompliance, escalation to arrest is not an appropriate coercive remedy. Spallone, 493 U.S. at 276; Paramedics, 369 F.3d at 655–57.

Contempt requires clear proof that noncompliance was attributable to the alleged contemnor, not to bilateral or opposing-party conduct. Drywall Tapers, 889 F.2d at 395.

**IV. The Order Did Not Require Defendant's Physical Presence in New York**

The operative order required that I submit to a deposition "in New York," but it did not require my physical presence in New York, did not state that the deposition must occur "in person," and did not prohibit the use of remote means. Where a court intends to mandate physical appearance or to foreclose remote testimony, it must do so clearly. See Fed. R. Civ. P. 30(b)(4) (authorizing depositions by "telephone or other remote means"); King, 65 F.3d at 1058 (contempt requires a clear and unambiguous order).

At minimum, the order permitted more than one reasonable interpretation: either that I must travel to New York, or that the deposition would be conducted as a New York deposition—noticed, administered, and recorded in New York—by remote means. Any such ambiguity must be resolved in favor of the alleged contemnor. Drywall Tapers, 889 F.2d at 395.

Reading the order to require my physical presence adds a requirement that does not appear in the text and cannot support contempt. Where an order is silent as to modality, a party's reasonable interpretation cannot form the basis for coercive sanctions.

**V. The R&R Improperly Discounted Evidence of Reasonable Diligence and Partial Compliance**
Civil contempt turns on reasonable diligence, not perfection. Paramedics, 369 F.3d at 655; Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995). The R&R treated failure to appear in person as dispositive while discounting undisputed evidence of compliance and cooperation.

**V. The R&R Improperly Discounted Evidence of Reasonable Diligence and Partial Compliance, Including Defendant's Zoom Proposal**

Civil contempt turns on reasonable diligence, not perfection. Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004). The R&R treated my failure to appear in person as dispositive while discounting undisputed evidence of compliance and cooperation.

I produced post-judgment discovery, and Plaintiffs did not complain of deficiencies until after the deposition did not occur. Even Plaintiffs' feigned claim of partial compliance are taken as true, the compliance must be considered when calibrating sanctions. Spallone, 493 U.S. at 276.

Before Plaintiffs moved for the warrant, I proposed to submit to deposition by Zoom. Disputes over the form of compliance are materially distinct from refusal to comply. Treating a good-faith alternative proposal as evidence of defiance improperly collapses the diligence inquiry.

Against the backdrop of an order that did not require physical presence and did not prohibit remote testimony, that proposal was a reasonable interpretation of the order as written and evidence of diligence, not defiance. Disputes over the form of compliance are materially distinct from refusal to comply, particularly where lesser measures had not been exhausted.

Treating My Zoom proposal as noncompliance improperly collapses the diligence inquiry and reads into the order a physical-presence requirement that does not exist.

## VI. Government Shutdown and Travel Disruptions Bear on Feasibility and Coerciveness

A civil sanction is coercive only if it is reasonably calculated to induce compliance. Shillitani v. United States, 384 U.S. 364, 368 (1966); Hicks v. Feiock, 485 U.S. 624, 633 (1988). I cited in the record that a federal government shutdown disrupted aviation operations during the relevant compliance window. The Court should take judicial notice of the government shutdown down during the month of November 2025 that effected flights in to NYC1[1].

These external constraints bear directly on feasibility of compliance and the realism of arrest as a coercive measure. The R&R assumed coerciveness in theory without addressing whether arrest was realistically capable of inducing compliance under these circumstances or why clarification and sequencing were inadequate.

---

[1] ttps://abc7ny.com/live-updates/government-shutdown-updates-flights-canceled-when-will-snap-benefits-resumemore/ 18137769/ : Government shutdown ends: Impact on New York-area airports | Live updates. Last updated: Thursday, November 13, 2025 5:51AM EST NEW YORK (WABC) -- The nation's longest government shutdown has ended, but Americans have been dealing with the consequences for weeks and it will take some time to get things back to normal, including for residents across the Tri-State. Federal workers are now waiting for their backpay, airline passengers continue to face delays and cancellations, and nearly 42 million Americans who depend on SNAP benefits are looking forward to those being restored. The FAA cuts have caused disruptions at the major New York City-area airports since Friday. Check back for live updates on everything to know.

## VII. Foreign Bankruptcy Obligations Were Relevant to Good Faith and Proportionality

Foreign law does not excuse compliance with a U.S. court order absent a stay, but it is relevant to good faith and proportionality. Societe Internationale v. Rogers, 357 U.S. 197, 208–09 (1958); First City, Texas–Houston, N.A. v. Rafidain Bank, 281 F.3d 48, 54–55 (2d Cir. 2002).

I submitted an unrebutted expert legal opinion regarding mandatory disclosure obligations under UAE bankruptcy law. The R&R dismissed this evidence as irrelevant rather than considering it
for the limited but proper purpose of assessing diligence and proportionality.
VIII. Anticipated Counter-Arguments Do Not Justify Arrest
Plaintiffs are expected to argue that I "had months," that Zoom was unauthorized, that travel
remained possible, and that notice defects were later cured. These arguments miss the point. The
issue is not whether compliance was theoretically possible, but whether non-agreement and nonappearance
can fairly be attributed solely to Me where Plaintiffs' delay, unilateral scheduling,
rejected alternatives, and external constraints materially contributed to the impasse.

Nor does the "keys to the jail" doctrine render arrest automatically appropriate. Coercion must be realistic, sequenced, and proportionate. Shillitani, 384 U.S. at 368; Spallone, 493 U.S. at 276.

## CONCLUSION

Because reinstatement of the arrest warrant was discretionary, not automatic, the Court was required to meaningfully consider each argument I raised opposing arrest. The R&R did not apply the correct legal standards in evaluating notice, clarity of the obligation, causation, reasonable diligence, feasibility of compliance, and proportionality.

I respectfully request that the Court decline to adopt the R&R as written, clarify the compliance pathway, and sequence enforcement consistent with due process, Second Circuit precedent, and the principle that civil contempt sanctions must be the least power adequate to achieve compliance. Spallone, 493 U.S. at 276.

I respectfully note that my interest in settlement is not limited to resolving discovery logistics, but extends to resolution of the judgment itself. I have been actively exploring avenues to fund a negotiated resolution at a realistic amount, and believe that a consensual resolution would materially advance Plaintiffs' ability to recover while avoiding further escalation of enforcement disputes. I do not request that enforcement be conditioned on settlement, but submit that a structured settlement process, with decision-makers present and full settlement authority, may better serve the interests of efficiency and substantial justice than continued coercive proceedings.

I respectfully request that any mediation or settlement conference be conducted remotely by videoconference before a neutral mediator or magistrate judge who has not previously served as an advocate in this matter. Given the contentious enforcement posture and the need for candid discussion of settlement, I submit that a fresh neutral would best serve the interests of efficiency and substantial justice. Given the contentious enforcement posture and the need for candid discussion of settlement with the participation of clients who hold ultimate settlement authority, the international posture of this case, and the purpose of the proceeding—to facilitate candid settlement discussions rather than adjudicate testimony—a remote conference with a fresh neutral would promote efficiency and meaningful participation by all parties and best serve the interest of efficiency and substantial justice.

Respectfully submitted,

Guy Gentile, *pro se*

cc: via ECF

7